UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA, *et al.*,

        Plaintiffs,

*ex rel.* BEVERLY MARCUS,

        Relator,        Case No. 8:18-cv-2915-WFJ-JSS

v.

BIOTEK LABS, LLC, *et al.*,

        Defendants.
_____/

## UNITED STATES' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO SET ASIDE

The United States opposes Defendants' Motion to Set Aside (Dkt. 40) certain Civil Investigative Demands (CIDs) the Government issued to various third parties.

Resolution of Defendants' Motion should begin and end with the principles recognized in this Court's <u>Vici Marketing</u> decision, cited extensively in their Motion: the United States is permitted to use False Claims Act (FCA) and other available process to investigate the potential civil liability of third parties not named in an FCA qui tam suit, or not otherwise sued by the United States, including for conduct of the third parties that overlaps with allegations against a defendant in a declined or intervened qui tam suit. Any other ruling would run contrary to the plain language of the FCA and permit interference with prosecutorial discretion.

1

Further, Defendants' Motion improperly attempts to recast the propriety of the CIDs as being a discovery matter under the Federal Rules of Civil Procedure, ignoring binding Circuit precedent that provides a sharply limited review of administrative subpoenas, which are largely outside of the FRCP.

## I.     INTRODUCTION

In order to force the facts down the one narrow path that might lead to the relief they seek, Defendants' Motion blends two distinct investigations: first, the pending, unsealed, and non-intervened qui tam suit Relator filed against the Defendants herein (Biotek and its related entities), and the United States' investigation thereof; and, second, the separate investigation the United States has since commenced on its own against the providers with whom Biotek contracted – providers who are not party to this or any other FCA suit identified by Defendants. It is instructive to discuss each investigation in turn.

### A. Relator's Allegations Against the Named Defendants and the United States' Investigation of Same

Relator filed this lawsuit under the qui tam provisions of the False Claims Act alleging, among other things, that the Biotek Defendants (Biotek Labs, LLC, its executives George Beauchamp and Brian Panessa, and the related company of BioTek Services, LLC) offered and in fact provided "allergy testing and treatment services" to doctor's offices and other providers as "an additional revenue stream." Dkt. 1 at ¶ 20.  Relator alleges the Biotek Defendants promoted those services through marketers such as herself, employed by Defendant Ancillary Service

Consultants, LLC, Id. at ¶ 18, and that Defendant Alemar Billing Consultants then billed insurance companies and programs for such testing and treatment services under the NPI number of the providers with whom Biotek contracted. Id. at ¶¶ 81-82. She further alleges that, since at least 2017, the Biotek Defendants have contracted with various providers around the country, id. at ¶ 99, entering agreements under which Defendants and the providers split the revenue from those claims. Id. at ¶¶ 87-88. Relator contends the Defendants submitted or caused the submission of false claims to federal healthcare programs, including because the Biotek Defendants' agreements with the providers violate the Anti-Kickback Statute (AKS), id. at ¶¶ 89 – 97, as claims tainted by violations of the AKS constitute false claims in violation of the FCA. Id. at ¶¶ 2, 3; see also, e.g., U.S. ex rel. Fla. Society of Anesthesiologists v. Choudry, 262 F.Supp.3d 1299, 1306 (M.D. Fla. 2017).

In early February 2021, the United States served FCA CIDs on Biotek Labs, Ancillary, and Alemar (hereinafter, "the Biotek CIDs") and was first contacted by their counsel later that month. In early May 2021, the Defendants began producing documents, and they made their last production in August 2021. To date, Defendant Alemar has produced one document, and the Biotek Defendants have produced approximately 2300 documents, totaling approximately 7100 pages.

The undersigned and counsel for Defendants communicated with regularity during the production, and on several occasions the United States ceded to Defendants' requests to limit the production of documents and other things, including agreeing to the Biotek Defendants' production of information in alternative

forms because Biotek no longer possessed and could not fully recreate the original hard copy documents.

In December 2021, after several extensions of the seal, the United States filed its Notice (Dkt. 27), publicly informing the Court – as well as Defendants and Relator – that "it [was] not intervening at this time" but "w[ould] continue its investigation," whereafter the Court entered its Order (Dkt. 28) unsealing this matter.  As is her right, Relator is proceeding with the suit. See, e.g., Dkts. 29-34; 41.

