IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO. 8:18-cv-02915-WFJ-JSS

UNITED STATES OF AMERICA, et al.,

    Plaintiffs,

*ex rel.* BEVERLY MARCUS,

    Relator,

v.

BIOTEK LABS, LLC, et al.,

    Defendants.

_____/

# DEFENDANTS' RESPONSE TO THE UNITED STATES' STATEMENT OF INTEREST RE MOTION TO DISMISS

Defendants BioTek Labs, LLC, BioTek Services, LLC, Ancillary Service Consultants, LLC, Alemar Billing Consultants, LLC, George Beauchamp, and Brian Panessa (collectively, "Defendants"), respectfully submit this Response to the United States' Statement of Interest re Motion to Dismiss [ECF No. 94].[1]

---

[1] This filing also contained the United States' opposition to dismissal of Relator's case on public disclosure bar grounds. Although Defendants maintain that Relators' case should be dismissed on public disclosure bar grounds for the reasons expressed in Defendants' Motion to Dismiss Second Amended Complaint [ECF No. 90], this Response

87179401.4

## ARGUMENT

On November 17, 2022, the Department of Justice ("DOJ") filed a Statement of Interest ("SOI") in this matter.  ECF No. 94.  Beyond noting its opposition to dismissal pursuant to the False Claims Act's public disclosure bar, 31 U.S.C. § 3730(e)(4)(A)(i)-(iii), the SOI broadly asserts that a "kickback" need not exceed fair market value or be commercially unreasonable to constitute prohibited "remuneration" under the Anti-Kickback Statute ("AKS").

The Government's SOI should be rejected for several reasons.  First, the Government's position that "remuneration need not exceed fair market value or be commercially unreasonable" to be actionable under the AKS in these circumstances is inconsistent with the decisions of several courts, including the Eleventh Circuit's decision in *Bingham v. HCA, Inc.*, 783 F. App'x 868 (11th Cir. 2019).  In fact, even the U.S. Attorney's Office for the Middle District of Florida has espoused the virtues of the *Bingham* decision in prior matters.  Second, beyond the lack of well-pled allegations regarding fair market value and commercial reasonableness, Relator fails to allege the

---

primarily addresses the United States' Statement of Interest regarding the remuneration element of Relator's AKS claims.

2

87179401.4

existence of remuneration with sufficient particularity under Rule 9(b), which provides an *independent* basis for the Court to grant Defendants' Motion to Dismiss.

For these reasons, and those discussed in greater detail below, the Court should reject the Government's SOI and dismiss Relator's Second Amended Complaint ("Complaint") *with prejudice.*

### A. Application of *Bingham v. HCA, Inc.*

The Government's assertion that "remuneration" need not exceed fair market value or be commercially unreasonable to be actionable under the AKS is inconsistent with Eleventh Circuit's pronouncement in *Bingham*, 783 F. App'x at 873-74. In that case, the court held that proving fair market value is an essential element for a relator to survive summary judgment and relators must plead a lack of fair market value consistent with the Rule 9(b)'s particularity requirement to allege the existence of improper remuneration.

Although unpublished, the Circuit Court's decision in *Bingham* is nonetheless instructive. The U.S. Attorney's Office for the Middle District of Florida apparently agrees, having cited *Bingham* in support of the same proposition in other cases before this Court. *See, e.g., United States ex rel. Herbold v. Doctor's Choice Home Care, Inc.*, 8:15-cv-1044-T-33AEP (M.D. Fla.,

3

2019), ECF No. 90 at 28 (asserting that "[p]rohibited remuneration under the AKS … includes items or services for free or for other than fair market value."). This Court found the Government's arguments to be persuasive in the *Doctor's Choice* case, holding that "[t]he case law is clear that prohibited remuneration includes the transfer of items or services for less than fair market value." *Id.*, 2019 WL 5653459, at *9 (M.D. Fla. Oct. 31, 2019).

Courts in other jurisdictions have reached similar conclusions. *See, e.g.*, *United States ex rel. Osheroff v. Tenet Healthcare Corp.*, No. 09-22253-CIV, 2012 WL 2871264, at *7–8 (S.D. Fla. July 12, 2012) ("Without alleging a benchmark of fair market value, it is impossible for the Court to infer whether Defendants' rents to physician-tenants fall sufficiently below the benchmark so as to constitute remuneration."); *Klaczak v. Consolidated Med. Transport*, 458 F. Supp. 2d 622, 678–79 (N.D. Ill. 2006) ("In the context of the Anti–Kickback Statute, courts use 'fair market value' as the gauge of value when assessing the remuneration element of the offense. . . . Relators cannot prove that [the defendants] received remuneration—something of value— without comparing the contracted rates with fair market value."); *United States ex rel. Jamison v. McKesson Corp.*, 900 F. Supp. 2d 683, 699 (N.D. Miss.

