**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,
et al.,

        Plaintiffs,

*ex rel.* BEVERLY MARCUS,

        Relator,

v.                                                                    Case No: 8:18-cv-2915-WFJ-JSS

BIOTEK LABS, LLC; GEORGE
BEAUCHAMP; BRIAN PANESSA;
BIOTEK SERVICES, LLC;
ANCILLARY SERVICE
CONSULTANTS, LLC; and ALEMAR
BILLING CONSULTANTS LLC,

        Defendants.
_____/

## **ORDER**

This matter comes before the Court on the above-styled Defendants' Motion

to Dismiss, Dkt. 90. Relator Beverly Marcus filed a response in opposition, Dkt.

95, to which Defendants collectively replied, Dkt. 100. As interested parties to this

action, the United States, Florida, Connecticut, Georgia, Illinois, Indiana,

Tennessee, and Texas have filed limited responses to Defendants' motion, Dkts. 93

& 94, to which Defendants replied, Dkts. 98 & 99. The Court also received cogent

oral argument from the parties on January 13, 2023. Dkt. 106. Upon careful

consideration, the Court denies Defendants' Motion to Dismiss.

## BACKGROUND

The Court at this stage accepts the allegations in the operant complaint as

true. Defendants BioTek Labs, LLC and BioTek Services, LLC (collectively, the

"BioTek Defendants") are Georgia limited liability companies that contract with

medical providers to provide in-office allergy testing and treatment. Dkt. 85 ¶¶ 24,

26, 105. Defendants George Beauchamp and Brian Panessa serve as both

companies' Chief Executive Officer and President, respectively. *Id.* ¶¶ 30−31.

Beauchamp and Panessa also control Defendant Ancillary Services Consultants,

LLC ("ASC"), a Georgia limited liability company and affiliate of BioTek Labs

that hires individuals to market the BioTek Defendants' services. *Id.* ¶¶ 22, 34.

In March 2017, Relator Beverly Marcus began working for ASC as an

independent contractor to market BioTek Labs and BioTek Services' allergy

testing and treatment services to medical providers in certain areas of New York.

*Id.* ¶¶ 22, 87. Specifically, Marcus marketed the BioTek Defendants' two business

models: the "Labs/Employee Insertion" model offered by BioTek Labs and the

"Services/Licensing" model offered by BioTek Services. *Id.* ¶ 112.

Under the Labs/Employee Insertion model, BioTek Labs purportedly

supplies a medical provider with free training, equipment, personnel, and supplies

needed to conduct in-office allergy testing and treatment. *Id.* ¶ 113. Medical providers contracting under this model allegedly receive 25% of the gross collections made through testing and treatment. *Id.* If a medical provider instead provides allergy testing and treatment under the Services/Licensing model offered by BioTek Services, the medical provider receives equipment, training, and supplies at low or no cost. *Id.* ¶¶ 118. However, the medical provider must directly employ personnel to conduct the testing and treatment. *Id.* ¶¶ 117−18. Under the Services/Licensing model, the medical provider purportedly retains the entire net profit earned through testing and treatment but pays BioTek Services agreed-upon amounts for each antigen dose utilized and each one-year supply of immunotherapy created for patients. *Id.* ¶¶ 118, 134.

Regardless of the selected model, the medical provider receives a royalty-free license to use the BioTek Defendants' intellectual property. *Id.* ¶¶ 113, 118. Additionally, under either model, billing is handled by Defendant Alemar Billing Consultants LLC ("Alemar"), a third-party medical billing coordinator based in Florida. *Id.* ¶¶ 38, 127.

While marketing the two business models in New York, Marcus contends that she witnessed and was taught suspect "marketing practices and schemes" by ASC, BioTek Labs, BioTek Services, Beauchamp, and Panessa. *Id.* ¶¶ 92−98. These alleged practices and schemes included promoting the BioTek Defendants'

provision of free or low-cost supplies, equipment, and other resources to medical providers who contracted to provide in-office allergy testing and treatment under either business model. *See id.* ¶¶ 92−100. Marcus contends that these free or low-cost resources amounted to illegal kickbacks. *Id.* ¶¶ 125−26, 241. According to Marcus, the BioTek Defendants knew they were offering medical providers illegal kickbacks and, at Beauchamp and Panessa's direction, caused Alemar to submit false claims for reimbursement to federal healthcare programs. *Id.* ¶ 138.

Based on these allegations, Marcus brings an eighteen-count Second Amended Complaint against Defendants. In Counts I−IV, Marcus asserts violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* Dkt. 85 ¶¶ 248−70. In Counts V−XVIII, Marcus alleges violations of false claims and/or insurance fraud statutes of the following states: California, Connecticut, Florida, Georgia, Illinois, Indiana, Massachusetts, New Jersey, New York, Tennessee, Texas, and Virginia. *Id.* ¶¶ 271−380. Defendants collectively move to dismiss pursuant to the FCA's public disclosure bar and Federal Rule of Civil Procedure 12(b)(6). Dkt. 90.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief may be granted, a plaintiff must plead sufficient facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This

standard does not require detailed factual allegations but demands more than an

unadorned accusation. *Id.* Additionally, a plaintiff's complaint must "give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

   Where a plaintiff's alleges fraud, her claims are subject to the heightened

pleading standards of Rule 9(b). *Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301,

1305 (11th Cir. 2002). Accordingly, a plaintiff bringing an FCA claim must allege

"'facts as to time, place, and substance of the defendant's alleged fraud,'

specifically 'the details of the defendants' allegedly fraudulent acts, when they

occurred, and who engaged in them.'" *Hopper v. Solvay Pharm., Inc.*, 588 F.3d

1318, 1324 (11th Cir. 2009) (quoting *Clausen*, 290 F.3d at 1310). Failing to meet

Rule 9(b)'s pleading standards is grounds for dismissal under Rule 12(b)(6).