Promptly upon the unsealing, the undersigned shared a copy of that Notice and Order with counsel for Defendants, among other reasons, to ensure counsel was aware of the ongoing status of the investigation, and also to fulfill counsel's prior request to be informed of any qui tam suit if and when the undersigned were able to share such information.

### B. United States' Investigation of Third Parties Not Named in this Suit

The AKS imposes liability on both sides of an impermissible kickback transaction. See, e.g., U.S. v. Howard, No. 18-11602, No. 18-12395, 2022 WL 663328, at *1 (11th Cir. March 7, 2022) ("Federal law forbids paying or receiving kickbacks . . . in connection with federal health care programs."); see also id. at *4 (upholding conviction of pharmacist who paid kickback to prescribing physician, as well as that of prescribing physician who received kickback).

Relator's qui tam Complaint does not name as a party-defendant any of the health care providers with whom the Defendants contracted or otherwise did business.  The United States has not commenced a civil proceeding under 31 U.S.C.

§ 3730(a) against any of those providers for the conduct at issue, or made a § 3730(a) election decision in any qui tam suit Defendants have identified against any of the providers for that conduct.

While the statute of limitations on FCA claims against Biotek and other parties-Defendant named herein was tolled by the filing of this suit, the statute of limitations on FCA claims against any provider who solicited or received a kickback from the named Defendants is not tolled and runs daily. Thus, in late March 2022, to aid in deciding whether to pursue civil claims against the providers who have contracted with Biotek, and not in furtherance of its investigation of Defendants herein, the undersigned caused CIDs (hereinafter, "the Provider CIDs") to be issued to various of those providers.

The Provider CIDs seek information regarding whether the providers were "caused [to] submi[t] false claims to government healthcare programs for services rendered in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), and/or the Stark Law, in violation of the False Claims Act." See, e.g., Dkt. 40-1 at pg. 1.[1] Despite the sufficiency of that language to inform the provider-recipients of "the nature of the conduct constituting the alleged violation of a false claims law which is under investigation, and the applicable provision of law alleged to be violated," 31 U.S.C. § 3733(a)(2)(A), and thus to inform them of their own potential civil liability

---

[1] The CID that Defendants attach as Exhibit A to their Motion is one of the Provider CIDs that the United States issued, and the content of that CID is representative of the other Provider CIDs that the United States issued.

under the FCA, the undersigned – as is his practice otherwise – has taken the additional step of expressly informing each CID recipient (or their counsel) of the recipient's potential FCA civil liability, including for receipt of kickbacks in violation of the AKS.

In early April, counsel for the Defendants contacted the undersigned, inquiring whether the undersigned had issued the Provider CIDs and, if so, would he withdraw them. Despite having no obligation to inform Defendants that the United States is investigating third parties or has issued CIDS to those third parties, the undersigned promptly acknowledged he had caused the Provider CIDS to be issued and declined the request to withdraw them.

## II. ARGUMENT

### A. Defendants Lack Standing to Challenges CIDs Issued to Third Parties

Neither the FCA nor the non-FCA authority Defendants cite give them standing to challenge the CIDs the United States has issued to the third-party Providers, who are not parties-Defendant (or otherwise) in this suit.

The plain language of the FCA narrowly defines the class of persons who can challenge a CID: those "who ha[ve] received a civil investigative demand." 31 U.S.C. § 3733(j)(2). As none of the Provider CIDs were directed to any of the Defendants named herein, Defendants simply do not fall within the class of persons permitted to challenge those CIDs under § 3733(j). Defendants attempt to turn this inquiry on its head, ignoring the plain meaning of "received," and asserting that nothing in the FCA "prohibits" them from challenging a CID to a third party. Dkt. 40 at 7 (citing

6

General Med., PC v U.S., Case No. 3:20-MC-53-NJR, 2020 WL 7209728, at *3 (S.D. Ill. Dec 7, 2020)(denying General Med's challenge to CIDs the U.S. issued to third party facilities with which General Med had contracted).  But, other than citing General Med. – which it appears has not been cited by any other Court since its issuance – Defendants offer no other FCA authority for their standing to challenge the Provider CIDs.