4

2012) ("In the context of the AKS, courts use 'fair market value' as the gauge of value when assessing the remuneration element of the offense.").

For these reasons, the Court should reject the SOI's assertion that "remuneration need not exceed fair market value or be commercially unreasonable" to be actionable under the AKS.

### B. Relator Fails to Allege the Existence of Remuneration with Sufficient Particularity Under Rule 9(b)

Setting *Bingham* aside, the SOI does not urge the Court to deny the Motion to Dismiss, nor does it take a position as to Defendants' remaining arguments. Notably, the Government does *not* contest Defendants' assertion that Relator fails to allege that Defendants offered or provided prohibited remuneration with requisite detail under Rule 9(b). This provides an independent basis for dismissal.

Relator's Response in Opposition to Defendants' Motion to Dismiss devotes exactly two paragraphs to the issue of remuneration, arguing in conclusory terms that "the prohibited remuneration includes BioTek Labs or BioTek Services providing the medical practices with [1] a royalty-free license to use its intellectual property to provide allergy testing and treatment and [2] a right to retain a 25% share of gross collections from the

5

allergy testing services for 'virtually no effort.'"  *See* ECF No. 95 at 25 (internal citations omitted).

Relator provides absolutely no detail in support of these spurious allegations and fails to supply the Court with particularized facts sufficient to satisfy Rule 9(b)'s heightened pleading standard.  *See United States ex rel. Heller v. Guardian Pharmacy, LLC,* 521 F. Supp. 3d 1254, 1264 (N.D. Ga. 2021) (a plaintiff must plead "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.").

In *Heller*, the court found that the relator had alleged the existence of prohibited remuneration with sufficient particularity under Rule 9(b) in the following ways, which are sorely lacking here:

> [T]he Amended Complaint sufficiently alleges unlawful remuneration as to the eMAR and medical management services. Heller expressly alleges pricing benchmarks for these services: between "$499 to $7,000" for eMAR services and "approximately $10 to $20 per resident ... quarterly each year" for medication management services. Heller also points to his first-hand knowledge of a proposed contract with Magnolia Senior Living as a benchmark, which "stated that 'Additional Consulting' would be billed at $65 an hour for a pharmacist and $55 an hour for a nurse." In "Exhibit A" to the Amended Complaint, Heller provides a list of Communities for which he alleges Guardian Atlanta offers and provides these services at below cost or fair market value. As part of the kickback scheme,

> Heller avers, Guardian Atlanta does so to induce the Communities into selecting it as their preferred pharmacy. That Guardian Atlanta may ultimately break even or turn a profit based on the $10 eMAR subscription fee charged to the residents—a disputed issue of fact—is not fatal to the inquiry at this stage of whether there was an alleged kickback to the Communities. Similarly, Heller augments his allegations regarding the medication management services by referencing emails from Guardian Atlanta's management team that describe the Consulting Department as a "black hole" for revenue purposes due to its practice of giving services away for free.

*Heller*, 521 F. Supp. 3d at 1267–68. These detailed allegations regarding the existence of prohibited remuneration stand in stark contrast to the conclusory allegations contained in Relator's Complaint. Relator has not alleged, for example, details regarding the timing, value, or specific circumstances regarding the provision of purported remuneration by the Defendants, including royalty-free licenses or the right to retain a 25% share of gross collections from any allergy testing services.

These arguments provide the Court with an independent basis to find that Relator failed to allege the existence of prohibited remuneration with requisite particularity under Rule 9(b) and to dismiss this case *with prejudice*.

## CONCLUSION

For the forgoing reasons, the Court should reject the Government's Statement of Interest or, in the alternative, find that there are independent

7

bases to grant Defendants Motion to Dismiss and dismiss Relator's Complaint *with prejudice.*

Dated: December 14, 2022	Respectfully submitted,

*/s/ Henry H. Bolz, IV*
Florida Bar No. 043350
POLSINELLI PC
315 S. Biscayne Blvd., Suite 400
Miami, FL  33131
T:  305-921-1811
hbolz@polsinelli.com
*Counsel for Defendants*

Kevin Coffey
Illinois Bar No. 6303073
kcoffey@polsinelli.com
(*Admitted Pro Hac Vice*)

Dayna LaPlante
Illinois Bar No. 6317971
dlaplante@polsinelli.com
(*Admitted Pro Hac Vice*)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed using the CM/ECF electronic filing system which will provide notice to all counsel of record this **14th** day of December, 2022.

*/s/ Henry H. Bolz, IV*
Henry H. Bolz, IV

87179401.4