*See United States ex rel. Shurick v. Boeing Co.,* 330 Fed. App'x 781, 783 (11th

Cir. 2009) (citations omitted). On a 12(b)(6) motion, a complaint's factual

allegations are accepted as true and construed in the light most favorable to the

plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## ANALYSIS

   In their present motion, Defendants assert that Marcus's Second Amended

Complaint is due to be dismissed pursuant to the public disclosure bar of the FCA,

as well as Rule 12(b)(6) for both failure to state a claim and failure to comply with

Rule 9(b)'s heightened pleading standard. Dkt. 90 at 1−5. The Court considers these arguments in turn.

Concerning Defendants' first argument, the public disclosure bar applies when the relator's allegations are "substantially the same" as what has been publicly disclosed unless the plaintiff is "an 'original source' of the information." 31 U.S.C. § 3730(e)(4). However, the public disclosure bar cannot be used to dismiss FCA claims if the United States expresses opposition. *Id.* ("The court shall dismiss an action or claim under this section, *unless opposed by the Government*[.]") (emphasis added). The same is typically true where a state government opposes that basis for dismissal of claims brought pursuant to that state's version of the FCA. *See, e.g.*, Fla. Stat. § 68.087(3) ("The court shall dismiss an action brought under this act *unless opposed by the department*[.]") (emphasis added).

Here, the United States and several interested states oppose dismissal of Marcus's claims under the public disclosure bar, rendering Defendants' public disclosure argument largely moot. *See* Dkts. 93 & 94. Though other interested states in this action have not expressed the same opposition, the Court finds that dismissal of any of Marcus's claims under the public disclosure bar is unwarranted. Marcus's Second Amended Complaint suggests that she is an original source of her allegations, as she acquired personal knowledge of Defendants' purportedly

6

suspect practices during the time she spent marketing the BioTek Defendants'

business models. *See, e.g.*, Dkt. 85 ¶¶ 92−98 (discussing training, observations,

and internal documents). Moreover, the purpose of the public disclosure bar is

"to bar a subset of [false claims] . . . deemed unmeritorious or downright harmful."

*Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559

U.S. 280, 298 (2010). The Court does not find Marcus's claims to be

"unmeritorious or downright harmful." Accordingly, the Court declines to dismiss

Marcus's claims pursuant to the public disclosure bar.

     The Court is left to consider whether Marcus's Second Amended Complaint

survives dismissal under Rule 12(b)(6). The Court finds that it does. Relying on

AKS violations as a basis for her claims under the FCA and its state counterparts,[1]

Marcus has sufficiently alleged that Defendants violated the AKS by offering

and/or providing remuneration to medical providers to induce referrals to the

BioTek Defendants' allergy testing and treatment services. For example, Marcus

alleges that, in May 2018, BioTek Labs and a Georgia-based medical practice

entered into a contract under which BioTek Labs offered the medical practice free

supplies, personnel, training, and equipment, as well as a percentage of gross

---

[1] For purposes of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, a claim for reimbursement that includes items or services resulting from a violation of the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a−7b(b), constitutes a "false claim." *Id.* § 1320a−7b(g).

collections,[2] in exchange for the medical practice's referral of patients exclusively
to BioTek Labs' in-office allergy testing and treatment. *See* Dkt. 85 ¶¶ 139–47.
Marcus ties this alleged AKS violation to supposed FCA violations by offering
representative claims submitted to government healthcare programs for
reimbursement for allergy testing and treatment provided by that Georgia medical
practice during its exclusive contract term with BioTek Labs. *Id.* ¶¶ 148–55.
Marcus also notes the amount of reimbursement received from government
healthcare programs for these representative claims. *Id.* ¶¶ 150, 153. Marcus raises
similar, specific allegations concerning Defendants' dealings with medical
practices in other states, such as Florida.[3] *Id.* ¶¶ 156–227.

Construing all reasonable inferences in Marcus's favor, as this Court must at
this stage, the Court finds that Marcus's Second Amended Complaint states
plausible claims for relief that satisfy the heightened pleading standard of Rule
9(b). If Marcus's claims are lacking in merit, as Defendants suggest, the matter is
best resolved at summary judgment on a fuller record.

---

[2] While Defendants assert that Relator has not alleged remuneration, the Court notes that
"Congress's intent in placing the term 'remuneration' in the [AKS] in 1977 was to cover the
transferring of *anything of value in any form or manner whatsoever*." Dep't of Health & Hum.
Res. Off. of Inspector Gen. Anti-Kickback Provisions, 56 Fed. Reg. 35952, 35958 (July 29,
1991) (emphasis added).

[3] Where a plaintiff alleges a pattern of fraud by the same defendants across multiple states, she
need not plead examples of that fraud in every state to survive dismissal. *See United States v.
Curo Health Servs. Holdings, Inc.*, No. 3:13-cv-672, 2022 WL 842937, at *11 (M.D. Tenn. Mar.
21, 2022) (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 509 (6th
Cir. 2007)).

## CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss (Dkt. 90) is

**DENIED**. Defendants shall answer Marcus's Second Amended Complaint within

**fourteen (14) days**.

    **DONE AND ORDERED** at Tampa, Florida, on January 24, 2023.


*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**


**COPIES FURNISHED TO:**
Counsel of Record