Likely sensing the FCA does not support their challenge, Defendants attempt to recast this as a discovery dispute and invoke FRCP Rule 45, asserting they have "a personal right or privilege with respect to the materials subpoenaed." Dkt. 40 at 7-8 (citing, among others, Inglis v. Wells Fargo Bank N.A., Case No. 2:14-cv-677-FtM-29-CM, 2016 WL 2854204 (M.D. Fla. May 16, 2016)).  But that and their other authority all involve non-FCA litigation between private parties; as discussed below, CIDs are an administrative subpoena, largely outside the FRCP, and subject to a "sharply limited" review.  See, infra, Part II.C.

In any event, that non-FCA authority is ultimately unavailing because, as noted in the very case Defendants cite:

> A majority of district courts in the Middle District of Florida, however, have held that a party seeking to quash a subpoena aimed at a party's financial records does not have standing to move to quash the subpoena under Rule 45 because the party has no expectation of privacy in the business transactions with other corporations.

Inglis, 2016 WL 2854204, at *3 (denying plaintiff-trusts' motion to set aside Rule 45 subpoenas defendant issued to third-party banks for trust's records) (cited by Dkt. 40 at 7-8).

7

## B. The Provider CIDs are Authorized by the FCA

The undersigned caused the Provider CIDs to be issued to those third parties "as investigative tools [for the U.S.] to determine whether it wishes to bring a separate FCA action against [the providers] – not to extend its investigative efforts [of Defendants] in this pending FCA case." U.S. ex rel. Silva v. Vici Marketing, Case No. 8:15-cv-444-T-33-TGW, 2020 WL 1677335, at *1 (M.D. Fla. April 6, 2020) (upholding CIDs to third parties to investigate conduct that overlapped with that alleged against defendants in an intervened qui tam suit).

The FCA is "the government's primary litigative tool for the recovery of losses sustained as the result of fraud against the government," Avco Corp. v. U.S. Dep't of Justice, 884 F.2d 621, 622 (D.C. Cir. 1989), providing for treble damages and civil penalties from those who knowingly present to the United States a false or fraudulent claim for payment, or cause the presentment of such a claim. 31 U.S.C. § 3729(a)(1). The United States may initiate a civil action under the FCA. Id. at § 3730(a). Additionally, the Act allows a private citizen, called a relator, to file a sealed qui tam action on behalf of the United States. Id. at § 3730(b). When a relator institutes a qui tam FCA suit, the government is permitted an opportunity to investigate the allegations while the case is still under seal, and it must then "elect to intervene" and "proceed with the action," id. at § 3730(b)(2), (b)(4)(A), or "notify the court that it declines" to do so. Id. at § 3730(b)(4)(B). If the United States does not intervene, the relator may proceed with the action. Id. at § 3730(b)(4)(B), (c)(3).

To inform the United States' decision in FCA matters – whether that be to file an FCA suit of its own, or to intervene in one filed by a relator – the FCA authorizes the Attorney General or designee to issue CIDs to persons to obtain documents, answers to interrogatories, or testimony when the United States "has reason to believe [the] person may be in possession, custody, or control of any documentary material or information relevant to a false claims law investigation." 31 U.S.C. § 3733(a)(1)(A)-(D).  Where no qui tam suit has been filed, the United States may issue CIDs "before commencing a civil proceeding under Section 3730(a) or other false claims law." Id. at § 3733(a)(1). Where a qui tam suit has been filed, the United States may issue CIDs "before . . . making an election under Section 3730(b)" whether to intervene in the relator's suit. Id.

An FCA CID is a "pre-filing information-gathering tool to combat perceived widespread fraud . . . ," U.S. v. Witmer, 835 F. Supp. 201, 206 (M.D. Pa. 1993), order vacated in part on other grounds on reconsideration, 835 F. Supp. 208 (M.D. Pa. 1993), providing "a means to assess quickly, and at the least cost to the taxpayers or to the party from whom information is requested, whether grounds exist for initiating a false claim suit." U.S. v. Markwood, 48 F.3d 969, 979 (6th Cir. 1995).

CIDs provide the United States a pre-suit investigative tool to obtain relevant information, S. Rep. No. 99-345 at 6 (report on 1986 FCA Amendments), helping the Government determine whether sufficient evidence exists to file suit while also helping prevent defendants being dragged into court unnecessarily. H.R. Rep. No. 99-660 at 26 (1986) (same re House). Along with FRCP 9(b), the ability to issue

9

CIDs is thus "intended to encourage careful behavior when alleging fraudulent conduct." U.S. v. Kernan Hosp., Civ. Action No. RDB-11-2961, 2012 WL 5879133, *7 (D. Md. Nov. 20, 2012).

And that is what the United States has done, and is doing here, with the Provider CIDs – utilizing process under the FCA to obtain from the Providers documents and information to investigate their potential liability, as part of its assessment whether to proceed against them. Because the United States has not commenced an FCA suit against the Providers for the conduct at issue, and because Defendants cannot identify (in this suit or otherwise) any qui tam proceeding against the Providers for that conduct – much less one in which the United States has elected to intervene or declined to do so – the United States is permitted to issue CIDs to the Providers, even where there is a pending unsealed FCA qui tam against Defendants for related conduct. Vici Marketing, 2020 WL 1677335, at *2 (M.D. Fla. April 6, 2020)(denying motion to quash CIDs to third parties because "intervening [or – as here – not intervening] against one or more parties named in a qui tam [case] does not divest the United States of authority to issue a CID to a non-party it is investigating"); see also In re Civil Investigative Demand 15-439, No. 5:16-mc-3, 2016 U.S. Dist. LEXIS 107229, at *9 (W.D. Va. Aug. 12, 2016) (holding U.S. permitted to issue CIDs before filing a § 3730(a) or other false claims suit, or before making a § 3730(b) election in a qui tam).

Defendants make much of the wording of the United States Notice (Dkt. 27) that it was "not intervening at this time," asserting this middle state of non-

intervention does not exist.  See Dkt. 40 at 3-4.  Defendants prop up this contention as a straw man to knock down summarily, contending the United States cannot use non-intervention as a refuge to avoid electing or declining to intervene, and thereby retain its power to issue CIDs to Defendants.  Id.  The United States has not done so.  As noted, the United States filed its Notice, among other reasons, to inform the Defendants clearly that it was not declining intervention and was still investigating the claims against them.  The United States does not contend that its Notice or its state of non-intervention – if it be recognized – would permit it to issue further CIDs to Defendants to investigate the allegations against them in this qui tam suit now that this suit has been unsealed.  As discussed above and further below, the Providers CIDS were neither issued to Defendants, nor were they issued to investigate Defendants or the allegations against them in this qui tam suit.

     Some further discussion of Vici Marketing is warranted, both because of its prominence in Defendants' brief and how nearly square it is with the facts presently before the Court.  After making its election (there, it was intervention) in the relator's qui tam suit against Vici Marketing and associated entities (including Z Stat Medical (the DBA of Oldsmar Pharmacy) and Larry Smith (owner of Oldsmar)), the U.S. issued CIDs to non-parties Belcher Pharmaceuticals and Mihir Taneja, to "investigat[e] Taneja's involvement in the same scheme or schemes involved in this case [against Z Stat and others named], . . . in anticipation of filing a separate action against Taneja." Vici Marketing at *1.  The Court held that the United States' election decision (intervention) in the qui tam suit against Z Stat and other named

11

defendants therein did not divest it of authority to issue CIDs to non-parties it was also investigating, and thus the Court denied the motions to set aside the CIDs to third parties Belcher and Taneja. Id. at *2. The same result should abide here as regards the Provider CIDs that the United States' issued to the third-party providers who contracted with the Biotek Defendants.

Defendants' attempt to twist Vici Marketing to their purpose by asserting that the Provider CIDs in fact "were issued to investigate claims against Defendants [herein]." Dkt. 40 at 12. This is mere speculation, apparently based on the wording of the brief § 3733(a)(2)(A) description of allegedly violative conduct in the Provider CIDs. Id. (citing Ex. A, found at Dkt. 40-1). Defendants' assumption disregards the fact that the quoted § 3733(a)(2)(A) language clearly contemplates the liability that can exist on both sides of an AKS kickback: here, the Providers that received the kickbacks and who "submitted . . . false claims," as well as the Defendants who paid the kickbacks and "caused the submission of false claims." Further, as noted, in addition to the § 3733(a)(2)(A) description in the Provider CIDs, the undersigned has expressly informed each Provider CID recipient (or their counsel) of the recipient's potential FCA civil liability, including for receipt of kickbacks in violation of the AKS.[2]

---

[2] The futility of Defendants' challenge is illustrated by a hypothetical. Suppose the United States were to withdraw the Provider CIDs and reissue them verbatim except for a flipped § 3733(a)(2)(A) description – that is, one describing the nature of the alleged violative conduct in terms of whether the third party "provider submitted or was caused [by Biotek] to submit, false claims to government healthcare programs for services rendered in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), and/or the Stark Law, in violation of the False Claims Act." Such a CID would likewise fall squarely in the permissible scope, given that the United States has neither

Additionally, the fact that the Provider CIDs expressly seek from the providers documents and information regarding their relationship and dealings with Biotek does not somehow transform the Provider CIDs into impermissible CIDs to Defendants. The Court in Vici Marketing upheld the CID to non-party Taneja even though those CIDs sought documents and information from Taneja regarding "his involvement in the same scheme or schemes involved in th[at] case," Vici Marketing at *1, and even though the Taneja CID before the Court expressly sought information regarding non-party Taneja's communications and relationship with intervened qui tam Defendants Smith and Oldsmar. See Vici Marketing at Dkt. 141-2 at 3-4 (inquiring about "consulting services [Taneja] provided to" and "remuneration [he] received" from "Larry Smith [and] Oldsmar Pharmacy"; seeking "all communications, and all documents relating to communications" "between you [Taneja] and Larry Smith" and "between you [Taneja] and Oldsmar Pharmacy") (copies of CID to Taneja filed with this Court).[3]

### C. Provider CIDs Meet Low Threshold for Administrative Subpoenas

Having established Defendants' lack of standing to challenge the Provider CIDs and, in any event, the propriety of those CIDs given the lack of any Government-commenced FCA suit against the providers for this conduct, as well as

---

commenced an FCA suit against the providers for the relevant conduct, nor made an election decision regarding any identified qui tam suit against the providers for that conduct. See Vici Marketing at *2.

[3] The Court may take judicial notice of its own records. See, e.g., Ford v. Waage, Case No: 8:18-cv-2053-T-02, 2019 WL 2027729, at *3, n.10 (M.D. Fla. May 8, 2019).

the lack of any intervened or declined qui tam suit against the providers for such conduct, Defendants challenge the Provider CIDs as impermissible "third party discovery requests" prohibited by FRCP Rule 45. See Dkt. 40 at 15. This is the wrong standard for administrative subpoenas; further, Defendants fail to cite binding Circuit precedent that provides the correct standard for review of such subpoenas.

### 1. The FRCP Do Not Provide the Standard

Federal agencies possess broad investigatory power, "not derived from the judicial function, . . . more analogous to the Grand Jury, [and] not depend[ent] on a case or controversy for power to get evidence," permitting them to "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." U.S. v. Florida Azalea Specs., 19 F.3d 620, 622-23 (11th Cir. 1994) (quoting United States v. Morton Salt Co., 338 U.S. 632, 642–43 (1950)). In the case of the FCA, the Act permits the Department of Justice to issue CIDs in furtherance of its investigatory power under the Act. See generally 31 U.S.C. § 3733(a)(1).

CIDs are a type of administrative subpoena. See, e.g., U.S. v. Markwood, 48 F.3d 969, 975-76 (6th Cir. 1995); U.S. v. Hines, 8:18-mc-83-T-36CPT, 2019 WL 4491313 at *3 (M.D. Fla. Aug. 14, 2019); In re Civil Investigative Demand 15-439, 2016 U.S. Dist. LEXIS 107229, at *9; U.S. v. Plavin, Civil Action No. 1:15-CV-04286-SCJ, 2016 WL 11775141, at *2 (N.D. Ga. April 6, 2016).

An "administrative investigation[ may] not be equated with the more constrained operations of the judicial process." Fed. Election Comm'n v. Lance, 617

14

F.2d 365, 369 (5th Cir. 1980), supplemented 635 F.2d 1132 (5th Cir. 1981). As a result, "[m]ost of the Federal Rules of Civil Procedure are simply inapplicable to the pre-complaint enforcement of an administrative subpoena." Markwood, 48 F.3d at 982. Documents, for example, are "reasonably relevant" if the information sought "is not plainly incompetent or irrelevant to any lawful purpose of the agency." E.E.O.C. v. Kloster Cruise, Ltd., 939 F.2d 920, 922 (11th Cir. 1991) (internal citations omitted). Defendants' various Rule 45 arguments, including that they should have been given advance notice or been provided copies, Dkt. 40 at 15-16, thus simply fall away.[4]

### 2. Narrow Scope of Review for Administrative Subpoenas

Review of administrative subpoenas "is sharply limited; inquiry is appropriate only into whether the evidence sought is material and relevant to a lawful purpose of the agency. . . ." Florida Azalea Specs., 19 F.3d at 623 (quoting Kloster Cruise, 939 F.2d at 922. Generally administrative subpoenas should be enforced if "the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." Id. (quoting Federal Election Com'n v.

---

[4] To the extent that Defendants' FRCP-based arguments, or variants thereof, have any application to these administrative subpoenas, Defendants have not and cannot meet the higher burden for such arguments in that context. See, e.g., In re Civil Investigative Demand 15-439, 2016 U.S. Dist. LEXIS 107229, at *19 (holding "burden of proving that an administrative subpoena is unduly burdensome in not easily met," requiring a party to show producing documents would seriously disrupt its normal business operations); Plavin, 2016 WL 11775141, at *3 (holding burden to show CID is an abuse of process "is on the party opposing" and "is a heavy one," "not met by conclusory allegations of bad faith.") Defendants' Motion at best offers a conclusory statement on one of those issues. See Dkt. 40 at 4, 17 (alleging Defendants "may suffer" a chilling effect on their business from the Provider CIDs).

Florida for Kennedy Committee, 681 F.2d 1281, 1284 (11th Cir. 1982)). This limited scope of review protects "the important governmental interest in the expeditious investigation of possible unlawful activity." Markwood, 48 F. 3d at 979 (internal citations omitted).

"The measure of relevance or an administrative subpoena is 'quite broad.'" U.S. v. Cross Senior Care, Inc., Case No. 8:19-mc-8-T-33TGW, 2019 WL 11502849, at *6 (M.D. Fla. Nov. 6, 2019), affirmed 831 Fed.Appx. 94 (11th Cir. 2020). If a CID seeks material that "touches a matter under investigation, an administrative subpoena will survive a challenge that the material is not relevant." Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd., 878 F.2d 875, 882 (5th Cir. 1989) (internal citations omitted); In re Civil Investigative Demand 15-439, 2016 U.S. Dist. LEXIS 107229, at *19 ("DOJ's determination [of relevance] is accepted so long as it is not obviously wrong.").

Here, the Provider CIDs easily meet the criteria for an administrative subpoena. The documents and information the U.S. seeks from the providers pertain to possible violations of the FCA, see, e.g., Dkt. 40-1 at 2, and are thus a matter clearly within the authority of DOJ. See 31 U.S.C. § 3730(a) (requiring Attorney General to investigate § 3729 violations). Nor is the demand to the providers too indefinite. The Provider CIDs clearly define and delimit the type of contract at issue, and the parties with whom the providers contracted, see, e.g., Dkt. 40-1 at 4, for a defined period, id. at 5, and seek specific documents and communications regarding discrete events, issues, and information. Id. at 9-12. Lastly, the documents and

16

information sought touch directly on the providers' acts, participation, knowledge, and intent regarding allergy services broadly and remuneration therefor specifically, see, id. at pg. 9-12, with clear relevance to the United States' FCA investigation of the providers.

### III. CONCLUSION

The United States has properly issued the Provider CIDS to third parties as part of its efforts to assess whether to pursue those providers under the False Claims Act. As Defendants are not the recipients of those CIDs, they lack standing to challenge them under the FCA or through the FRCP provisions they improperly try to graft onto those administrative subpoenas. Even if Defendants have standing, the United States properly issued those CIDs to the third party providers, who are not parties to this unsealed qui tam suit. The United States has not commenced an FCA suit against any of the providers for that conduct, nor has it made an election decision regarding any identified qui tam against the providers for that conduct. Finally, the CIDs easily meet the low threshold of authority, relevance, and materiality for administrative subpoenas.

WHEREFORE, the Court should deny Defendants' Motion to Set Aside.

                                  **ROGER HANDBERG**
                                  **United States Attorney**

May 24, 2022                  By: */s Charles T. Harden III*
                                        CHARLES T. HARDEN III
                                        Assistant United States Attorney
                                        Florida Bar No. 97934
                                        400 North Tampa Street, Suite 3200

        Tampa, Florida 33602
        Tel: (813) 274-6000
        Fax: (813) 274-6200
        Email: Charles.Harden@usdoj.gov
        *Counsel for the United States*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on May 24, 2022, I filed the foregoing document using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

      By: */s Charles T. Harden III*
         CHARLES T. HARDEN III
         Assistant United States Attorney

18