## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO. 8:18-cv-2915-T-02-JSS

UNITED STATES OF AMERICA, et al.,

      Plaintiffs,

*ex rel.* BEVERLY MARCUS,

      Relator,

v.

BIOTEK LABS, LLC, et al.,

      Defendants.

_____

## DEFENDANTS' ANSWER TO
## SECOND AMENDED COMPLAINT

BioTek Labs, LLC, BioTek Services, LLC, Ancillary Service Consultants, LLC ("ASC"), Alemar Billing Consultants ("Alemar"), LLC, George Beauchamp ("Beauchamp"), and Brian Panessa ("Panessa") (collectively the "Defendants"), by and through their counsel, Polsinelli PC, Answer the Second Amended Complaint (the "Complaint") filed by Relator Beverly Marcus ("Relator") as follows:

## ALLEGATIONS MADE IN SECTION HEADINGS

The section headings contained in the Complaint are not allegations and therefore do not require responses.  To the extent a response is required, Defendants deny all allegations contained in the section headings in the Complaint.

## I.    INTRODUCTION

1.    This is an action to recover damages and civil penalties on behalf of the United States of America and various states for damages arising from false or fraudulent claims presented to the United States Government under the federal Medicare program, as well as various state Medicaid programs, and other federally-funded programs for payment or approval and thus violating 31 U.S.C. § 3729 *et seq.* (commonly known as the False Claims Act and hereinafter referred to as the "FCA") and other analogous state statutes.

**ANSWER**:  Defendants admit that Relator's Complaint purports to seek relief on behalf of the United States of America and various states pursuant to pursuant to the federal False Claims Act ("FCA"), 31 U.S.C. § 3729, et seq., and other analogous state statutes.  Defendants deny all remaining allegations in Paragraph 1 and the footnote thereto.

2

2.      Defendants, among other things, provide in-office allergy testing and treatment protocols to healthcare providers relating to the diagnosis and treatment of airborne allergies caused by, among other materials, molds, dander and pollen.

**ANSWER**:  Defendants deny the allegations in Paragraph 2.

3.      As detailed below, Relator has direct and personal knowledge that Defendants, among other things:

  a.  Knowingly presented, or caused to be presented, false or fraudulent claims for payment by billing Government Healthcare Programs for allergy testing and immunotherapy and related services that were not medically necessary in violation of 31 U.S.C. § 3729(a)(1)(A) and/or analogous state statutes;

  b.  Knowingly made, used, or caused to be used or made false records material to false or fraudulent claims by Defendants in violation of 31 U.S.C. § 3729(a)(1)(B) and/or analogous state statutes;

  c.  Knowingly concealed and/or avoided the obligation to report and return Medicare or Medicaid overpayments in violation of 31 U.S.C. § 3729(a)(1)(G); and

  d.  Knowingly submitted, caused to be submitted, or conspired to submit or cause to be submitted, false or fraudulent claims to Government Healthcare Programs for items or services generated from violations of the federal Anti-Kickback

88221270.5

Statute (42 U.S.C. § 1320a-7b) ("AKS") in violation of 31 U.S.C. § 3729(a)(1)(A) and/or analogous state statutes.

**ANSWER**:  Defendants deny the allegations in Paragraph 3 and all subparts thereto.

4.     Defendants are thus liable to the federal Government under the FCA and to various states under analogous state statutes.

**ANSWER**:  Defendants deny the allegations in Paragraph 4.

5.     As amended, the FCA provides that any person who knowingly submits, or causes to be submitted, a false or fraudulent claim to the United States Government for payment or approval is liable to the U.S. Government for a civil penalty of not less than $12,357.00 and not more than $25,076.00 for each such claim, plus three times the amount of damages sustained by the Government because of the false claim.  A person may also be liable under the FCA for submitting false or fraudulent claims to a third party if that claim results in a loss to the United States Government.

**ANSWER**:     Paragraph 5 sets forth legal conclusions and characterizations of federal law and regulations that do not require a

response.   To the extent a response is required, Defendants deny that Paragraph 5 contains a complete recitation or accurate description or characterization of the laws and regulations, which speak for themselves, and therefore they deny the allegations in Paragraph 5.

6.   The FCA allows any person having knowledge of a false or fraudulent claim against the Government to bring an action in federal District Court for himself and for the United States Government and to share in any recovery.

**ANSWER**:   Paragraph 6 sets forth legal conclusions and characterizations of federal law that does not require a response.   To the extent a response is required, Defendants deny that Paragraph 6 contains a complete recitation or accurate description or characterization of the law, which speaks for itself, and therefore they deny the allegations in Paragraph 6.

7.   Based on these provisions, Relator seeks through this action to recover damages and civil penalties arising from Defendants' presentation of false records, statements, or claims for payment or approval by the United

5

States Government under the Federal Healthcare Programs. Relator believes the amount of such damages and civil penalties that may be assessed against the Defendants under the facts alleged is substantial.

**ANSWER**: Defendants admit that Relator seeks damages and civil penalties. Defendants deny all remaining allegations in Paragraph 7.

8. This action arises under the provisions of the FCA, and pursuant to the following analogous provisions of state and local law:

- California False Claims Act, Cal. Gov't Code § 12651 *et seq.*
- California Insurance Frauds Act, Cal. Ins. Code §1871.7 *et seq.*
- Connecticut False Claims Act, Chapter 319v § 17b-301a *et seq.*
- Florida False Claims Act, Fla. Stat. § 68-081 *et seq.*
- Georgia False Medicaid Claims Act, Ga. Code § 49-4-168 (2007)
- Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. 175/1 *et seq.*
- Illinois Insurance Claims Fraud Prevention Act, 740 Ill. Comp. Stat. 92/5 *et seq.*
- Indiana False Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.5 *et seq.*
- Massachusetts False Claims Act, Mass. Gen. Law, Chapter 12, §§ 5A-50.
- New Jersey False Claims Act, N.J. Stat. § 2A:32C-1 *et seq.*
- New York False Claims Act, N.Y. St. Fin. Law § 187 *et seq.*
- Tennessee False Claims Act, Tenn. Code § 4-18-101 *et seq.*
- Tennessee Medicaid False Claims Act, Tenn. Code § 71-5-181 *et seq.*

6

- Texas Medicaid Fraud Prevention, Tex. Hum. Res. Code § 36.001 *et seq.*
- Virginia Fraud Against Taxpayers Act, Va. Code § 8.01-216.1 *et seq.*

(collectively, "State *Qui Tam* Statutes").

**ANSWER**:  Defendants admit that Relator's Complaint purports to seek relief pursuant to the FCA and state statutes listed in Paragraph 8. Defendants deny all remaining allegations in Paragraph 8.

9.     This action is also brought by Relator on behalf of the State of California and the State of Illinois for injunctive relief and to recover treble damages and penalties arising from Defendants' fraudulent scheme whereby Defendants submitted, and caused to be submitted, millions of dollars in false claims for allergy testing and treatment services to private insurers in California, Illinois and around the country.  Defendants' fraud involves thousands, and possibly tens of thousands, of fraudulent claims submitted to private insurance companies in California, Illinois and elsewhere around the country, including self-insured entities and organizations (collectively, the "Private Insurers").

88221270.5

**ANSWER**:  Defendants admit that Relator purports to bring claims on behalf of the States of California and Illinois.  Defendants deny the remaining allegations in Paragraph 9.

## II.   **JURISDICTION AND VENUE**

10.   This is a civil action arising under the False Claims Act, 31 U.S.C. § 3729 *et seq*.  As such, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to Sections 3729 and 3730 of Title 31.  This Court has supplemental jurisdiction over the counts relating to the state False Claims Acts pursuant to 28 U.S.C. § 1367.

**ANSWER**:   Paragraph 10 sets forth legal conclusions and characterizations of federal law which do not require a response.  To the extent a response is required, Defendants admit that this action purports to arise under the FCA, 31 U.S.C. § 3732 and that this Court generally has jurisdiction over actions brought under the FCA, though Defendants reserve the right to challenge the jurisdiction of Relator's Counts.

88221270.5

11.    This Court has personal jurisdiction over the Defendants because Defendants submitted false or fraudulent claims to the Government and to third parties in this District and/or transacted business within this District.

**ANSWER**:    Paragraph 11 sets forth legal conclusions and characterizations of federal law which do not require a response.  To the extent a response is required, Defendants deny the allegations in Paragraph 11 and all subparts thereto.

12.    Venue is proper in the U.S. District Court for the Middle District of Florida pursuant to 31 U.S.C. § 3729(a), as Defendants can be found in and/or transacts business, including through the submission of claims for approval and payment by the United States Government under Federal Healthcare Programs, in this district.  Defendants have entered into contracts with providers in the following Florida locations – Davie, Deland, Hallandale Beach, Hollywood, Homestead, Key Biscayne, Land O' Lakes, Miramar, New Port Richey, Ocala, Orlando, Pembroke Pines, Perry, Sarasota, Spring Hill, Tampa, Winter Park and Zephyrhills, some of which are located in this District.

9

88221270.5

**ANSWER**:   Paragraph 12 sets forth legal conclusions and characterizations of federal law which do not require a response.  To the extent a response is required, Defendants deny the allegations in Paragraph 12.

13.    Relator believes, and therefore avers, that providers and healthcare professionals located in California, Connecticut, Florida, Georgia, Illinois, Indiana, Maryland, Massachusetts, New Jersey, New York, Tennessee, Texas and Virginia, and other states not named herein, have entered into agreements with BioTek and/or have utilized services offered by BioTek and sought reimbursement for those Services from Government Healthcare programs.

**ANSWER**:  Defendants deny the allegations in Paragraph 13.

## III.    **PRELIMINARY STATEMENT**

14.    This suit is not based upon prior public disclosures of allegations or transactions in a criminal, civil, administrative hearing, lawsuit, investigation or in a Government Accounting Office or Auditor General's report, hearing, audit, or investigation, or from the news media.

10

88221270.5

**ANSWER**:  Defendants deny the allegations in Paragraph 14.


15.     To the extent that there has been a public disclosure unknown to Relator, Relator is an "original source" as defined in 31 U.S.C. § 3730(e)(4)(B).

**ANSWER**:  Defendants deny the allegations in Paragraph 15.


16.     Relator has direct and independent knowledge of the information on which the allegations are based, and Relator's information materially adds to any information that may have been disclosed publicly in some other capacity.

**ANSWER**:  Defendants deny the allegations in Paragraph 16.


17.     Further, Relator voluntarily disclosed her allegations to the United States Attorney's Office for the Middle District of Florida on September 14, 2018, prior to filing the original Complaint.

**ANSWER**:   Defendants are without knowledge and information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 17 and therefore deny them.

88221270.5

18.     Under the FCA, the original Complaint was filed *in camera* and under seal.

**ANSWER**:  Defendants admit the allegations in Paragraph 18.

19.     The Complaint was filed on November 30, 2018 and unsealed on December 13, 2021.

**ANSWER**:  Defendants admit the allegations in Paragraph 19.

20.     As required by the FCA, 31 U.S.C. § 3730(b)(2), Relator provided a statement of substantially all material evidence and information supporting the original Complaint to the Attorney General of the United States and to the United States Attorney for the Middle District of Florida. The disclosure statement was supported by evidence establishing the existence of false claims presented by Defendants.

**ANSWER**:  Defendants are without knowledge and information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 20 and therefore deny them.

IV.   **PARTIES**

21.    Relator Beverly Marcus is a U.S. citizen and resident of the State of New York.

**ANSWER**:   Defendants are without knowledge and information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 21 and therefore deny them.

22.    In March 2017, Relator entered into a Marketing Agreement with Defendant Ancillary Service Consultants, LLC ("ASC"), an affiliate of BioTek Labs, LLC, to market BioTek's "allergy testing and treatment labs" in a territory encompassing certain parts of New York state. Relator was designated as an "independent contractor" of ASC and paid as a 1099 contractor.

**ANSWER**:  Paragraph 22 contains a characterization or summary of information contained in an agreement between Relator and Defendant ASC, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 22 represent a true and complete recitation of the agreement between Relator

13

and Defendant ASC.  Defendants deny the remaining allegations contained in Paragraph 22.

23.    Relator received training, instruction and direction from management personnel affiliated with ASC, BioTek Labs, LLC and BioTek Services, LLC, including Defendants Panessa and Beauchamp.

**ANSWER**:  Defendants admit the allegations in Paragraph 23.

24.    Defendant BioTek Labs, LLC ("BioTek Labs") is a Georgia limited liability company doing business across the United States and having its corporate headquarters at 3384 Peachtree Road NE, Suite 850, Suwanee, Georgia 30326.  BioTek Labs was formed in June 2011.

**ANSWER**:  Defendant BioTek Labs, LLC admits that it is a Georgia limited liability company founded in June 2011 that does business in the United States.   Defendant BioTek Labs, LLC denies that its corporate headquarters is presented located at 3384 Peachtree Road NE, Suite 850, Suwanee, Georgia 30326.

14

25.    The members of BioTek Labs include Defendants Beauchamp and Panessa.  BioTek Labs is controlled by Defendants Beauchamp and Panessa.

**ANSWER**:  Defendant BioTek Labs, LLC admits that Defendants Beauchamp and Panessa are members of BioTek Labs, LLC. Defendants deny the remaining allegation contained in Paragraph 25.

26.    Defendant BioTek Services, LLC ("BioTek Services") is a Georgia limited liability company doing business across the United States and having its corporate headquarters at 1000 Peachtree Industrial Blvd., Suite 6133, Suwanee, Georgia 30024.  BioTek Services was formed in May 2012.

**ANSWER**:  Defendant BioTek Services, LLC admits that it is a Georgia limited liability company founded in May 2012 that does business in the United States.  Defendant BioTek Services, LLC denies that its corporate headquarters is presented located at 1000 Peachtree Industrial Blvd., Suite 6133, Suwanee, Georgia 30024.

27.    Upon information and belief, the members of BioTek Services include Defendants Beauchamp and Panessa, as well as Sugarloaf Holdings,

15

LLC, Andrew Gaudet, John Panessa, James Roberts III, and Michael Martin. BioTek Services is controlled by Defendants Beauchamp and Panessa.

**ANSWER**:  Defendant BioTek Services, LLC admits that Defendants Beauchamp and Panessa, as well as Sugarloaf Holdings, LLC, Andrew Gaudet, John Panessa, James Roberts III, and Michael Martin are members of BioTek Labs, LLC.   Defendant BioTek Services, LLC admits that Defendants Beauchamp and Panessa, in their role as members, are able to take certain actions on behalf of BioTek Services, LLC.  Defendants deny the remaining allegation contained in Paragraph 27.

28.    Each of BioTek Labs and BioTek Services knowingly and willfully offered and paid physician practices remuneration, directly or indirectly, overtly or covertly, in cash or in kind, to induce physician practices –

      (A)  to refer an individual to a person for the furnishing or arranging for the furnishing of items or services for which payment may be made in whole or in part under a federal health care program, or

      (B)  to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a federal health care program.

88221270.5

**ANSWER**:  Defendants deny the allegations in Paragraph 28 and all subparts thereto.

29.   In particular, each of BioTek Labs and BioTek Services knowingly and willfully offered and granted physician practices royalty-free licenses to use its intellectual property to provide allergy testing and treatment services, and offered and paid physician practices other remuneration which may include a 25% share of gross collections from the allergy testing services, free or below market supplies and equipment, free or below market personnel, free or below market training, and other remuneration to induce physician practices to refer patients for allergy testing and treatment services for which payment may be made in whole or in part under a federal healthcare program.  Each of BioTek Labs and BioTek Services promoted its services as "creating an additional revenue stream for [a medical] practice" and "With virtually no effort, you can have this additional revenue stream."

**ANSWER**:  Defendants deny the allegations in Paragraph 29.

30.    Defendant George Beauchamp is the CEO of BioTek Labs and BioTek Services.  Defendant Beauchamp is responsible for overseeing the financial decisions and operations of BioTek Labs and BioTek Services.

**ANSWER**:  Defendants admit that George Beauchamp is the Chief Executive Officer of BioTek Labs, LLC and BioTek Services, LLC and that his responsibilities include oversight for financial matters and operations of BioTek Labs, LLC and BioTek Services, LLC. Defendants deny the remaining allegations in Paragraph 30.

31.    Defendant Brian Panessa is the President of BioTek Labs and BioTek Services. Defendant Panessa is responsible for the legal and financial management of BioTek Labs and BioTek Services.

**ANSWER**:  Defendants admit that Brian Panessa is the President of BioTek Labs, LLC and BioTek Services, LLC and that his responsibilities include oversight for legal and financial matters of BioTek Labs, LLC and BioTek Services, LLC.   Defendants deny the remaining allegations in Paragraph 31.

18

32. Both Defendant Panessa and Defendant Beauchamp accompanied Relator on in-person sales calls and participated in numerous conference calls with Relator to potential clients.

**ANSWER**: Defendants Panessa and Beauchamp admit they participated in some number of calls with Relator in the past but deny the remaining allegations in Paragraph 32. The remaining Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 32 and therefore deny them.

33. Over the term of her employment, Relator directly witnessed the sales practices of Defendants, including Defendant Panessa and Defendant Beauchamp.

**ANSWER**: Defendants are without knowledge and information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 33 and therefore deny them.

34. Defendant Ancillary Services Consultants, LLC ("ASC") is a Georgia limited liability company doing business across the United States and having its corporate headquarters at 895 Chestnut Lake Drive, NE,

88221270.5

Marietta, Georgia 30068.  ASC is controlled by Defendants Beauchamp and Panessa.

**ANSWER**:  Defendants admit the allegations in Paragraph 34.

35.    Relator signed her Marketing Agreement with ASC, *see supra*; Defendant Brian Panessa executed the agreement on behalf of ASC as its "Managing Member".

**ANSWER**:  Paragraph 35 contains a characterization or summary of information contained in an agreement between Relator and Defendant ASC, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 35 represent a true and complete recitation of the agreement between Relator and Defendant ASC.  Defendants deny the remaining allegations contained in Paragraph 35.

36.    Moreover, the Marketing Agreement included Defendant Panessa's email address (brian@bioteklabs.com) within ASC's contact information.

88221270.5

**ANSWER**:  Paragraph 36 contains a characterization or summary of information contained in an agreement between Relator and Defendant ASC, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 36 represent a true and complete recitation of the agreement between Relator and Defendant ASC.  Defendants deny the remaining allegations contained in Paragraph 36.

37.    Relator also executed a "Non-Disclosure, Non-Use and Confidentiality Agreement" with ASC in March 2017.  Again, the agreement was executed by Defendant Brian Panessa on behalf of ASC as its "Managing Member".

**ANSWER**:  Paragraph 37 contains a characterization or summary of information contained in an agreement between Relator and Defendant ASC, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 37 represent a true and complete recitation of such agreement between Relator and Defendant ASC.  Defendants deny the remaining allegations contained in Paragraph 37.

88221270.5

38.     Defendant Alemar Billings Consultants LLC ("Alemar") is Florida limited liability company doing business across the United States and having its corporate headquarters at 10117 SW 72nd Street, Miami, Florida 33173.  Alemar was formed in November 2010.

**ANSWER**:  Defendants admit the allegations contained in Paragraph 38.

39.     During the in-person sales calls and conference calls mentioned above, both Defendant Panessa and Defendant Beauchamp informed potential clients of the requirement that the provider use Alemar as the billing agent in any relationship with BioTek Labs or BioTek Services.

**ANSWER**:  Defendants Panessa and Beauchamp deny the allegations in Paragraph 39.  The remaining Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 39 and therefore deny them.

40.     Upon information and belief, ABC Medical Practices (Nos. 1-25) are medical practice groups that entered into agreements with the BioTek

88221270.5

Defendants and/or utilized services offered by the BioTek.  ABC Medical Practices (Nos. 1-25), in conjunction with BioTek and assisted by Alemar, submitted for reimbursement of certain BioTek-related services provided to beneficiaries of Government Healthcare Programs and were paid for these services.

**ANSWER**:  Defendants lack knowledge and information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 40 related to ABC Medical Practices (No. 1-25), and therefore deny them. Defendants deny the remaining allegations in Paragraph 40.


41.    Doctor Jane Doe (Nos. 1-25) are individual medical providers that entered into agreements with the BioTek Defendants and/or utilized services offered by the BioTek Defendants.  Doctors Jane Does (Nos. 1-25), in conjunction with BioTek and assisted by Alemar, submitted for reimbursement of certain BioTek-related services provided to beneficiaries of Government Healthcare Programs and were paid for these services.

**ANSWER**:  Defendants lack knowledge and information sufficient to form a belief as to the truth or falsity of the allegations contained in

Paragraph 41 related to Doctor Jane Doe (Nos. 1-25), and therefore deny them. Defendants deny the remaining allegations in Paragraph 41.

42.    ABC Medical Practices (Nos. 1-25) and Doctor Jane Does (Nos. 1-25), some of which are identified *supra* and *infra*, were improperly reimbursed by Government Healthcare Programs for services they provided to patients pursuant to an agreement with the BioTek Defendants.

**ANSWER**:  Defendants lack knowledge and information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 42 related to ABC Medical Practices (Nos. 1-25) and Doctor Jane Does (Nos. 1-25), and therefore deny them.  Defendants deny the remaining allegations in Paragraph 42.

## V.    **FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729 *ET SEQ.***

43.    The FCA, 31 U.S.C. § 3729(a)(1)(A), makes "knowingly" presenting or causing to be presented, any false or fraudulent claim for payment or approval a violation of federal law for which the United States may recover three times the amount of the damages the government sustains and a civil monetary penalty.

88221270.5

**ANSWER**:   Paragraph 43 sets forth legal conclusions and characterizations of federal law that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 43 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 43.

44.     The FCA, 31 U.S.C. § 3729(a)(1)(B), makes "knowingly" making, using, or causing to be made or used, a false record or statement that is material to a false or fraudulent claim a violation of federal law for which the United States may recover three times the amount of the damages the Government sustains and a civil monetary penalty.

**ANSWER**:   Paragraph 44 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 44 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 44.

45.   The FCA, 31 U.S.C. § 3729(a)(1)(G), makes it illegal for any person to "knowingly" make, use or cause to be made or used a false record or statement that is material to an obligation to pay or transmit money or property to the Government, or to knowingly conceal or knowingly and improperly avoid or decrease an obligation to pay or transmit money or property to the Government, a violation of federal law for which the United States may recover three times the amount of the damages the Government sustains and a civil monetary penalty.

**ANSWER**:   Paragraph 45 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 45 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 45.


46.   The FCA defines a "claim" to include any request or demand, whether under contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or

88221270.5

other recipient for any portion of the money or property which is requested. 31 U.S.C. § 3729(b)(2).

**ANSWER**:    Paragraph 46 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 46 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 46.

47.    The FCA, 31 U.S.C. § 3729(b)(1), provides that "the terms 'knowing' and `knowingly' — (A) mean that a person, with respect to information — (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud."

**ANSWER**:    Paragraph 47 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 47 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 47.

88221270.5

48.    The FCA, 31 U.S.C. § 3729(b)(4), provides that "the term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."

**<u>ANSWER</u>**:    Paragraph 48 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 48 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 48.

## VI.    <u>FEDERAL ANTI-KICKBACK STATUTE</u>

49.    The federal healthcare Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b)) arose out of Congressional concern that payoffs to those who can influence healthcare decisions will result in goods and services being provided that are medically inappropriate, unnecessary, of poor quality, or even harmful to a vulnerable patient population.  To protect the integrity of federal healthcare programs from these difficult to detect harms, Congress enacted a prohibition against the payment of kickbacks in any form,

88221270.5

regardless of whether the particular kickbacks actually gives rise to overutilization or poor quality of care.

**ANSWER**: Paragraph 49 sets forth legal conclusions and characterizations that do not require a response. To the extent a response is required, Defendants deny that Paragraph 49 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 49.

50.   The AKS prohibits knowing and willful solicitation, offer, payment or receipt of any remuneration, whether direct or indirect, overt or covert, in cash or in kind, in return for or to induce (a) referring or influencing the referral of an individual for the furnishing of any item or service or (b) purchasing, leasing or arranging or recommending for the purchase, lease or ordering of any item or service.

**ANSWER**: Paragraph 50 sets forth legal conclusions and characterizations that do not require a response. To the extent a response is required, Defendants deny that Paragraph 50 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 50.

88221270.5

51.    The AKS applies to any referrals for items or services payable by any Federal Healthcare Program.

**ANSWER**:    Paragraph 51 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 51 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 51.

52.    The AKS is violated when remuneration is paid purposefully to induce referrals of items or services paid for by a Federal Healthcare Program.  By its terms, the statute ascribes liability to parties on both sides of an impermissible "kickback" transaction.  For purposes of the Anti-Kickback statute, "remuneration" includes the transfer of anything of value, in cash or in-kind, directly or indirectly, covertly or overtly.

**ANSWER**:    Paragraph 52 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 52 contains a complete recitation

or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 52.

53.     Compliance with the AKS is a precondition to participation as a healthcare provider under Medicare and other federal healthcare programs. With regard to Medicare, any physician or other healthcare provider who wishes to participate in the program must submit an Enrollment Application which contains a Certification Statement that specifically requires that the provider comply with the federal Anti-Kickback Statute as a condition to receiving reimbursement under the Medicare program. *See, e.g.*, Forms CMS-855b; CMS-855S.

**ANSWER**:  Paragraph 53 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 53 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 53.

54.     Violation of the AKS subjects the violator to exclusion from participation in Federal Healthcare Programs (including Medicare and

Medicaid), civil monetary penalties of up to $50,000 per kickback violation, and imprisonment of up to five years per violation.  42 U.S.C. §§ 1320a-7a(a)(7), 1320a-7b(b).

**ANSWER**:    Paragraph 54 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 54 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 54.


55.    Compliance with the AKS is required for reimbursement of claims from federal healthcare programs, and claims made in violation of the law are actionable civilly under the FCA, as the AKS was amended in March 2010 as part of the Patient Protection and Affordable Care Act ("PPACA"), which clarified that all claims resulting from a violation of the AKS are also a violation of the FCA.  *See* 42 U.S.C. § 1320a-7b(g) (2010) (stating, in part, that a "claim that includes items or services resulting from a violation of this section [AKS] constitutes a false or fraudulent claim for purposes of [the FCA] . . .").  *See also United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 315 (3d Cir. 2011) (stating "[c]ompliance with

32

the AKS is clearly a condition of payment under Parts C and D of Medicare"
and holding that "appellants, by alleging that appellees violated the AKS
while submitting claims for payment to a federal health insurance program,
have stated a plausible claim for relief under the FCA").

**ANSWER**:   Paragraph 55 sets forth legal conclusions and
characterizations that do not require a response.  To the extent a response is
required, Defendants deny that Paragraph 55 contains a complete recitation
or accurate description or characterization of the applicable law, which
speaks for itself, and therefore they deny the allegations in Paragraph 55.


56.   The PPACA also amended the Social Security Act's "intent
requirement" to make clear that violations of its anti-kickback provisions,
like violations of the FCA, may occur even if an individual does "not have
actual knowledge" or "specific intent to commit a violation."  Public Law
No. 111-148, § 6402(h).

**ANSWER**:   Paragraph 56 sets forth legal conclusions and
characterizations that do not require a response.  To the extent a response is
required, Defendants deny that Paragraph 56 contains a complete recitation

or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 56.

57.    Proof of an explicit *quid pro quo* is not required to show a violation of the AKS.  The AKS covers any arrangement where one purpose of the remuneration is to obtain money for the referral of services or to induce further referrals.  *United States v. Kats*, 871 F.2d 105 (9th Cir. 1989); *United States v. Greber*, 760 F.2d 68 (3d Cir. 1985), *cert. denied*, 474 U.S. 988 (1985); *United States v. McClatchey*, 217 F.3d 823, 835 (10th Cir. 2000); *United States v. Davis*, 132 F.3d 1092, 1094 (5th Cir. 1998).  The AKS is "violated, even if the payments were also intended to compensate for professional services." *United States v. Borrasi*, 639 F.3d 774, 782 (7th Cir. 2011), quoting *Greber*, 760 F.2d at 72.

**ANSWER**:    Paragraph 57 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 57 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 57.

34

58.     Compliance with AKS is material to Medicare's and Medicaid's payment decisions because kickbacks are statutorily prohibited in order to protect the integrity of federal health care programs and AKS-tainted claims are statutorily designated as false claims under FCA.  *See* 42 U.S.C. § 1320a-7b; Social Security Amendments of 1972, Pub. L. No. 92-603, § 242(b)-(c), 86 Stat. 1329, 141920; Medicare-Medicaid Antifraud and Abuse Amendments, Pub. L. No. 95-142, 91 Stat. 1175 (1977); Medicare and Medicaid Patient and Program Protection Act of 1987, Pub. L. No. 100-93, 101 Stat 680; Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 6402(f)(1), 124 Stat. 119 (2010), adding 42 U.S.C. § 1320a-7b(g).

**ANSWER**: Paragraph 58 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 58 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 58.

## VII.  STATE INSURANCE LAWS

59.     The States of California and Illinois have a profound interest in detecting and prosecuting consumer and insurance fraud and in protecting

88221270.5

their citizens from such frauds.  The States of California and Illinois also have an interest in protecting their citizens from unnecessary, worthless and misleading medical procedures.

**ANSWER**:  Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 59 regarding the States of California and Illinois and therefore deny them. Defendants deny any remaining allegations in Paragraph 59.

60.    These interests are codified in, among other statutes, the California Insurance Frauds Act and the Illinois Insurance Fraud Act.

**ANSWER**:    Paragraph 60 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 60 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 60.

61.    In California, a district attorney or the Commissioner of Insurance is authorized and empowered to enforce the Insurance Frauds

88221270.5

Act, which provides:  "The district attorney or commissioner may bring a civil action under this section."  Cal. Ins. Code §1871.7(d).

**ANSWER**:  Paragraph 61 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 61 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 61.

62.    The relevant portions of the California Fraud Act include:

(d)  The district attorney or commissioner may bring a civil action under this section. Before the commissioner may bring that action, the commissioner shall be required to present the evidence obtained to the appropriate local district attorney for possible criminal or civil filing. If the district attorney elects not to pursue the matter due to insufficient resources, then the commissioner may proceed with the action.

(e)(1)  Any interested persons, including an insurer, may bring a civil action for a violation of this section for the person and for the State of California. The action shall be brought in the name of the state. The action may be dismissed only if the court and the district attorney or the commissioner, whichever is participating, give written consent to the dismissal and their reasons for consenting.

* * * * *

(f)(1)  If the district attorney or commissioner proceeds with the action, he or she shall have the primary responsibility for

88221270.5

prosecuting the action, and shall not be bound by an act of the person bringing the action. That person shall have the right to continue as a party to the action, subject to the limitations set forth in paragraph (2).

Cal. Ins. Code §1871.7(d),(e),(f).

**ANSWER**:   Paragraph 62 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 62 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 62.

63.   The Illinois Attorney General is authorized and empowered to enforce the Insurance Fraud Act as follows:

The State's Attorney of the county in which the conduct occurred or Attorney General may bring a civil action under this Act. Before the Attorney General may bring the action, the Attorney General shall present the evidence obtained to the appropriate State's Attorney for possible criminal or civil filing. If the State's Attorney elects not to pursue the matter, then the Attorney General may proceed with the action.

\* \* \* \* \*

Before the expiration of the 60-day period or any extensions obtained under subsection (c), the State's Attorney or Attorney General shall either:

(1)  proceed with the action, in which case the action shall be conducted by the State's Attorney or Attorney General; or

(2)  notify the court that it decline to take over the action, in which case the person bringing the action shall have the right to conduct the action.

(e)  When a person or governmental agency brings an action under this Act, no person other than the State's Attorney or Attorney General may intervene or bring a related action based on the facts underlying the pending action unless another statute or common law authorizes that action.

740 ILCS 92/10, 1.

**ANSWER**:   Paragraph 63 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 63 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 63.

## VIII.  FEDERAL AND STATE HEALTH INSURANCE PROGRAMS

64.    The Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (hereinafter "Medicare"), is a health insurance program administered by the Government of the United States that is funded by taxpayer revenue.   The program is overseen by the United States Department of Health and Human Services ("HHS").   Medicare was

designed to be a health insurance program and to provide for the payment of hospital services, medical services and durable medical equipment to persons over sixty-five (65) years of age and others that qualify under the terms and conditions of the Medicare Program, as well as to provide certain prescription drug coverage. Individuals who receive benefits under Medicare are commonly referred to as "beneficiaries."

**ANSWER**: Paragraph 64 sets forth legal conclusions and characterizations that do not require a response. To the extent a response is required, Defendants deny that Paragraph 64 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 64.

65.    Reimbursement for Medicare claims is made by the United States through HHS's Center for Medicare and Medicaid Services ("CMS") which contracts with private insurance carriers known as fiscal intermediaries (for Part A) or carriers (for Part B) or private insurance companies who administer the plans (for Part C) to administer and pay claims, directly or indirectly, from the Medicare Trust Fund.

**ANSWER**:   Paragraph 65 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 65 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 65.

66.    The Medicaid Program, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v (hereafter "Medicaid"), is a Health Insurance Program administered by the Government of the United States and the various individual States and is funded by State and Federal taxpayer revenue.  The Medicaid Program is overseen by HHS through CMS.  Medicaid was designed to assist participating states in providing medical services, durable medical equipment and prescription drugs to financially needy individuals that qualify for Medicaid.

**ANSWER**:   Paragraph 66 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 66 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 66.

88221270.5

67.     In addition to Medicare and Medicaid, there are other federal and state programs providing health insurance. For example, the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS") (now known as "TRICARE"), 10 U.S.C. §§ 1071-1106, provides benefits for healthcare services furnished by civilian providers, physicians, and suppliers to members of the Uniformed Services and to spouses and children of active duty, retired and deceased members.  The program is administered by the Department of Defense and funded by the Federal Government. TRICARE pays for, among other items and services, tests and procedures, durable medical equipment, and prescription drugs for its beneficiaries.

**ANSWER**:     Paragraph 67 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 67 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 67.

68.     Another example is the Federal Employees Health Benefits Program ("FEHBP") which provides health care benefits for qualified

42

federal employees and their dependents.  It pays for, among other items and services, tests and procedures, durable medical equipment, and prescription drugs for its beneficiaries.

**ANSWER**:     Paragraph 68 sets forth legal conclusions and characterizations of federal law that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 68 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 68.

69.    Medicare Part B generally covers diagnostic tests and outpatient care, which should include allergy testing and treatment.

**ANSWER**:     Paragraph 69 sets forth legal conclusions and characterizations that do not require a response.  To the extent a response is required, Defendants deny that Paragraph 69 contains a complete recitation or accurate description or characterization of the applicable law, which speaks for itself, and therefore they deny the allegations in Paragraph 69.

88221270.5

70.    Allergy skin testing is a clinical procedure that is used to evaluate an immunologic response to allergenic material.  The need for testing and interpretation of test findings must be correlated with signs and symptoms of possible allergies as determined by a complete history and physical examination of the patient.  The number and type of antigens used for testing must be chosen judiciously given the patient's presentation and the tester's clinical judgment.

**ANSWER**:  The allegations contained in Paragraph 70 are the subject of expert opinion testimony to which no response is necessary.


71.    Allergy testing is covered when clinically significant allergic history or symptoms that are not controllable by empiric conservative therapy exists.

**ANSWER**:  Certain of the allegations in Paragraph 71 set forth legal conclusions and characterizations that do not require a response; to the extent a response is required, Defendants deny that Paragraph 71 contains a complete recitation or accurate description or characterization the applicable law, which speaks for itself, and therefore they deny such allegations in

44

Paragraph 71.  The remaining allegations in Paragraph 71 are the subject of expert opinion testimony to which no response is necessary.

72.     For Medicare to cover allergy testing, the following criteria **must be** met:

- Testing must correlate specifically to the patient's history and physical findings.
- The test technique and/or allergens tested must have proven efficacy demonstrated through scientifically valid medical studies published in peer-reviewed literature.
- Allergy testing must be performed on patients whose environment provides the reasonable probability of exposure to the specific antigen tested.

**ANSWER**:  Certain of the allegations in Paragraph 72 set forth legal conclusions and characterizations that do not require a response; to the extent a response is required, Defendants deny that Paragraph 72 contains a complete recitation or accurate description or characterization the applicable law, which speaks for itself, and therefore they deny such allegations in Paragraph 72.  The remaining allegations in Paragraph 72 are the subject of expert opinion testimony to which no response is necessary.

73.    Under Medicaid, allergy testing is rarely considered to be "medical necessary."

**ANSWER**: Defendants deny the allegations in Paragraph 73.

74.    Healthcare providers and their billing agents, including Defendants, use Current Procedural Terminology ("CPT") and/or the International Classification of Diseases, Clinically modified (ICD-9-CM or ICD-10) or a HCPCS coding system for billing governmental and private carriers. Provider billing must identify the patient services provided and the medical diagnoses justifying the services.

**ANSWER**:  Certain of the allegations in Paragraph 74 set forth legal conclusions and characterizations that do not require a response; to the extent a response is required, Defendants deny that Paragraph 74 contains a complete recitation or accurate description or characterization the applicable law, which speaks for itself, and therefore they deny such allegations in Paragraph 74.  The remaining allegations in Paragraph 74 are the subject of expert opinion testimony to which no response is necessary.

88221270.5

75.     Medicaid services in Florida are administered through the Agency for Health Care Administration.

**ANSWER**:     Paragraph 75 set forth legal conclusions and characterizations that do not require a response; to the extent a response is required, Defendants deny that Paragraph 75 contains a complete recitation or accurate description or characterization the applicable law, which speaks for itself, and therefore they deny the allegation in Paragraph 75.

76.     Numerous providers and healthcare clinics in Florida have conducted allergy tests in concert with BioTek, with more forecasted.

**ANSWER**:  Defendants deny the allegations in Paragraph 76.

77.     Upon information and belief, a portion of those tests were presented to and paid for by governmental payors, including Medicare, Medicaid, and TRICARE.

**ANSWER**:  Defendants deny the allegations in Paragraph 77.

78.     The Georgia Medicaid program is administered through the Georgia Department of Community Health, Medical Assistance Plans

Division.   In the Georgia program, Medicaid benefits are provided to individuals either through managed care (Georgia Families®) or fee-for-service ("FFS") arrangements.

**ANSWER**:      Paragraph 78 set forth legal conclusions and characterizations that do not require a response; to the extent a response is required, Defendants deny that Paragraph 78 contains a complete recitation or accurate description or characterization the applicable law, which speaks for itself, and therefore they deny the allegation in Paragraph 78.


79.    All enrolled Medicaid care providers in Georgia may bill the Medical Assistance Plans Division for only those covered services that are "medically necessary and within accepted professional standards of practice."    Several of the care management organizations ("CMO") providers in Georgia have still higher and more specific requirements. For example, CareSource (a CMO) requires prior approval and clearly documented medical necessity, including a physical examination, for allergy testing and allergy immunotherapy.  WellCare, another Georgia CMO, states that "routine allergy re-testing" is not medically necessary and requires one

of 11 criteria to be met before allergy testing is considered medically necessary.

**ANSWER**:   Paragraph 79 set forth legal conclusions and characterizations that do not require a response; to the extent a response is required, Defendants deny that Paragraph 79 contains a complete recitation or accurate description or characterization the applicable law, which speaks for itself, and therefore they deny the allegation in Paragraph 79.

80.   Numerous providers and clinics in Georgia have conducted allergy tests in concert with BioTek Labs and BioTek Services, with more forecasted.

**ANSWER**:  Defendants deny the allegations in Paragraph 80.

81.   Upon information and belief, a portion of those tests were presented to and paid for by governmental payors, including Medicare, Medicaid, and TRICARE.

**ANSWER**:  Defendants deny the allegations in Paragraph 81.

82.     The Maryland Department of Health (MDH) is charged with the administration of Medicaid services in Maryland.

**<u>ANSWER</u>**:     Paragraph 82 set forth legal conclusions and characterizations that do not require a response; to the extent a response is required, Defendants deny that Paragraph 82 contains a complete recitation or accurate description or characterization the applicable law, which speaks for itself, and therefore they deny the allegation in Paragraph 82.

83.     Numerous providers and clinics in Maryland have conducted allergy tests in concert with BioTek Labs and BioTek Services, with more forecasted.

**<u>ANSWER</u>**:  Defendants deny the allegations in Paragraph 83.

84.     Upon information and belief, a portion of those tests were presented to and paid for by governmental payors, including Medicare, Medicaid, and TRICARE.

**<u>ANSWER</u>**:  Defendants deny the allegations in Paragraph 84.

88221270.5

## IX.   FACTUAL ALLEGATIONS

85.    Allergy is the fifth leading chronic disease in the United States, and allergy and asthma affect one in five Americans.

**ANSWER**:  Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 85 and therefore deny them.

86.    From March 2017 through the present, Relator has worked for BioTek Labs and BioTek Services under an agreement signed with Defendant Ancillary Service Consultants, LLC ("ASC"), an affiliate of Defendant BioTek Labs, LLC, as a "Marketer" within the State of New York.

**ANSWER**:  Defendants admit that Relator entered into an agreement with ASC in March of 2017 whereby she would provide marketing services as an independent contractor.  Defendants deny the remaining allegations in Paragraph 86.

87.    Relator's job duties included marketing BioTek Labs' and BioTek Service's allergy testing and treatment labs to medical providers, including individual physicians, medical groups and hospitals.

88221270.5

**ANSWER**:  Defendants admit that Relator entered into an agreement with ASC in March of 2017 whereby she would provide marketing services as an independent contractor.  Defendants deny the remaining allegations in Paragraph 87.

88.    Relator was compensated by Defendants only after BioTek Labs or BioTek Services executed a "Service Agreement" with a medical provider solicited by, and enrolled by, Relator. Relator had the option to receive a one-time commission payment or an ongoing percentage of the provider's payments to BioTek Labs or BioTek Services as further compensation.

**ANSWER:**  Paragraph 88 contains a characterization or summary of information contained in an agreement between Relator and Defendant ASC, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 88 represent a true and complete recitation of the agreement between Relator and Defendant ASC.  Defendants deny the remaining allegations contained in Paragraph 88.

88221270.5

89.     During her employment with ASC providing marketing for BioTek Labs and BioTek Services, Relator received payments from both ASC and BioTek Labs.

**ANSWER**:  Defendants admit that Relator was compensated for her services under the terms of an agreement with ASC executed in March of 2017.  Defendants deny the remaining allegations in Paragraph 89.

90.     For example, Relator received bonus and monthly commission checks issued by Defendant ASC (not BioTek Labs or BioTek Services).  Most of these checks were handwritten and signed by BioTek Lab's CEO, George Beauchamp.

**ANSWER**:  Defendants admit that Relator was compensated for her services under the terms of an agreement with ASC executed in March of 2017.  Defendants deny the remaining allegations in Paragraph 90.

91.     In comparison, expense reimbursement checks were issued by BioTek Labs, LLC to Relator, from a different bank account.

88221270.5

**ANSWER**:  Defendants admit that Relator was compensated for her services under the terms of an agreement with ASC executed in March of 2017.  Defendants deny the remaining allegations in Paragraph 91.

92.    In connection with her employment, Relator received emails, memos and other internal communications with regards to business practices of BioTek Labs and BioTek Services and other aspects of their business, including information that some of its billing practices likely violated the federal FCA and AKS, as well as various State *Qui Tam* Statutes, including those identified above.

**ANSWER**:  Defendants specifically deny that Relator was employed by any of the Defendants.  Relator entered into an agreement with ASC in March of 2017 whereby she would provide marketing services as an independent contractor.   Defendants admit that Relator received communications regarding the business practices of BioTek Labs, LLC and BioTek Services, LLC, however, Defendants specifically deny that Relator received any communications, memos, or emails indicating that Defendants' business practices "likely violated federal FCA and AKS, as well as various

54

State *Qui Tam* Statutes, including those identified below." Defendants deny

the remaining allegations in Paragraph 92.

93.    Relator believes, and therefore avers, that the same marketing

practices and schemes used by ASC, BioTek Labs and BioTek Services in

New York State, which she witnessed, were utilized by other marketing

representatives of ASC, BioTek Labs and BioTek Services across the country.

**ANSWER**:  Defendants deny the allegations in Paragraph 93.

94.    For example, Relator participated in training sessions where the

services, marketing practices and schemes of BioTek Labs and BioTek

Services were discussed and taught.  Relator believes, and therefore avers,

that the same training was provided to other marketing representatives of

ASC, BioTek Labs and BioTek Services across the country.

**ANSWER**:  Defendants deny the allegations in Paragraph 94.

95.    Specifically, for example, Relator is aware that the marketing and

promotion program used by ASC, BioTek Labs and BioTek Services in New

York, which Relator was taught, and utilized, was the same marketing and

88221270.5

promotion program utilized by sales representatives of ASC, BioTek Labs and BioTek Services in Florida.

**ANSWER**:  Defendants deny the allegations in Paragraph 95.

A.      **BioTek Labs and BioTek Services Promoted Their Services to Healthcare Providers**

96.      Each of BioTek Labs and BioTek Services, in the company's internal Marketer Training Manual, trains its sales representatives to promote its services with the following guidance:

- "BioTek allows its partners to implement their own allergy program with minimal upfront costs." and
- "The financial model is extremely beneficial with no upfront costs required to implement the allergy program."

*See also* http://www.bioteklabs.com/ (last visited on May 25, 2022) ("With an allergy program, you can implement an additional revenue stream for your office" or "Add an additional revenue stream.").

**ANSWER**:  Paragraph 96 contains a characterization or summary of information contained in a Marketing Training Manual for Defendants BioTek Labs, LLC and BioTek Services LLC and the website for BioTek Labs, LLC, which speaks for itself and does not require a response.  To the extent

a response is required, Defendants deny that the allegations in Paragraph 96 represent a true and complete recitation of the Marketing Training Manual and BioTek Labs, LLC's website. Defendants deny the remaining allegations contained in Paragraph 96.

97.     Additionally, Relator was trained to make such claims (i.e., "no upfront costs" and "no overhead") on sales calls by Defendant Beauchamp and Defendant Panessa.

**ANSWER**: Defendants deny the allegations in Paragraph 97.

98.     Relator observed Defendant Beauchamp and Defendant Panessa promote BioTek Labs and BioTek Services with such pronouncements during sales calls. *See infra* ¶ 112.

**ANSWER**: Defendants deny the allegations in Paragraph 98.

99.     BioTek Labs previously claimed on its website – "With virtually no effort, you can have this additional revenue stream. Offer your patients better health at home with the very best in allergy testing."

**ANSWER**: Paragraph 99 contains a characterization or summary of information contained on the website for BioTek Labs, LLC, which speaks

for itself and does not require a response. To the extent a response is required, Defendants deny that the allegations in Paragraph 99 represent a true and complete recitation of the information contained on BioTek Labs, LLC's website. Defendants deny the remaining allegations contained in Paragraph 99.

100. In a PowerPoint marketing presentation, BioTek Labs presented the following promotional language:

**Cost to the Practice**

- BioTek provides all equipment, supplies and medical personnel and installs lab with no initial up front expense to the Practice;
  - The Practice provides:
    - o 100-150 sq. feet of dedicated space (no carpet or wallpaper for OSHA compliance)
    - o Phone line & internet access
    - o Sharps biohazard disposable service
  - Other than treating patients, that's it!

*See also* https://www.bioteklabs.com/about-us/physician-interviews/4 (How Does Our Program Effect Your Bottom Line? | BioTek Labs) (last visited on May 31, 2022) (includes the banner, "What is the Cost to the Practice?" and the tagline, "Other than the location, that's it.").

88221270.5

**ANSWER**:  Paragraph 100 contains a characterization or summary of information contained on the website for BioTek Labs, LLC, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 100 represent a true and complete recitation of the information contained on BioTek Labs, LLC's website.  Defendants deny the remaining allegations contained in Paragraph 100.

101.   Monthly revenue reports that BioTek Labs and BioTek Services provides to providers includes the following data:

Your results for **December, 2018** are in!

Net Revenue (After Expenses) for December, 2018:   $▇▇▇▇

Net Revenue (After Expenses) Year to Date 2018:   $▇▇▇▇

Net Revenue Average of last 3 Months:   $▇▇▇▇

Maintaining your current patient engagement, your practice's projected 6 months Net Revenue from your allergy program:   $▇▇▇▇

Number of Patient Office Visits Needed to Produce ▇▇▇▇ 2018 Net Revenue from Allergy Program: ▇▇▇▇

By referring one additional allergy patient per week, you could increase your practice's monthly NET revenue by an average of $2,000.

* The patient visit projection is based on an average reimbursement of $75.00 for an office visit representing a $20.00 net profit after all expenses including physician salary are considered.

**ANSWER**:  Paragraph 101 contains a characterization or summary of information contained on a purported monthly revenue report alleged to have been sent by Defendants BioTek Labs, LLC and BioTek Services LLC to an unidentified provider.  Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 101 and the veracity of the purported monthly revenue report and therefore deny the allegations in Paragraph 101.

60

102.   Each of BioTek Labs and BioTek Services boasts that providers who utilize BioTek's services "**Earn More** – On average, those who have implemented BioTek in their offices earn an additional 10 to 20% gross revenue each month."  http://www.bioteklabs.com (emphasis in original) (last visited on May 25, 2022).

**ANSWER**:  Paragraph 102 contains a characterization or summary of information contained on the website for BioTek Labs, LLC, which speaks for itself and does not require a response.   To the extent a response is required, Defendants deny that the allegations in Paragraph 102 represent a true and complete recitation of the information contained on BioTek Labs, LLC's website.   Defendants deny the remaining allegations contained in Paragraph 102.


103.   BioTek Labs' monthly newsletter, which is sent to its internal sales representatives, as well as outside customers and vendors, details the goals and objectives of its employees:

| Month | Year | Location | Goal of BioTek Employee |
|-------|------|----------|-------------------------|
| November | 2017 | Maplewood, NJ | • To increase overall testing numbers.<br>• To **improve my conversion rate.** |

| December | 2017 | Maplewood, NJ | • Obtain allergy candidates.<br>• **Convert patients** who have tested positive. |
|----------|------|---------------|-----------------------------------------------------------------------------------|
| December | 2017 | Plattsburgh, NY | • To **increase overall testing numbers**. To improve my conversion rate. |
| March | 2018 | Decatur, GA | • Increase testing numbers.<br>• **Convert more patients** to therapy. |
| April | 2018 | Knoxville, TN | • **Increase referrals**. |
| June | 2018 | Lexington, MS | • To test at least five patients and encourage and make sure the five patients convert. |
| August | 2018 | Woodhaven, NY | • To get more than 50% of patients tested to accept therapy. |
| September | 2018 | Hillsboro, OR | • Call as many patients as I can to come into test who have Approvals.<br>• Submitting Demos for potential patients for testing. |
| October | 2018 | Eastridge, TN | • Obtain at least 2 to 5 allergy candidates a week.<br>• To **improve conversion rate**. |
| December | 2018 | Unknown | • To increase my number of patients tested every week. |
| January | 2019 | Utah | • Bring in more ideas to increase patient flow and referrals from the providers. |
| February | 2019 | New Yok | • **Test at least 3 patients a week**.<br>• Convert all my patients. |

(emphasis added).

88221270.5

**ANSWER**:  Paragraph 103 contains a characterization or summary of information contained on a purported monthly newsletter alleged to have been sent by Defendants BioTek Labs, LLC to unidentified sales providers, outside customers and vendors. Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 103 and the veracity of the purported monthly newsletter and therefore deny the allegations in Paragraph 103.

**B.** **Allergy Services Offered by BioTek Labs and BioTek Services**

104. Each of BioTek Labs and BioTek Services provides medical offices with allergy testing and immunotherapy treatment services.

**ANSWER**:  Defendants BioTek Labs, LLC and BioTek Services LLC admit that they provide medical offices with allergy testing and immunotherapy services.  The remaining Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 104 and therefore deny them.

105. Specifically, each of BioTek Labs and BioTek Services enters exclusive contracts with providers to operate an allergy testing laboratory

88221270.5

on the provider's behalf.  In the contracts, BioTek Labs or BioTek Services, as applicable, grants the providers a royalty-free license to use its intellectual property to provide allergy testing and treatment.

**ANSWER**:  Defendants BioTek Labs, LLC and BioTek Services LLC admit that they entered into contracts with medical providers and practices to provide allergy testing services. Defendants BioTek Labs, LLC and BioTek Services LLC deny the remaining allegations contained in Paragraph 105. The remaining Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 105 and therefore deny them.

106.   Each of BioTek Labs and BioTek Services offers its "Airborne Sensitivity Testing", which is a 20-30 minute test, to patients of providers that contract with BioTek Labs or BioTek Services.

**ANSWER**:  Defendants BioTek Labs, LLC and BioTek Services LLC deny the allegations contained in Paragraph 106.  The remaining Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 106 and therefore deny them.

107.   Each of BioTek Labs and BioTek Services describes its services as follows:

> Testing begins with a small allergy applicator filled with airborne allergens, specific to the geographic region, to abrade/scratch the skin. Within 10-15 minutes, irritations to the skin cause a local reaction revealing the true airborne sensitivities your patients suffer from on a daily basis.
>
> Your patients will benefit by participating in Biotek's Airborne Immunotherapy treatment protocol. As opposed to traditional allergy desensitization treatment where the patient has to drive to the allergists' office EVERY TIME to receive treatment, Biotek's program teaches the patient to "self-administer" the Airborne Immunotherapy with "injections" that are taken every other day. The needle is very small and inserted just under the patient's skin. Translation: Your patient receives convenient and effective allergy desensitization designed to eliminate the cause of your patients' allergic conditions.
>
> The practice uses an approved third party who specializes in diagnostic coding and billing possessing extensive knowledge of allergy testing and immunotherapy services. All payments are delivered directly to you, the provider, in the manner in which you currently receive payment (whether by mail or electronically) to provide seamless revenue for you. We then invoice you twice monthly for Biotek's agreed upon fair market value of the services provided.
>
> Our process...we install our "labs" into existing, well established medical offices. We like to think of it as an "office within an office", a turnkey operation. Depending on the volume of the practice and number of physicians, our average space needed is 120 sq. ft. that will be dedicated to the lab. We supply everything that will be needed to make the operation successful from the beginning...a fully trained Medical Assistant, equipment, supplies, and laboratory.

We would enjoy the opportunity to discuss how we can work with your practice to make your patients healthier and your practice more profitable. . . . By being the first in your area, you can enjoy the benefits when your colleagues refer patients to you for allergy testing and treatment. http://www.bioteklabs.com/services (last visited on May 25, 2022). *Compare infra* ¶ 112.

**ANSWER**:  Paragraph 107 contains a characterization or summary of information contained on the website for BioTek Labs, LLC, which speaks for itself and does not require a response.   To the extent a response is required, Defendants BioTek Labs, LLC and BioTek Services LLC deny that the allegations in Paragraph 107 represent a true and complete recitation of the information contained on BioTek Labs, LLC's website.   Defendants BioTek Labs, LLC and BioTek Services LLC deny the remaining allegations contained in Paragraph 107.   The remaining Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 107 and therefore deny them.

108.   BioTek Labs and BioTek Services cause the providers to utilize two Current Procedural Terminology (CPT) codes for billing the allergy testing procedures - 95004 and 95165.

66

**ANSWER**:  Defendants deny the allegations contained in Paragraph 108.

109.  CPT code 95004, as maintained by American Medical Association, is a medical procedural code under the range - Allergy Testing Procedures.

**ANSWER**:  Paragraph 109 contains a characterization or summary of information contained in the America Medical Association's ("AMA") Current Procedural Terminology ("CPT") Code Listing, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 109 represent a true and complete recitation of the AMA's CPT Code Listing, which speak for themselves, and therefore they deny the allegations in Paragraph 109.

110.  CPT code 95004 is defined as "Percutaneous tests (scratch, puncture, prick) with allergenic extracts, immediate type reaction, including test interpretation and report by a physician, specify number of tests." (2013, AMA CPT Professional Edition, p. 529).

**ANSWER**:  Paragraph 110 contains a characterization or summary of information contained in the AMA's CPT Code Listing, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 110 represent a true and complete recitation of the AMA's CPT Code Listing, which speak for themselves, and therefore they deny the allegations in Paragraph 110.

111.  CPT Code 95165 is defined as "Professional services for the supervision of preparation and provision of antigens for allergen immunotherapy; single or multiple antigens (specify number of doses)." (2013, AMA CPT Professional Edition, p. 531).

**ANSWER**:  Paragraph 111 contains a characterization or summary of information contained in the AMA's CPT Code Listing, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 111 represent a true and complete recitation of the AMA's CPT Code Listing, which speak for themselves, and therefore they deny the allegations in Paragraph 111.

88221270.5

## C.   **BioTek Business Models**

112.   BioTek Labs and BioTek Services offer two business models for providing allergy testing and immunotherapy treatment in medical offices: a "Labs" (or "Employee Insertion") model offered by BioTek Labs, and a "Services" (or "Licensing") model offered by BioTek Services.

**ANSWER**:  Defendants deny the allegations in Paragraph 112.

### a.  **Labs/Employee Insertion Model**

113.   In the **Labs model**, BioTek Labs offers and provides the provider:

- A royalty-free license to use BioTek Labs' intellectual property to provide allergy testing and treatment services;
- A full time licensed practical nurse ("LPN") who works in the medical office, free of charge to the provider; All equipment and supplies for allergy testing and immunotherapy, free of charge to the provider;
- Continued training for the physicians engaged by the provider, free of charge to the provider; and
- 25% of the gross collections for allergy testing and treatment.

**ANSWER**:  Paragraph 113 contains a characterization or summary of information contained in marketing materials for Defendant BioTek Labs, LLC, which speaks for itself and does not require a response.  To the extent a response is required, Defendant BioTek Labs, LLC denies that the

69

allegations in Paragraph 113 represent a true and complete recitation of the marketing materials, which speak for themselves, and therefore Defendant BioTek Labs, LLC denies the allegations in Paragraph 113.  The remaining Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 113 and therefore deny them.

114.   In the **Labs model**, the medical office provides:

- A 100-square foot examination room;
- Phone line and internet access;
- Sharps biohazard disposable service;
- Review of allergy test results and signs off on the immunotherapy; and
- Referral of patients.

**ANSWER**:  Paragraph 114 contains a characterization or summary of information contained in marketing materials for Defendant BioTek Labs, LLC, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 114 represent a true and complete recitation of the marketing materials, which speak for themselves, and therefore they deny the allegations in Paragraph 114.

70

115.   BioTek Lab's marketing materials claim that this model provides an average net benefit to the medical practice of $750 per patient for immunotherapy.

**ANSWER**:  Paragraph 115 contains a characterization or summary of information contained in marketing materials for Defendant BioTek Labs, LLC, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 115 represent a true and complete recitation of the marketing materials, which speak for themselves, and therefore they deny the allegations in Paragraph 115.

116.   BioTek Labs utilized form agreements for the **Labs model** in the following 21 states:   Arizona, California, Connecticut, Florida, Georgia, Idaho, Illinois, Kentucky, Maryland, Massachusetts, Missouri, Nevada, New Hampshire, New Jersey, New York, North Carolina, Oregon, Pennsylvania, South Carolina, Tennessee, Texas.

**ANSWER**:  Defendant BioTek Labs, LLC denies the allegations in Paragraph 116.  The remaining Defendants lack information and knowledge

71

sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 116 and therefore deny them.

### b. Services/Licensing Model

117.    In the **Services model**, the provider or medical office directly employs the LPN who performs allergy testing and immunotherapy services in its office.

**ANSWER**:  Paragraph 117 contains a characterization or summary of information contained in marketing materials for Defendant BioTek Services, LLC, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 117 represent a true and complete recitation of the marketing materials, which speak for themselves, and therefore they deny the allegations in Paragraph 117.

118.    In the **Services model**, BioTek Services offers and provides the provider:

- A royalty-free license to use BioTek Service's intellectual property to provide allergy testing and treatment services;

- All the materials and supplies needed to perform testing and create all treatments, either free of charge or at a below market charge to the provider;
- Extensive training and BioTek certification for MA/LPN, either free of charge or at a below market charge to the provider;
- Continued training of staff regarding clinical process updates, either free of charge or at a below market charge to the provider;
- Implementation team ensuring successful start-up;
- Continuing updates of required medical records to meet standards and ongoing MA/LPN oversight;
- Access to Medical Director for peer to peer discussion;
- Ongoing insurance verification services for allergy program;
- Review and response preparation for insurance issues;
- License to utilize BioTek Services' proprietary processes for clinical and billing application; and
- The entire net profit resulting from collections for allergy testing and treatment.

**ANSWER**:  Paragraph 118 contains a characterization or summary of information contained in marketing materials for Defendant BioTek Services, LLC, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 118 represent a true and complete recitation of the marketing materials, which speak for themselves, and therefore they deny the allegations in Paragraph 118.

88221270.5

119.   BioTek Services claims that the costs of the **Services model** to the medical practice would be:

- $950 to train designated MA/LPN for program;
- Travel expenses for training in Miami (1 week);
- Equipment necessary for the program (fridge, blood draw chair, storage cabinet, computer with internet access; and
- 10′ x 10′ room.

**ANSWER**:  Paragraph 119 contains a characterization or summary of information contained in marketing materials for Defendant BioTek Services, LLC, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 119 represent a true and complete recitation of the marketing materials, which speak for themselves, and therefore they deny the allegations in Paragraph 119.

120.   BioTek Services' marketing materials claim this model provides an average net benefit to the medical practice of $1,200 per patient for immunotherapy.

**ANSWER**:  Paragraph 120 contains a characterization or summary of information contained in marketing materials for Defendant BioTek Services, LLC, which speaks for itself and does not require a response.  To

the extent a response is required, Defendants deny that the allegations in Paragraph 120 represent a true and complete recitation of the marketing materials, which speak for themselves, and therefore they deny the allegations in Paragraph 120.

121.   BioTek Services has form agreements for the **Services model** in the following 28 states:   Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Indiana, Iowa, Kentucky, Louisiana, Maryland, Massachusetts, Mississippi, Missouri, New Hampshire, New Jersey, New York, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, and Washington.

**ANSWER**:   Defendant BioTek Labs, LLC denies the allegations in Paragraph 121.  The remaining Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 121 and therefore deny them.

122. In   both   the   **Labs/Employee   Insertion**   and   the **Services/Licensing** models, BioTek Labs or BioTek Services, as applicable, provides the following services to the provider or medical providers:

75

- Insurance verification
- Scheduling / follow-ups
- Third party billing
- Denials management
- Medical policy monitoring
- Medical necessity records

**ANSWER**:  Paragraph 122 contains a characterization or summary of information contained in marketing materials for Defendants BioTek Services, LLC and BioTek Labs, LLC, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 122 represent a true and complete recitation of the marketing materials, which speak for themselves, and therefore they deny the allegations in Paragraph 122.

123.   In either model, providers purchase supplies exclusively from BioTek Labs, BioTek Services, or one of its suppliers, and, in turn, are provided with the services described above.  Upon information and belief, GREER Laboratories, Inc., a provider of allergy and immunotherapy products, supplies accounts of BioTek Labs and BioTek Services with the necessary products, including antigens.

88221270.5

**ANSWER**:  Paragraph 123 contains a characterization or summary of information contained in marketing materials for Defendants BioTek Services, LLC and BioTek Labs, LLC, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 123 represent a true and complete recitation of the marketing materials, which speak for themselves, and therefore they deny the allegations in Paragraph 123.

### D.    BioTek's Business Practices

124.  For example, Defendant CEO Beauchamp described BioTek's two business models, without distinguishing between the model offered by BioTek Labs and the model offered by BioTek Services, in a February 2018 email sent to the office manager of a family physician in New York State as follows:

> Good morning. I wanted to follow up with you with regards to the allergy testing program that my partner Brian Panessa and [Sales representative] previously spoke with you about. [Sales representative] indicated that you are currently offering allergy testing and no treatment in your practice(s). Although there is some money to be made with the testing, the majority of the revenue comes from the therapy. I have attached two payer lists to show you what we are currently averaging on the test (95004) and the therapy (95165) in gross dollars. As Brian indicated to

you, the codes are billed under your tax ID and NPI numbers. Therefore, all of the revenue comes to your practice directly. Once your office confirms recent of the money received, via reports provided by the third party biller, both BioTek and Alemar bill your practice pursuant to the terms of the contracts.

The breakdown for how the money is split is as follows; Alemar Billing Consultants collects 5%, BioTek bills on a per antigen tested and per dose paid format (see attached BioTek Services Agreement for rates). The amount left over is the NET revenue to the practice. This amount typically averages between $750 - $1,100 after both BioTek and Alemar are paid. . . . you are averaging around $400 on each test. I anticipate that your NET after costs (supplies, employees, billing, and physician time) is likely around $150--180. So you can see these amount are considerably higher than testing by itself.

I know that there is a question regarding Health First in your practice. As Brian mentioned to you, Health First specifically excludes primary care physicians from billing for allergy services. Brian suggested speaking to Helath [sic] First to see if your Cardiologist could bill for the services. Also what percentage of your practice does Health First make up? This info would be helpful to move the conversation along further.

We also offer a licensing model that may be of interest to you as well. Basically with this model the main difference is that you employee the person that runs the allergy program. We will train one of your LPNs, take care of all of the clinical supplies, provide all insurance verifications, and work with Alemar on any appeals or denials that are needed. We will also provide ongoing training and management audits to help oversee the allergy program. With this model since you are covering the employee costs, you will retain the lions share of the profits. Alemar still receives 5% of the collections and BioTek charges a flat fee per test and a flat fee per therapy mixed. BioTek will charge the practice:

- $950 for training (This our cost to train your employee. 40 hour training and certification down in FL)
- $125 for each test performed
- $675 for each therapy mixed
- Direct costs for getting your employee to training (flight, hotel, car rental). BioTek will cover these costs and deduct these amounts off of future invoices so that you are never coming out of pocket.
- $1500 for the equipment (fridge, blood draw chair, storage for supplies, desk, laptop, printer, start up office supplies) Again . . . deducted from future invoices.

So in this model if we assume an average reimbursement of $2500 and subtract the costs mentioned above (5% to Alemar $125, Test Fee $125, Therapy Fee $675) that leaves a NET profit to your practice of $1575 per patient. We are open to both options, whether you supply the employee or BioTek does. We look forward to speaking with you again soon.

**ANSWER**:  Paragraph 124 contains a characterization or summary of

information contained in a purported email from Defendant Beauchamp to

an unidentified office manager of a family physician in New York State,

which speaks for itself and does not require a response.  To the extent a

response is required, Defendant Beauchamp denies that the allegations in

Paragraph 124 represent a true and complete recitation of the purported

email, which speaks for itself, and therefore they deny the allegations in

Paragraph 124.  The remaining Defendants lack information and knowledge

88221270.5

sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 124 and therefore deny them.

125.   Defendants Beauchamp and Panessa, and other marketing representatives of ASC, BioTek Labs, and BioTek Services knowingly and willfully made promotional statements to providers emphasizing the remuneration and potential profitability of the models offered by BioTek Labs and BioTek Services to medical practices in order to induce the physicians engaged by those medical practices to refer patients for allergy testing and treatment for which payment may be made in whole or in part under a Federal health care program.

**ANSWER**:  Defendants deny the allegations in Paragraph 125.

126.   The schemes offered by each of BioTek Labs and BioTek Services "fly under the radar" by not billing government or private insurance programs under its own NPI number.

**ANSWER**:  Defendants deny the allegations in Paragraph 126.

127.   Instead, each of BioTek Labs and BioTek Services requires each of its accounts (*i.e.*, providers, medical offices) to outsource billing services for the allergy testing and immunotherapy performed under the license provided by BioTek Labs or BioTek Services, as applicable, to Defendant Alemar, a third-party medical billing coordinator.

**ANSWER**:  Defendants deny the allegations in Paragraph 127.

128.   Defendant Alemar then submits claims, on behalf of the medical provider, for allergy testing and immunotherapy performed under the license provided by BioTek Labs or BioTek Services, as applicable, <u>under the NPI of the provider</u>, even in the case of the Labs/Employee Insertion model where the individual performing the testing services is an employee of BioTek Labs and the office just provides a room, refers the patients and approves immunotherapy treatment.

**ANSWER**:  Defendants deny the allegations in Paragraph 128.

129.   All revenue generated from the allergy testing and immunotherapy services initially is paid (by Government Healthcare Programs or private insurers) to the medical provider/office. Alemar then

81

bills the medical offices bimonthly for BioTek Labs', BioTek Services' and Alemar's agreed shares, as applicable, of the reimbursement payments.

**ANSWER**:   Defendants admits that the revenue generated by the medical services provided by its provider clients is paid to such provider clients. Defendants also admit that Defendants BioTek Labs, LLC, BioTek Services, LLC and Alemar appropriately bill for their services to their provider clients as agreed in their respective written contracts with such provider clients.  Defendants deny the remaining allegations in Paragraph 129.

130.  In its Marketing Manual, each of BioTek Labs and BioTek Services describes the provider's "benefit" as follows:

> Let's assume an average doctor sees 25 patients/day, with 22 medical working days/month. This equates to 550 patient visits/month. To be conservative, we will round down to 500 patients per month. If we apply 4% of the doctor's monthly population (very conservative) there are 20 patients a month that should qualify for the Allergy Testing and Treatment Program. Each patient that goes through the program produces on average $600.00 per patient net to the practice; At 20 patients through the program (less than 1 a day) the doctor profits approximately $12,000.00 a month net/net or $144,000.00 a year.

**ANSWER**:  Paragraph 130 contains a characterization or summary of information contained in marketing materials for Defendants BioTek Services, LLC and BioTek Labs, LLC, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 130 represent a true and complete recitation of the marketing materials, which speak for themselves, and therefore they deny the allegations in Paragraph 130.

131.  Each of BioTek Labs and BioTek Services identifies its "Target Audience" as family practices, pediatrics, internal medicine, general practice, ENTs and pulmonologists.

**ANSWER**:  Paragraph 131 contains a characterization or summary of information contained in marketing materials for Defendants BioTek Services, LLC and BioTek Labs, LLC, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 131 represent a true and complete recitation of the marketing materials, which speak for themselves, and therefore they deny the allegations in Paragraph 131.

88221270.5

132.   In a slide deck describing its services, each of BioTek Labs and BioTek Services advertised itself as offering the following "Behind the Scenes" services to providers:

- Insurance Verifications
- Scheduling/Follow-ups
- Expert 3rd Party Billing
- Denials Management
- Medical Policy Monitoring
- Medical Necessity Records

**ANSWER**:  Paragraph 132 contains a characterization or summary of information contained in marketing materials for Defendants BioTek Services, LLC and BioTek Labs, LLC, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 132 represent a true and complete recitation of the marketing materials, which speak for themselves, and therefore they deny the allegations in Paragraph 132.

133.   Under the Labs/Employee Insertion model offered by BioTek Labs, each provider/medical office account pays 70% of gross revenues from allergy testing and immunotherapy to BioTek Labs, 5% of gross revenues to Alemar and retains 25% of gross revenues.

84

**<u>ANSWER</u>**:  Paragraph 133 purportedly contains a characterization or summary of information contained contractual terms between Defendants BioTek Services, LLC and/or BioTek Labs, LLC and their clients, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 133 represent a true and complete recitation of the contractual terms between Defendants BioTek Services, LLC and/or BioTek Labs, LLC and their clients, which speak for themselves, and therefore they deny the allegations in Paragraph 133.

134. Under the Services/Licensing model utilized during the Relator's employment with ASC, the provider/medical office pays BioTek Services an agreed amount (e.g., $3.25 in New York state) for each antigen utilized in the percutaneous test performed per patient per encounter and an agreed amount (e.g., $5.58 in New York state) per dose for the creation of a one-year supply of immunotherapy per patient.  The provider retains the entire net profit resulting from collections for allergy testing and treatment pursuant to the license with BioTek Services.

88221270.5

**ANSWER**:  Paragraph 134 purportedly contains a characterization or summary of information contained contractual terms between Defendants BioTek Services, LLC and/or BioTek Labs, LLC and their clients, which speaks for itself and does not require a response.  To the extent a response is required, Defendants deny that the allegations in Paragraph 134 represent a true and complete recitation of the contractual terms between Defendants BioTek Services, LLC and/or BioTek Labs, LLC and their clients, which speak for themselves, and therefore they deny the allegations in Paragraph 134.

      E.      **The Business Models Offered and Provided by BioTek Labs and BioTek Services Violated AKS and Caused the Submission of False Claims**

135.   Under the business models offered to providers, BioTek Labs and BioTek Services each offered and granted providers a royalty-free license to use its intellectual property to provide allergy testing and treatment and other remuneration, and one purpose of those arrangements was to induce the providers to refer patients for allergy testing and treatment services for which payment may be made in whole or in part under a federal health program.

88221270.5

**ANSWER**:  Defendants deny the allegations in Paragraph 135.

136.   The remuneration offered and granted to providers by each of BioTek Labs and BioTek Services was not fair market value for services rendered by the providers because each business model required "virtually no effort" by the providers.

**ANSWER**:  Defendants deny the allegations in Paragraph 136.

137.   None of the statutory exceptions or regulatory safe harbors of AKS apply.

**ANSWER**:  Defendants deny the allegations in Paragraph 137.

138.   As such, BioTek Labs and BioTek Services could not have reasonably concluded that the remuneration offered and granted to providers under the Services Agreements did not violate AKS.  BioTek Labs and BioTek Services each knew it was in violation of AKS and still, with the knowledge of and at the direction of Defendants Beauchamp and Panessa, knowingly caused Alemar to submit tainted, ineligible claims for

reimbursement to government payers and made false statements on behalf of providers in violation of the federal FCA and State *Qui* Tam Statutes.

**ANSWER**:  Defendants deny the allegations in Paragraph 138.


F.    **Specific Claims Submitted By Physicians/Medical Practices Under  Agreements With BioTek Labs and BioTek Services**

139.  In  May  2018,  BioTek  Labs,  LLC,  entered  into  a  Services Agreement (the "Georgia Medical Practice No. 1 Services Agreement") with Georgia  Medical  Practice  No.  1  ("Ga.  Practice  No.  1"),  a  pediatric  medical practice located in the State of Georgia.

**ANSWER**:  Paragraph 139 and the footnote thereto make allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite  particularity  and,  as  such,  Defendants  are  without  knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 139 and the footnote thereto and therefore deny them.


140.   Defendant CEO Beauchamp executed the agreement on behalf of BioTek Labs.

**ANSWER**:  Paragraph 140 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 140 and therefore deny them.

141.   Ga. Practice No. 1 agreed to implement BioTek Labs' "Sensitivity Program", which included BioTek Labs administering allergy testing to Ga. Practice No. 1's patients and assisting in the creation of immunotherapy for Ga. Practice No. 1's patients.

**ANSWER**:  Paragraph 141 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 141 and therefore deny them.

88221270.5

142.   The term of the Georgia Medical Practice No. 1 Services Agreement was for one year, with automatic extensions unless one party to the agreement terminated the agreement.

**ANSWER**:  Paragraph 142 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 142 and therefore deny them.

143.   BioTek Labs was obligated to provide, among other things, supplies and equipment, personnel, and training for Ga. Practice No. 1's physicians and staff.

**ANSWER**:  Paragraph 143 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 143 and therefore deny them.

88221270.5

144.   The Georgia Medical Practice No. 1 Services Agreement also required that the medical practice make "reasonable efforts to bill and collect all fees" for reimbursement of BioTek Labs' "[s]ervices provided to beneficiaries of Medicare, Medicaid, Medicare or Medicaid Replacements, Medicare or Medicaid Manage Care or any other state or federally funded healthcare program[s]".

**ANSWER**:  Paragraph 144 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 144 and therefore deny them.

145.   The compensation provision of the Georgia Medical Practice No. 1 Services Agreement was as follows:

(a)    Payment for Services.

i.    As full consideration for all BL Services, Client shall pay to BL [BioTek Labs, LLC] seventy percent (70%) of Gross Collections (defined as all collections received, either during or

91

following the term of this Agreement, by Client for BL Services)
attributable to such BL Services. Additionally, five percent (5%)
of the Gross Collections shall be paid to an independent third
party billing agent. Client shall retain twenty-five (25%) of the
Gross Collections for its services.

ii.     Amounts owed under this Section shall be due upon
receipt of an invoice, or in any event no later than fifteen (15)
business days after receipt. Invoices shall be delivered bimonthly
(twice a month). Client hereby agrees to exclusively utilize BL's
online payment system to transfer payment directly from Client
to BL when due through an online portal s [sic] an Automated
Clearing House ("ACH") transaction. . . . .

**ANSWER**:  Paragraph 145 makes allegations regarding a purported

agreement between an unidentified medical practice and Defendant BioTek

Labs, LLC.  Relator fails to identify this contract with requisite particularity

and, as such, Defendants are without knowledge sufficient to form a belief

as to the truth or falsity of the allegations contained in Paragraph 145 and

therefore deny them.


146.   The Georgia Medical Practice No. 1 Services Agreement also had

an exclusivity provision:

Client and its owners hereby grant to BL, for the duration of the
initial term of this Agreement, the exclusive right, at the location
of the BL Services or at any new clinics Client or its owners may
create or acquire during the term of this Agreement, (i) to
participate in (under appropriate Physician supervision) all

allergy sensitivity testing and treatment as described in Exhibit "A" subsequent to the Effective Date of this Agreement. BL agrees to not provide BL Services to any pediatricians located in . . . [certain counties in Georgia] during the initial term of this Agreement.

**ANSWER**:  Paragraph 146 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 146 and therefore deny them.

147.   Georgia Practice No. 1 also agreed to utilize a "third party billing company" approved by BioTek Labs, which was Alemar.

**ANSWER**:  Paragraph 147 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 147 and therefore deny them.

88221270.5

148.   In administering the allergy testing and creating the therapy programs, BioTek Labs identified these specific CPT codes – 95004 ("Allergy Sensitivity Testing"), and 95115, 95117 and 95165 (collectively, "Allergy Sensitivity Testing").

**ANSWER**:  Paragraph 148 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 148 and therefore deny them.


149.   In September 2019, Alemar submitted claims on behalf of Ga. Practice No. 1 to Georgia Medicaid for services rendered using CPT codes 95004 and 95165.

**ANSWER**:   Paragraph 149 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief

94

as to the truth or falsity of the allegations contained in Paragraph 149 and therefore deny them.

150.  Ga. Practice No. 1 was reimbursed by Georgia Medicaid as follows:

| Provider/Payee | Patient | Date of Service | CPT Code | Paid Amount |
|---|---|---|---|---|
| Georgia Medical Practice No. 1 | Patient A | 9/16/19 | 95004 | $210.00 |
| Georgia Medical Practice No. 1 | Patient A | 9/25/19 | 95165 | $237.90 |

**ANSWER**:  Paragraph 150 and the related footnote makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC. Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 150 and therefore deny them.

95

151.   In 2018, Alemar submitted claims on behalf of Ga. Practice No. 1 to WellCare, a Georgia CMO, for services rendered using CPT codes 95004 and 95165.

**ANSWER**:   Paragraph 151 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 151 and therefore deny them.

152.   The claims were submitted to WellCare within the one-year term of the exclusive Georgia Medical Practice No. 1 Services Agreement; thus, BioTek Labs was Ga. Practice No. 1's exclusive provider of allergy testing and immunotherapy.

**ANSWER**:   Paragraph 152 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity

88221270.5

and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 152 and therefore deny them.

153.   Ga. Practice No. 1 was reimbursed by Wellcare as follows:

| Provider/Payee | Patient | Date of Service | CPT Code | Paid Amount |
|---|---|---|---|---|
| Georgia Medical Practice No. 1 | Patient B | 7/23/18 | 95004 | $231.00 |
| Georgia Medical Practice No. 1 | Patient B | 8/6/18 | 95165 | $261.69 |
| Georgia Medical Practice No. 1 | Patient C | 10/8/2018 | 95004 | $231.00 |
| Georgia Medical Practice No. 1 | Patient C | 10/15/18 | 95165 | $261.69 |

**ANSWER**:   Paragraph 153 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity

and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 153 and therefore deny them.

154.   Upon information and belief, Ga. Practice No. 1 paid BioTek Labs 70% of the reimbursements Ga. Practice No. 1 received pursuant to the Georgia Medical Practice No. 1 Services Agreement.   In addition, upon information and belief, Ga. Practice No. 1 paid Alemar, an affiliate of BioTek Labs, 5% of the reimbursements Ga. Practice No. 1 received for billing services; and Ga. Practice No. 1 retained twenty-five (25%) of the reimbursements for its services.

**ANSWER**:  Paragraph 154 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 154 and therefore deny them.

88221270.5

155.   The remuneration conferred by BioTek Labs on Ga. Practice No. 1 under the Georgia Medical Practice No. 1 Services Agreement was in excess of the fair market value of the services rendered by Ga. Practice No. 1 because the arrangement required "virtually no effort" from the practice.

**ANSWER**:  Defendants deny the allegations in Paragraph 155.

156.   In July 2015, BioTek Labs, LLC, entered into a Services Agreement (the "Maryland Medical Practice No. 1 Services Agreement") with Maryland Medical Practice No. 1 ("Md. Practice No. 1"), a pediatric practice located in the State of Maryland.

**ANSWER**:  Paragraph 156 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 156 and therefore deny them.

157.   Defendant CEO Beauchamp executed the agreement on behalf of BioTek Labs.

88221270.5

**ANSWER**:  Paragraph 157 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 157 and therefore deny them.

158.  Md. Practice No. 1 agreed to implement BioTek Labs' "BL Sensitivity Program", which included BioTek Labs administering allergy, food or chemical testing and treatment, and providing on-site mobile diagnostics and point of care immunotherapy for Md. Practice No. 1's patients.

**ANSWER**:  Paragraph 158 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 158 and therefore deny them.

88221270.5

159. The term of the Maryland Medical Practice No. 1 Services Agreement was for six years, with automatic one-year extensions unless one party terminated the agreement.

**ANSWER**:  Paragraph 159 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 159 and therefore deny them.

160. BioTek Labs was obligated to provide, among other things, supplies and equipment, personnel and training for Md. Practice No. 1's physicians and staff.

**ANSWER**:  Paragraph 160 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 160 and therefore deny them.

88221270.5

161.   The Maryland Medical Practice No. 1 Services Agreement also required that the medical practice make "reasonable efforts to bill and collect all fees" for reimbursement of BioTek Labs' "[s]ervices provided to beneficiaries of Medicare, Medicaid, Medicare or Medicaid Replacements, Medicare or Medicaid Manage Care or any other state or federally funded healthcare program[s]".

**ANSWER**:  Paragraph 161 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 161 and therefore deny them.

162.   The compensation provision of the Maryland Medical Practice No. 1 Services Agreement included the following:

 (a)   <u>Payment for Services</u>.

As full consideration for all BL Services, Client shall pay to BL [BioTek Labs, LLC] seventy percent (70%) of Gross Collections (defined as all collections received, either during or following the

term of this Agreement, by Client for BL Services) attributable to such BL Services. Additionally, five percent (5%) of the Gross Collections shall be paid to a third party billing agent. Client shall retain twenty five (25%) of the Gross Collections for the fair market value of its services.

**ANSWER**: Paragraph 162 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC. Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 162 and therefore deny them.

163. The Maryland Medical Practice No. 1 Services Agreement also had an exclusivity provision:

Client and its owners hereby grant to BL, for the duration of the initial term of this Agreement, the exclusive right, at the location of the BL Services or at any new clinics Client or its owners may create or acquire during the term of this Agreement, (i) to participate in (under appropriate Physician supervision) all allergy sensitivity testing and treatment as described in Exhibit "A" subsequent to the Effective Date of this Agreement.

**ANSWER**: Paragraph 163 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC. Relator fails to identify this contract with requisite particularity

88221270.5

and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 163 and therefore deny them.

164.   Md. Practice No. 1 also agreed to utilize a "third party billing company" approved by BioTek Labs, which was Alemar.

**ANSWER**:  Paragraph 164 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 164 and therefore deny them.

165.   In administering the allergy testing and creating the therapy programs, BioTek Labs identified these specific CPT codes - 95004, 95010, 95015, 95018, 95076, and 83516 (collectively, "Allergy Sensitivity Testing"), and 95115, 95117, and 95165 (collectively, "Allergy Sensitivity Treatment").

**ANSWER**:  Paragraph 165 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek

Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 165 and therefore deny them.

166.  In August 2016, Alemar submitted claims on behalf of Md. Practice No. 1 to Maryland's Medicaid program for services rendered using CPT codes 95004 and 95165.

**ANSWER**:   Paragraph 166 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 166 and therefore deny them.

167.   These claims were made within the six-year term of the exclusive Maryland Medical Practice No. 1 Services Agreement; thus, BioTek Labs was

88221270.5

Md. Practice No. 1's exclusive provider of allergy testing and immunotherapy at this time.

**ANSWER**:   Paragraph 167 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 167 and therefore deny them.

168. Md. Practice No. 1 was reimbursed by Maryland Medicaid as follows:

| Provider/Payee | Patient | Date of Service | CPT Code | Paid Amount |
|---|---|---|---|---|
| Maryland Medical Practice No. 1 | Patient D | 12/11/15 | 95004 | $266.40 |
| Maryland Medical Practice No. 1 | Patient D | 12/26/15 | 95165 | $256.50 |

| Maryland Medical Practice No. 1 | Patient E | 4/7/16 | 95004 | $266.40 |
|---|---|---|---|---|
| Maryland Medical Practice No. 1 | Patient E | 4/22/16 | 95165 | $256.50 |

**ANSWER**:   Paragraph 168 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 168 and therefore deny them.

169.   In September, October and November 2015, less than six months after Md. Practice No. 1 and BioTek Labs entered into the exclusive Maryland Medical Practice No. 1 Services Agreement, Alemar submitted claims on behalf of Md. Practice No. 1 to UHC-Optum, a Managed Care Organization ("MCO") operating within Maryland's Medicaid program, for services rendered using codes 95004 and 95165.

88221270.5

**ANSWER**:   Paragraph  169  makes  allegations  regarding  claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 169 and therefore deny them.

170.   These claims were made within the six-year term of the exclusive Maryland Medical Practice No. 1 Services Agreement; thus, BioTek Labs was Md.  Practice  No.  1's  exclusive  provider  of  allergy  testing  and immunotherapy at this time.

**ANSWER**:   Paragraph  170  makes  allegations  regarding  claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 170 and therefore deny them.

88221270.5

171. Md. Practice No. 1 was reimbursed by UHC-Optum as follows:

| Provider/Payee | Patient | Date of Service | CPT Code | Paid Amount |
|---|---|---|---|---|
| Maryland Medical Practice No. 1 | Patient F | 9/10/15 | 95004 | $266.40 |
| Maryland Medical Practice No. 1 | Patient F | 9/21/15 | 95165 | $256.50 |
| Maryland Medical Practice No. 1 | Patient G | 10/27/15 | 95004 | $266.40 |
| Maryland Medical Practice No. 1 | Patient G | 11/6/15 | 95165 | $256.50 |

**ANSWER**:   Paragraph 171 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 171 and therefore deny them.

88221270.5

172.   Upon information and belief, Md. Practice No. 1 paid BioTek Labs 70% of the reimbursements Md. Practice No. 1 received pursuant to the Maryland Medical Practice No. 1 Services Agreement Services Agreement. In addition, upon information and belief, Md. Practice No. 1 paid Alemar, an affiliate of BioTek Labs, 5% of the reimbursements Md. Practice No. 1 received for billing services; and Md. Practice No. 1 retained twenty-five (25%) of the reimbursements for its services.

**ANSWER**:   Paragraph 172 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 172 and therefore deny them.

173.   The remuneration conferred by BioTek Labs on Md. Practice No. 1 under the Maryland Medical Practice No. 1 Services Agreement was in

excess of the fair market value of the services rendered by Md. Practice No. 1 because the arrangement required "virtually no effort" by the practice.

**ANSWER**:   Paragraph 173 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 173 and therefore deny them.

174.  In May 2012, BioTek Labs, LLC, entered into a Services Agreement (the "Florida Medical Practice No. 1 Services Agreement") with Florida Medical Practice No. 1 ("Fla. Practice No. 1"), a family medical practice located in the State of Florida.

**ANSWER**:  Paragraph 174 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief

88221270.5

as to the truth or falsity of the allegations contained in Paragraph 174 and therefore deny them.

175.   Defendant Panessa executed the agreement on behalf of BioTek Labs.

**ANSWER**:  Paragraph 175 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 175 and therefore deny them.

176.   Fla. Practice No. 1 agreed to implement BioTek Labs' "Sensitivity Program", which included BioTek Labs administering allergy, food or chemical testing and treatment, and providing on-site mobile diagnostics and point of care immunotherapy for Fla. Practice No. 1's patients.

**ANSWER**:  Paragraph 176 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity

112

and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 176 and therefore deny them.

177. The term of the Florida Medical Practice No. 1 Services Agreement was for six years, with automatic one-year extensions unless one party terminated the agreement.

**ANSWER**:  Paragraph 177 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 177 and therefore deny them.

178.  BioTek Labs was obligated to provide, among other things, supplies and equipment, personnel and training for Fla. Practice No. 1's physicians and staff.

**ANSWER**:  Paragraph 178 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek

88221270.5

Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 178 and therefore deny them.

179.  The Florida Medical Practice No. 1 Services Agreement also required that the medical practice make "reasonable efforts to bill and collect all fees" for reimbursement of BioTek Labs' "[s]ervices provided to beneficiaries of Medicare, Medicaid, Medicare or Medicaid Replacements, Medicare or Medicaid Manage Care or any other state or federally funded healthcare program[s]".

**ANSWER**:  Paragraph 179 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 179 and therefore deny them.

180.   The compensation provision of the Florida Medical Practice No.

1 Services Agreement was as follows:

(a)   Payment for Services.

i.      As full consideration for all BL Services, Client shall pay to BL [BioTek Labs, LLC] seventy five percent (75%) of Gross Collections (defined as all collections received, either during or following the term of this Agreement, by Client for BL Services) attributable to such Services. Client shall withhold from BL's payment, an additional 5% of the Gross Collections to be paid to a third party billing agent (Client shall pay BL seventy percent of the Gross Collections after the five percent (5%) retainage for third party billing is considered).

**ANSWER**:  Paragraph 180 makes allegations regarding a purported

agreement between an unidentified medical practice and Defendant BioTek

Labs, LLC. Relator fails to identify this contract with requisite particularity

and, as such, Defendants are without knowledge sufficient to form a belief

as to the truth or falsity of the allegations contained in Paragraph 180 and

therefore deny them.

181.   The Florida Medical Practice No. 1 Services Agreement also had

an exclusivity provision:

Client and its owners hereby grant to BL, during the term of this Agreement, the exclusive right, at the location of the BL Services or at any new clinics Client or its owners may create or acquire

115

during the term of this Agreement, (i) to participate in (under appropriate Physician supervision) all food, chemical, and allergy sensitivity testing and treatment as described in Exhibit "A" subsequent to the Effective Date of this Agreement.

**ANSWER**:  Paragraph 181 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC. Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 181 and therefore deny them.

182.   Fla. Practice No. 1 also agreed to utilize a "third party billing company" approved by BioTek Labs, which was Alemar.

**ANSWER**:  Paragraph 182 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 182 and therefore deny them.

88221270.5

183.   In administering the allergy testing and creating the therapy programs, BioTek Labs identified these specific CPT codes - 95004, 95010, 95015, 95024, 95028, 95044, 95052, 83516 (collectively, "Allergy Sensitivity Testing"), and 95115, 95117, 95120, 95144 and 95165 (collectively, "Allergy Sensitivity Treatment").

**ANSWER**:  Paragraph 183 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 183 and therefore deny them.

184.   In September and October 2013, Alemar submitted claims on behalf of Fla. Practice No. 1 to Florida's Medicaid program for services rendered using CPT codes 95004 and 95165.

**ANSWER**:   Paragraph 184 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity

117

and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 184 and therefore deny them.

185.    These claims were made within the six-year term of the exclusive Florida Medical Practice No. 1 Services Agreement; thus, BioTek Labs was Fla. Practice No. 1's exclusive provider of allergy testing and immunotherapy at this time.

**ANSWER**:    Paragraph 185 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 185 and therefore deny them.

186.  Fla. Practice No. 1 was reimbursed by Florida Medicaid as follows:

88221270.5

| Provider/Payee | Patient | Date of Service | CPT Code | Paid Amount |
|---|---|---|---|---|
| Florida Medical Practice No. 1 | Patient H | 9/19/13 | 95004 | $223.39 |
| Florida Medical Practice No. 1 | Patient H | 10/10/13 | 95165 | $181.48 |

**ANSWER**:   Paragraph 186 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 186 and therefore deny them.

187.  In 2013 and 2014, Alemar submitted claims on behalf of Fla. Practice No. 1 to Molina Healthcare of Florida, Inc. ("Molina") and Better Health, LLC, for services rendered using CPT codes 95004 and 95165.

**ANSWER**:   Paragraph 187 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek

88221270.5

Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 187 and therefore deny them.

188.   These claims were made within the six-year term of the exclusive Florida Medical Practice No. 1 Services Agreement; thus, BioTek Labs was Fla. Practice No. 1's exclusive provider of allergy testing and immunotherapy at this time.

**ANSWER**:   Paragraph 188 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 188 and therefore deny them.

189. Fla. Practice No. 1 was reimbursed by Molina and Better Health as follows:

88221270.5

| Provider/Payee | Patient | Date of Service | CPT Code | Paid Amount | Ins. Provider |
|---|---|---|---|---|---|
| Florida Medical Practice No. 1 | Patient I | 12/17/13 | 95004 | $214.80 | Molina |
| Florida Medical Practice No. 1 | Patient I | 1/16/14 | 95165 | $174.50 | Molina |
| Florida Medical Practice No. 1 | Patient J | 7/29/14 | 95004 | $223.39 | Better Health |
| Florida Medical Practice No. 1 | Patient J | 8/25/14 | 95165 | $181.48 | Better Health |

**ANSWER**:   Paragraph 189 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 189 and therefore deny them.

190.   Molina Healthcare of Florida, Inc. has a contract with the Florida Agency for Health Care Administration to provide healthcare services to

88221270.5

Florida citizens that qualified for Medicaid in the state. Molina operates under Florida's Statewide Medicaid Managed Care (SMMC) Program.

**ANSWER**:   Paragraph 190 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 190 and therefore deny them.


191.   In 2014, Better Health, LLC operated a Medicaid plan in Broward County, Florida.

**ANSWER**:   Paragraph 191 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 191 and therefore deny them.

88221270.5

192.    Upon information and belief, Fla. Practice No. 1 paid BioTek 70% of the reimbursements Fla. Practice No. 1 received pursuant to the Florida Medical Practice No. 1 Services Agreement. In addition, upon information and belief, Fla. Practice No. 1 paid Alemar, an affiliate of BioTek, 5% of the reimbursements Fla. Practice No. 1 received for billing services; and Fla. Practice No. 1 retained twenty-five (25%) of the reimbursements for its services.

**ANSWER**:    Paragraph 192 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 192 and therefore deny them.

193.    The remuneration conferred by BioTek Labs on Fla. Practice No. 1 under the Florida Medical Practice No. 1 Services Agreement was in excess

of the fair market value of the services rendered by Fla. Practice No. 1 because the arrangement required "virtually no effort" by the practice.

**ANSWER**:   Paragraph 193 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 193 and therefore deny them.


194.  In February 2019, BioTek Labs, LLC, entered into a Services Agreement (the "Georgia Medical Practice No. 2 Services Agreement") with Georgia Medical Practice No. 2 ("Ga. Practice No. 2"), a pediatric medical practice located in the State of Georgia.

**ANSWER**:  Paragraph 194 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief

as to the truth or falsity of the allegations contained in Paragraph 194 and therefore deny them.

195.   Defendant CEO Beauchamp executed the agreement on behalf of BioTek Labs.

**ANSWER**:  Paragraph 195 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 195 and therefore deny them.

196.   Ga. Practice No. 2 agreed to implement BioTek Lab' "BL Sensitivity Program", which included BioTek Labs administering allergy testing, and assisting in the creation of immunotherapy for Ga. Practice No. 2's patients.

**ANSWER:**  Paragraph 196 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity

88221270.5

and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 196 and therefore deny them.

197.   The term of the Georgia Medical Practice No. 2 Services Agreement was for three years, with automatic one-year extensions unless one party terminated the agreement.

**ANSWER**:  Paragraph 197 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 197 and therefore deny them.

198.   BioTek Labs was obligated to provide, among other things, supplies and equipment, personnel and training for Ga. Practice No. 2's physicians and staff.

**ANSWER**:  Paragraph 198 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity

126

and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 198 and therefore deny them.

199.   The Georgia Medical Practice No. 2 Services Agreement also required that the medical practice make "reasonable efforts to bill and collect all fees" for reimbursement of BioTek Labs' "[s]ervices provided to beneficiaries of Medicare, Medicaid, Medicare or Medicaid Replacements, Medicare or Medicaid Manage Care or any other state or federally funded healthcare program[s]".

**ANSWER**:  Paragraph 199 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC. Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 199 and therefore deny them.

200.   The compensation provision of the Georgia Medical Practice No. 2 Services Agreement included the following:

88221270.5

(a)   <u>Payment for Services</u>.

As full consideration for all BL Services, Client shall pay to BL [BioTek Labs, LLC] seventy percent (70%) of Gross Collections (defined as all collections received, either during or following the term of this Agreement, by Client for BL Services) attributable to such BL Services. Additionally, five percent (5%) of the Gross Collections shall be paid to an independent third party billing agent. Client shall retain twenty-five (25%) of the Gross Collections for the fair market value of its services.

**<u>ANSWER</u>**:  Paragraph 200 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 200 and therefore deny them.

201.   The Georgia Medical Practice No. 2 Services Agreement also had an exclusivity provision:

Client and its owners hereby grant to BL, for the duration of the initial term of this Agreement, the exclusive right, at the location of the BL Services or at any new clinics Client or its owners may create or acquire during the term of this Agreement, (i) to participate in (under appropriate Physician supervision) all allergy sensitivity testing and treatment as described in Exhibit "A" subsequent to the Effective Date of this Agreement.

**ANSWER**:  Paragraph 201 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 201 and therefore deny them.

202.  Ga. Practice No. 2 also agreed to utilize a "third party billing company" approved by BioTek Labs, which was Alemar.

**ANSWER**:  Paragraph 202 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 202 and therefore deny them.

203.  In administering the allergy testing and creating the therapy programs, BioTek Labs identified these specific CPT codes - 95004 ("Allergy

Sensitivity Testing"), and 95115, 95117, and 95165 (collectively, "Allergy Sensitivity Treatment").

**ANSWER**:  Paragraph 203 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 203 and therefore deny them.

204.   In October and November 2019, Alemar submitted claims on behalf of Ga. Practice No. 2 to Georgia's Medicaid program for services rendered using CPT codes 95004 and 95165.

**ANSWER**:   Paragraph 204 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 204 and therefore deny them.

205.  These claims were made within the three-year term of the exclusive Georgia Medical Practice No. 2 Services Agreement; thus, BioTek Labs was Ga. Practice No. 2's exclusive provider of allergy testing and immunotherapy at this time.

**ANSWER**:  Paragraph 205 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 205 and therefore deny them.

206.  Ga. Practice No. 2 was reimbursed by Georgia Medicaid as follows:

| Provider/Payee | Patient | Date of Service | CPT Code | Paid Amount |
|---|---|---|---|---|
| Georgia Medical Practice No. 2 | Patient K | 10/28/19 | 95004 | $210.00 |

131

| Georgia Medical Practice No. 2 | Patient K | 11/12/19 | 95165 | $198.25 |
| --- | --- | --- | --- | --- |

**ANSWER**:    Paragraph 206 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 206 and therefore deny them.

207.   In September and October 2019, Alemar submitted claims on behalf of Ga. Practice No. 2 to Peach State Health Plan ("Peach State") for services rendered using CPT codes 95004 and 95165.

**ANSWER**:    Paragraph 207 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief

88221270.5

as to the truth or falsity of the allegations contained in Paragraph 207 and therefore deny them.

208.   These claims were made within the three-year term of the exclusive Georgia Medical Practice No. 2 Services Agreement; thus, BioTek Labs was Ga. Practice No. 2's exclusive provider of allergy testing and immunotherapy at this time.

**ANSWER**:   Paragraph 208 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 208 and therefore deny them.

209.   Ga. Practice No. 2 was reimbursed by Peach State as follows:

| Provider/Payee | Patient | Date of Service | CPT Code | Paid Amount |
|---|---|---|---|---|

88221270.5

| Georgia Medical Practice No. 2 | Patient L | 9/23/19 | 95004 | $231.00 |
|---|---|---|---|---|
| Georgia Medical Practice No. 2 | Patient L | 10/14/19 | 95165 | $261.69 |
| Georgia Medical Practice No. 2 | Patient M | 10/9/19 | 95004 | $231.00 |
| Georgia Medical Practice No. 2 | Patient M | 10/24/19 | 95165 | $262.29 |

**ANSWER**:    Paragraph 209 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 209 and therefore deny them.

210.   Peach State is a managed care program in Georgia for Medicaid and PeachCare for Kids® members.

88221270.5

**ANSWER**:    Paragraph 210 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 210 and therefore deny them.

211.   Upon information and belief, Ga. Practice No. 2 paid BioTek 70% of the reimbursements Fla. Practice No. 1 received pursuant to the Georgia Medical Practice No. 2 Services Agreement. In addition, upon information and belief, Ga. Practice No. 2 paid Alemar, an affiliate of BioTek, 5% of the reimbursements Ga. Practice No. 2 received for billing services; and Ga. Practice No. 2 retained twenty-five (25%) of the reimbursements for its services.

**ANSWER**:    Paragraph 211 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity

and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 211 and therefore deny them.

212.    The remuneration conferred by BioTek Labs on Ga. Practice No. 2 under the Georgia Medical Practice No. 2 Services Agreement was in excess of the fair market value of the services rendered by Ga. Practice No. 2 because the arrangement required "virtually no effort" by the practice.

**ANSWER**:    Paragraph 212 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Labs, LLC.  Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 212 and therefore deny them.

213.    In October 2015, BioTek Services, LLC, entered into a Services Agreement (the "Florida Medical Practice No. 2 Services Agreement") with

Florida Medical Practice No. 2 ("Fla. Practice No. 2"), a pediatric medical practice located in the State of Florida.

**ANSWER**:  Paragraph 213 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Services, LLC.   Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 213 and therefore deny them.

214.   Defendant CEO Beauchamp executed the agreement on behalf of BioTek Services, LLC.

**ANSWER**:  Paragraph 214 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Services, LLC.   Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 214 and therefore deny them.

88221270.5

215. Fla. Practice No. 2 agreed to implement BioTek Services' "Sensitivity Program", which included BioTek Services administering allergy, food or chemical testing and treatment, and providing on-site mobile diagnostics and point of care immunotherapy for Fla. Practice No. 2's patients.

**ANSWER**: Paragraph 215 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Services, LLC. Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 215 and therefore deny them.

216. The term of the Florida Medical Practice No. 2 Services Agreement was for two years, with automatic one-year extensions unless one party terminated the agreement.

**ANSWER**: Paragraph 216 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Services, LLC. Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to

88221270.5

form a belief as to the truth or falsity of the allegations contained in Paragraph 216 and therefore deny them.

217.   BioTek Services was obligated to provide, among other things, supplies and equipment, personnel and training for Fla. Practice No. 2's physicians and staff.

**ANSWER**:  Paragraph 217 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Services, LLC.   Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 217 and therefore deny them.

218.   The compensation provision of the Florida Medical Practice No. 2 Services Agreement was as follows:

Payment for Services.

i. As full consideration for all BTK Services, Client shall pay to BTK [BioTek Services, LLC] Three and 05/100 Dollars ($3.05) for each antigen utilized in the percutaneous test performed per patient per encounter and Four and 39/100 Dollars ($4.39) per

139

dose for the creation of a one year supply of immunotherapy per patient.

**ANSWER**:  Paragraph 218 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Services, LLC.   Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 218 and therefore deny them.

219.   The Florida Medical Practice No. 2 Services Agreement also had an exclusivity provision:

> Client and its owners hereby grant to BTK [BioTek Services, LLC] for the duration of the initial term of this Agreement, the exclusive right, at the location of the BTK Services or at any new clinics Client or its owners may create or acquire during the term of this Agreement, (i) to participate in (under appropriate Physician supervision) all allergy sensitivity testing and treatment as described in Exhibit "A" subsequent to the Effective Date of this Agreement.

**ANSWER**:  Paragraph 219 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Services, LLC.   Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to

88221270.5

form a belief as to the truth or falsity of the allegations contained in Paragraph 219 and therefore deny them.

220.   Fla. Practice No. 2 also agreed to utilize a "third party billing company" approved by BioTek Services, which was Alemar.

**ANSWER**:  Paragraph 220 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Services, LLC.   Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 220 and therefore deny them.

221.   In administering the allergy testing and creating the therapy programs, BioTek Services identified these specific CPT codes - 95004, 95010, 95015, 95018, 95076, and 83516 (collectively, "Allergy Sensitivity Testing"), and 95115, 95117, and 95165 (collectively, "Allergy Sensitivity Treatment").

**ANSWER**:  Paragraph 221 makes allegations regarding a purported agreement between an unidentified medical practice and Defendant BioTek Services, LLC.   Relator fails to identify this contract with requisite

particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 221 and therefore deny them.

222.   In January and August 2016, Alemar submitted claims on behalf of Fla. Practice No. 2 to Simply Healthcare Plans, Inc. ("Simply Healthcare") for services rendered using CPT codes 95004 and 95165.

**ANSWER**:    Paragraph 222 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Services, LLC.    Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 222 and therefore deny them.

223.   These claims were made within the two-year term of the exclusive Florida Medical Practice No. 2 Services Agreement; thus, BioTek Services was Fla. Practice No. 2's exclusive provider of allergy testing and immunotherapy at this time.

**ANSWER**:    Paragraph 223 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Services, LLC.    Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 223 and therefore deny them.

224. Fla. Practice No. 2 was reimbursed by Simply Healthcare as follows:

| Provider/Payee | Patient | Date of Service | CPT Code | Paid Amount |
|---|---|---|---|---|
| Florida Medical Practice No. 1 | Patient N | 1/13/16 | 95004 | $223.20 |
| Florida Medical Practice No. 1 | Patient N | 1/26/16 | 95165 | $72.60 |
| Florida Medical Practice No. 1 | Patient O | 8/24/16 | 95004 | $229.00 |
| Florida Medical Practice No. 1 | Patient O | 9/26/16 | 95165 | $181.00 |

**ANSWER**:    Paragraph 224 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported

agreement between an unidentified medical practice and Defendant BioTek Services, LLC. Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 224 and therefore deny them.

225.   Simply Healthcare is a Medicare-contracted coordinated care plan that has a Medicaid contract with the State of Florida Agency for Health Care Administration to provide benefits to enrollees.

**ANSWER**:   Paragraph 225 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Services, LLC. Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 225 and therefore deny them.

226.   Upon information and belief, Fla. Practice No. 2 paid BioTek pursuant to the compensation provision of the Florida Medical Practice No.

2 Services Agreement as described above. Fla. Practice No. 2 retained the entire net profit resulting from collections for allergy testing and treatment under the arrangement with BioTek Services for its services.

**ANSWER**:   Paragraph 226 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek Services, LLC.   Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 226 and therefore deny them.


227.   The remuneration conferred by BioTek Services on Fla. Practice No. 2 under the Florida Medical Practice No. 2 Services Agreement was in excess of the fair market value of the materials and services provided to Fla. Practice No. 2 because the arrangement required "virtually no effort" by the practice.

**ANSWER**:   Paragraph 227 makes allegations regarding claims submitted by Defendant Alemar in accordance with the terms of a purported agreement between an unidentified medical practice and Defendant BioTek

Services, LLC.   Relator fails to identify this contract with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 227 and therefore deny them.

228.   Similarly, an account in Illinois (IL Medical Practice A) began working with BioTek Labs in March 2016 and produced net revenue of $54,786.08 for the year ending December 2017.

**ANSWER**:  Paragraph 228 makes allegations regarding a purported unidentified provider working with Defendant BioTek Labs, LLC.  Relator fails to identify this provider with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 228 and therefore deny them.

229.   The following providers or medical practices entered into Service Agreements with BioTek Labs in 2017 and produced significant revenue almost immediately:

88221270.5

| Practice | State | Net Revenue (Dec. 2017) | Net Revenue (YTD 2017) | Number of Patient Office Visits |
|---|---|---|---|---|
| NY Medical Practice A | NY | $20,230.81 | $22,979.98 | 1,012 |
| NY Medical Practice B | NY | $30,507.76 | $78,991.64 | 1,525 |
| TN Medical Practice A | TN | $6,565,31 | $49,909.59 | 328 |
| FL Medical Practice A | FL | $824.57 | $1,826.98 | 41 |
| FL Medical Practice B | FL | $3,646.79 | $34,858.82 | 182 |
| FL Medical Practice C | FL | $3,233.20 | $31,817.49 | 162 |
| CA Medical Practice A | CA | $1,009.52 | $1,009.52 | 50 |

**ANSWER**:   Paragraph 229 makes allegations regarding purported unidentified providers that entered into agreements with Defendant BioTek Labs, LLC.   Relator fails to identify these providers with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 229 and therefore deny them.

88221270.5

230.   In another instance, an ENT practice in New York City (the "New York Practice") received $140,287.83 (billed and collected by Alemar for the practice) during a 7-month period in 2018.

**ANSWER**:  Paragraph 230 makes allegations regarding a purported unidentified provider that allegedly utilized Defendant Alemar's billing services and had a contractual relationship with Defendant BioTek Services, LLC.  Relator fails to identify this provider with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 230 and therefore deny them.

231.   The New York Practice then paid more than 66% of that sum to BioTek Services and Alemar.  The New York Practice retained 33% of the total collections for its services.

**ANSWER**:  Paragraph 231 makes allegations regarding a purported unidentified provider that allegedly utilized Defendant Alemar's billing services and had a contractual relationship with Defendant BioTek Services, LLC.  Relator fails to identify this provider with requisite particularity and,

148

as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 231 and therefore deny them.

232.   That practice had signed a Services Agreement with BioTek Services, LLC in August 2017 (the "New York Practice Services Agreement").

**ANSWER**:  Paragraph 232 makes allegations regarding a purported unidentified provider that allegedly utilized Defendant Alemar's billing services and had a contractual relationship with Defendant BioTek Services, LLC.  Relator fails to identify this provider with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 232 and therefore deny them.

233.   The New York Practice had agreed to implement BioTek Services' "Sensitivity Program", which included BioTek Services administering allergy testing to the New York Practice's patients and

assisting in the creation of immunotherapy for the New York Practice's patients.

**ANSWER**:  Paragraph 233 makes allegations regarding a purported unidentified provider that allegedly utilized Defendant Alemar's billing services and had a contractual relationship with Defendant BioTek Services, LLC.  Relator fails to identify this provider with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 233 and therefore deny them.

234.   The term of the New York Practice Services Agreement was for six years, with automatic extensions unless one party to the agreement terminated the agreement.

**ANSWER**:  Paragraph 234 makes allegations regarding a purported unidentified provider that allegedly utilized Defendant Alemar's billing services and had a contractual relationship with Defendant BioTek Services, LLC.  Relator fails to identify this provider with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to

88221270.5

the truth or falsity of the allegations contained in Paragraph 234 and therefore deny them.

235.    BioTek Services was obligated to provide supplies and equipment, personnel, and training for the New York Practice's physicians and staff.

**ANSWER**:  Paragraph 235 makes allegations regarding a purported unidentified provider that allegedly utilized Defendant Alemar's billing services and had a contractual relationship with Defendant BioTek Services, LLC.  Relator fails to identify this provider with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 235 and therefore deny them.

236.   The New York Practice's Services Agreement also required that the medical practice make "reasonable efforts to bill and collect all fees" for reimbursement of BioTek Services' "[s]ervices provided to beneficiaries of Medicare, Medicaid, Medicare or Medicaid Replacements, Medicare or

Medicaid Manage Care or any other state or federally funded healthcare program[s]".

**ANSWER**:  Paragraph 236 makes allegations regarding a purported unidentified provider that allegedly utilized Defendant Alemar's billing services and had a contractual relationship with Defendant BioTek Services, LLC.  Relator fails to identify this provider with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 236 and therefore deny them.

237.   The compensation provision of the New York Practice Services Agreement was as follows:

(a)    Payment for Services.

i.    As full consideration for all BTK Services, Client shall pay to BTK Three and 25/100 Dollars ($3.25) for each antigen utilized in the percutaneous test performed per patient per encounter and Five and 58/100 Dollars ($5.58) per dose for the creation of a one-year supply of immunotherapy per patient. . . ..

ii.    Amounts owed under this Section shall be due upon receipt of an invoice, or in any event no later than five (5) business days after receipt. Invoices shall be delivered bimonthly (twice a month). Client hereby agrees to exclusively utilize BL's online payment system to transfer payment directly from Client

to BL when due through an online portal s [sic] an Automated Clearing House ("ACH") transaction. . . . .

**ANSWER**:  Paragraph 237 makes allegations regarding a purported unidentified provider that allegedly utilized Defendant Alemar's billing services and had a contractual relationship with Defendant BioTek Services, LLC.  Relator fails to identify this provider with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 237 and therefore deny them.


238. The remuneration conferred by BioTek Services on the New York Practice under the New York Practice Services Agreement was in excess of the fair market value of the services rendered by the New York Practice because the arrangement required "virtually no effort" by the practice.

**ANSWER**:  Paragraph 238 makes allegations regarding a purported unidentified provider that allegedly utilized Defendant Alemar's billing services and had a contractual relationship with Defendant BioTek Services, LLC.  Relator fails to identify this provider with requisite particularity and, as such, Defendants are without knowledge sufficient to form a belief as to

the truth or falsity of the allegations contained in Paragraph 238 and therefore deny them.

239.  Upon information and belief, in certain circumstances, employees of BioTek Labs and BioTek Services at various locations provided non-BioTek related services to the contracting physician or medical practice.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 239.

240.  Upon information and belief, BioTek Labs and BioTek Services did not perform accurate or appropriate allergy testing on patients because their environment(s) did not provide for the reasonable probability of exposure to the specific antigen tested.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 240.

241.  The knowing and willful payment of kickbacks by BioTek Labs and BioTek Services in connection with the various Services Agreements entered into with the medical practices identified above, *see supra* ¶¶ 139-

88221270.5

228, including the yet-to-be-identified Doe Defendants, to induce referrals of allergy testing and treatment service irreparably tainted the claims ultimately submitted to Government Healthcare Programs, and rendered the claims non-payable.  As a consequence, each of the kickback tainted claims submitted to Government Healthcare Programs constitutes a false claim under the federal FCA and State *Qui Tam* Statutes.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 241.

242.   Since Defendants were all aware that many of the patients were Medicare or Medicaid beneficiaries and that claims would be submitted to Government Healthcare Programs in connection with the testing and treatment, each of the Defendants was aware of the kickback taint that existed and the fact that the claims would therefore be non-payable by Government Healthcare Programs.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 242.

88221270.5

**G.**   **BioTek's Business Has Proved Successful and Continue to Grow**

243.   In 2018, Defendant Beauchamp informed Relator that BioTek Labs and BioTek Services together had approximately 100 accounts and generated annual revenue of approximately $10 million.

**ANSWER**: Defendant Beauchamp denies the allegations in Paragraph 243. The remaining Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 243 and therefore deny them.

244.   As of December 2017, at least 67 medical offices utilized BioTek's services in the following states (number of offices listed in parentheses): California (6), Florida (25), Georgia (1), Illinois (2), Indiana (2), Kentucky (1), Maryland (2), Mississippi (3), New Jersey (4), New York (8), Oregon (2), Tennessee (2), and Utah (3).

**ANSWER**: Defendants deny the allegations in Paragraph 244.

245.   In August 2018, Defendant Panessa told Relator that BioTek provides services in 120 offices in 18 states, including, but not limited to, two

large healthcare systems: Community Health System and Mercy Health System.

**ANSWER**:  Defendant Panessa denies the allegations in Paragraph 245.  The remaining Defendants lack information and knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 245 and therefore deny them.

246.   Upon information and belief, as of December 2017, net revenue (after expenses) for 46 of the providers or medical offices that had contracted for services with BioTek totaled more than $2.5 million. Six of those offices each generated more than $100,000 during that period.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 246.

247.   BioTek's principal reason for offering allergy testing program to providers was to enhance BioTek's own revenues, as well as the revenues of the providers.   Specifically, this conduct amounted to purposefully administering medically unnecessary tests in order to bill Government Healthcare Programs and procure more money.

88221270.5

**ANSWER**:  Defendants deny the allegations contained in Paragraph 247.

## COUNT I
### Violations of 31 U.S.C. § 3729(a)(1)(A)

248.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

**ANSWER**:  Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs as set forth above.

249.   This is a claim for penalties and treble damages under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, as amended.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 249.

250.   During the relevant period, Alemar, on behalf of numerous medical providers and physicians that had contracted for services with BioTek Labs and BioTek Services, knowingly presented false or fraudulent claims for payment to the United States Government through federal

healthcare programs, including those claims identified above that were tainted by violations of AKS and such violation are material to payment decisions by Government Healthcare Programs. *See supra* § IX.F.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 250.

251.  For the reasons alleged herein, many of these claims were knowingly false and fraudulent within the meaning of the FCA. More specifically, Defendants knowingly presented, and/or caused to be presented, to an officer and/or employee of the United States Government false and fraudulent claims for payment and approval in violation of 31 U.S.C. § 3729(a)(1)(A).

**ANSWER**:  Defendants deny the allegations contained in Paragraph 251.

252.  Moreover, claims submitted for reimbursement to government payors are *per se* false when submitted pursuant to, or as a result of, prohibited referral and/or kickback arrangements in violation of the AKS.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 252.

253.   The Defendants had actual knowledge of the falsity of these claims, or deliberately ignored or recklessly disregarded their truth or falsity, within the meaning of the FCA.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 253.

254.   The United States suffered damages as a result of the false claims and is entitled to recover its losses and otherwise obtain relief available under the FCA.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 254.

## COUNT II
### Violations of 31 U.S.C. § 3729(a)(1)(B)

255.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

**ANSWER**:  Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs as set forth above.

256.   This is a claim for penalties and treble damages under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, as amended.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 256.

257.   During the relevant period, Alemar, on behalf of numerous medical providers and physicians that had contracted for services with BioTek, presented numerous false records and statements to the United States Government through federal healthcare programs.  *See supra* § IX.F.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 257.

258.   For the reasons alleged herein, many of these records and statements were knowingly false and fraudulent within the meaning of the FCA. More specifically, Defendants knowingly made, used and/or caused to be made and used, false records and statements to get false and fraudulent

claims paid and approved by the United States Government in violation of

31 U.S.C. § 3729(a)(1)(B).

**ANSWER**:  Defendants deny the allegations contained in Paragraph

258.

259.   The Defendants had actual knowledge of the falsity of these

statements, or deliberately ignored or recklessly disregarded their truth or

falsity, within the meaning of the FCA.

**ANSWER**:  Defendants deny the allegations contained in Paragraph

259.

260.   The United States suffered damages as a result of false records

and statements and is entitled to recover its losses and otherwise obtain relief

available under the FCA.

**ANSWER**:  Defendants deny the allegations contained in Paragraph

260.

88221270.5

## COUNT III
## Violations of 31 U.S.C. § 3729(a)(1)(G)

261.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

**ANSWER**:  Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs as set forth above.

262.   This is a claim for penalties and treble damages under the False Claims Act, 31 U.S.C. § 3729 *et seq*., as amended.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 262.

263.   Through the acts and misconduct described above, Defendants knowingly made, used, and/or caused to be made or used, false records or statements material to an obligation to pay or transit money to the Government, and knowingly concealed, avoided, or decreased an obligation to pay or transmit money or property to the Government, within the meaning of 31 U.S.C. § 3729(a)(1)(G) (this provision replaces 31 U.S.C. § 3729(a)(7), which was in effect until the FCA was amended on May 20, 2009).

163

88221270.5

**ANSWER**:  Defendants deny the allegations contained in Paragraph 263.

264.  Defendants had actual knowledge of the falsity of these statements, or deliberately ignored or recklessly disregarded their truth or falsity, within the meaning of the FCA.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 264.

265.  The United States suffered damages as a result of false records and statements and is entitled to recover its losses and otherwise obtain relief available under the FCA.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 265.

## COUNT IV
### Violations of 31 U.S.C. § 3729(a)(1)(C)

266.  Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

88221270.5

**ANSWER**:  Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs as set forth above.

267.   This is a claim for penalties and treble damages under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, as amended.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 267.

268.   Through the specific acts, actions, and manner and means of the Defendants described above, the Defendants intentionally entered into a conspiracy and joint effort among themselves and with others to violate the FCA and to receive money from the United States, CMS and Medicare they knew they were not entitled to receive by: 1) presenting or causing the presentation of false and fraudulent claims for payment or approval under the Medicare program; 2) making and using, or causing the making or using, of false records or statements material to a false or fraudulent claim; and 3) concealing and avoiding an obligation to pay or transmit money to the United States. The Defendants have taken substantial steps in furtherance of the conspiracy including, among other things, by: using a third-party cutout

to avoid direct involvement in the fraud; offering, paying, soliciting and/or receiving remuneration for physician orders for testing and treatment in violation of the AKS; submitting false claims under the Medicare program for payment or approval; making and causing others to make prohibited inducements to Medicare beneficiaries in violation of the AKS; and by failing to timely refund to Medicare the payments received by Defendants as a result of the scheme.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 268.

269.  The United States, CMS, the Medicare program, their fiscal intermediaries, and various Medicare Advantage Plans (some of which are described above), unaware of Defendants' conspiracy or the falsity of the records, statements and claims made and/or caused to be made by Defendants, and as a result thereof, have paid, and continue to pay, a substantial amount of claims that they would not otherwise have paid.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 269.

88221270.5

270.   By reason of Defendants' conspiracy and the acts taken in furtherance thereof, the United States, CMS, the Medicare program and various Medicare Advantage Plans have been damaged, and continue to be damaged, in the amount of millions of dollars in lost Medicare funds.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 270.

## COUNT V
## California False Claims Act, Cal. Gov't Code § 12651 *et seq.*

271.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

**ANSWER**:  Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs as set forth above.

272.   This is a claim for treble damages and civil penalties under the California False Claims Act, Cal. Gov't Code § 12651 *et seq.*

**ANSWER**:  Defendants deny the allegations contained in Paragraph 272.

167

273.  By virtue of the illegal acts, including the payment of commissions to its sales representatives and improper submission of invoices to various Government Healthcare Programs for services, as described more fully above, Defendants knowingly presented or caused to be presented to the California Medicaid Program (i.e., Medi-Cal) false or fraudulent claims for payment or approval and/or knowingly accomplished these unlawful acts by making, or causing to be made or used, a false record or statement.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 273.

274.  The State of California, by and through the California Medicaid program (Medi-Cal) and other State healthcare programs, unaware of the falsity or fraudulent nature of the claims and/or statements made, or caused to be made, by Defendants, paid for claims that otherwise would not have been allowed.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 274.

88221270.5

275.   By reason of these payments, the California Medicaid program has been damaged, and continues to be damaged in a substantial amount.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 275.

276.   Relator requests that this Court accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the State of California in the operation of its Medicaid program.

**ANSWER**:  Paragraph 276 contains a request by Relator for the Court to accept pendant jurisdiction over its state-law claim and does not require a response.  To the extent a response is required, the Defendants deny the allegations contained in Paragraph 276.

**COUNT VI**
**California Insurance Frauds Prevention Act,**
**California Insurance Code § 1871.7**

277.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

88221270.5

**ANSWER**:  Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs as set forth above.

278.   This is a claim for treble damages and penalties under the California Insurance Frauds Prevention Act, Cal. Ins. Code § 1871.7, as amended (referred to in this Count as "the Act"). The Act provides a civil cause of action against any person who commits the crime of insurance fraud or who offers or pays illegal inducements or kickbacks to secure benefits under a contract of insurance. Cal. Ins. Code §1871.1(e).

**ANSWER**:   Paragraph 278 sets forth legal conclusions and characterizations of state law and regulations that do not require a response. To the extent a response is required, Defendants deny that Paragraph 278 contains a complete recitation or accurate description or characterization of the laws and regulations, which speak for themselves, and therefore they deny the allegations in Paragraph 278.

279.   The Act provides for civil recoveries against persons who violate the provisions of California Penal Code sections 549 or 550, including recovery of up to three times the amount of any fraudulent insurance claims,

and fines of between $5,000 and $10,000 for each such claim. Cal. Ins. Code §1871.7(b).

**ANSWER**:     Paragraph 279 sets forth legal conclusions and characterizations of state law and regulations that do not require a response. To the extent a response is required, Defendants deny that Paragraph 279 contains a complete recitation or accurate description or characterization of the laws and regulations, which speak for themselves, and therefore they deny the allegations in Paragraph 279.


280.   Subsection (e) of Cal. Ins. Code §1871.7, the *qui tam* provision of the Act, was patterned after the federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, and the California False Claims Act, Cal. Gov't Code § 12650 *et seq.*

**ANSWER**:     Paragraph 280 sets forth legal conclusions and characterizations of state law and regulations that do not require a response. To the extent a response is required, Defendants deny that Paragraph 280 contains a complete recitation or accurate description or characterization of the laws and regulations, which speak for themselves, and therefore they deny the allegations in Paragraph 280.

171

88221270.5

281.   Subsection (a) of Cal. Ins. Code §1871.7 provides for civil recoveries against persons who "knowingly employ runners, cappers, steerers, or other persons . . . to procure clients or patients to perform or obtain services or benefits under a contract of insurance or that will be the basis for a claim against an insured individual or his or her insurer."

**ANSWER**:   Paragraph 281 sets forth legal conclusions and characterizations of state law and regulations that do not require a response. To the extent a response is required, Defendants deny that Paragraph 281 contains a complete recitation or accurate description or characterization of the laws and regulations, which speak for themselves, and therefore they deny the allegations in Paragraph 281.

282.   Subsection (b) of Cal. Ins. Code § 1871.7 provides a range of penalties for violations of Penal Code sections 549 or 550. Section 549 of the California Penal Code provides criminal penalties for anyone who: solicits, accepts, or refers any business to or from any individual or entity with the knowledge that, or with reckless disregard for whether, the individual or entity . . . intends to violate Section 550.

**ANSWER**:   Paragraph 282 sets forth legal conclusions and characterizations of state law and regulations that do not require a response. To the extent a response is required, Defendants deny that Paragraph 282 contains a complete recitation or accurate description or characterization of the laws and regulations, which speak for themselves, and therefore they deny the allegations in Paragraph 282.

283.   Section 550 of the Penal Code prohibits the following activities, among others:

(a) It is unlawful to do any of the following, or to aid, abet, solicit, or conspire with any person to do any of the following:

* * * * * *

(5) Knowingly prepare, make, or subscribe any writing, with the intent to present or use it, or to allow it to be presented, in support of any false or fraudulent claim.

(6) Knowingly make or cause to be made any false or fraudulent claim for payment of a health care benefit.

* * * * * *

(b) It is unlawful to do, or to knowingly assist or conspire with any person to do, any of the following:

(1)   Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy,

knowing that the statement contains any false or misleading information concerning any material fact.

(2)    Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

(3)    Conceal, or knowingly fail to disclose the occurrence of, an event that affects any person's initial or continued right or entitlement to any insurance benefit or payment, or the amount of any benefit or payment to which the person is entitled.

Cal. Penal Code § 550.

**ANSWER**:    Paragraph 283 sets forth legal conclusions and characterizations of state law and regulations that do not require a response. To the extent a response is required, Defendants deny that Paragraph 283 contains a complete recitation or accurate description or characterization of the laws and regulations, which speak for themselves, and therefore they deny the allegations in Paragraph 283.

284. By virtue of the acts described in this Second Amended Complaint, Defendants violated Cal. Ins. Code § 1871.7(a) by knowingly employing "other persons" to procure clients or patients to perform or

obtain services or benefits under a contract of insurance or that were the basis for claims against private insurers in the State of California

**ANSWER**:  Defendants deny the allegations contained in Paragraph 284.

285.  By virtue of the acts described in this Second Amended Complaint, Defendants violated California Penal Code § 549 by soliciting, accepting, or referring business to or from individuals and entities with the knowledge that, or with reckless disregard for whether, the individuals or entities intended to violate California Penal Code §550.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 285.

286.  By virtue of the acts described in this Second Amended Complaint, Defendants knowingly presented or caused to be presented, false or fraudulent claims for healthcare benefits, in violation of Penal Code § 550(a).

**ANSWER**:  Defendants deny the allegations contained in Paragraph 286.

88221270.5

287.  By virtue of the acts described in this Second Amended Complaint, Defendants also concealed and/or failed to disclose information that would have affected the rights of patients and/or providers to receive reimbursement for allergy tests, in violation of Penal Code § 550(b).

**ANSWER**:  Defendants deny the allegations contained in Paragraph 287.

288.   By virtue of these violations of California Penal Code §§ 549 and 550, Defendants violated California Insurance Code § 1871.7(b).

**ANSWER**:  Defendants deny the allegations contained in Paragraph 288.

289.   Each test that was performed, reviewed and analyzed as part a reimbursable procedure as a result of Defendants' illegal marketing practices and/or illegal inducements represents a false or fraudulent record or statement. Subsequently, each claim for reimbursement for such tests submitted to a health insurer represents a false or fraudulent claim for payment.

88221270.5

**ANSWER**:  Defendants deny the allegations contained in Paragraph 289.

290.   Relator cannot at this time identify the false claims for payment that were caused by Defendants' conduct in California. *Compare supra* § IX.F. The false or fraudulent claims were presented for payment by numerous providers across the State. Relator had no control over or dealings with such entities and has no access to the records in their possession.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 290.

291.   Private insurers, unaware of Defendants' fraudulent acts and the falsity of the records, statements and claims made or caused to be made by Defendants, paid and continue to pay the claims that would not be paid but for Defendants' unlawful conduct.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 291.

292.   As a result of Defendants' commission of the insurance fraud described herein, the State of California and its citizens have been damaged in an amount in excess of millions of dollars, exclusive of interest.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 292.

293.   The California State Government is entitled to receive three times the amount of each claim for compensation submitted by defendants in violation of Cal. Ins. Code §1871.7. Additionally, the California State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

**ANSWER**:   Paragraph 293 sets forth legal conclusions and characterizations of state law and regulations that do not require a response. To the extent a response is required, Defendants deny that Paragraph 293 contains a complete recitation or accurate description or characterization of the laws and regulations, which speak for themselves, and therefore they deny the allegations in Paragraph 293.

## COUNT VII
### Connecticut False Claims Act, Conn. Code § 17b-301b *et seq.*

294.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

**ANSWER**:  Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs as set forth above.

295.   This is a claim for treble damages and civil penalties under the Connecticut False Claims Act, Conn. Code § 17b-301b *et seq.*

**ANSWER**:  Defendants deny the allegations contained in Paragraph 295.

296.   By virtue of the illegal acts, including the payment of commissions to its sales representatives and improper submission of invoices to various Government Healthcare Programs for services, as described more fully above, Defendants knowingly presented or caused to be presented to the Connecticut Medicaid Program false or fraudulent claims for payment or approval and/or knowingly accomplished these

179

88221270.5

unlawful acts by making, or causing to be made or used, a false record or statement.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 296.

297.   The State of Connecticut, by and through the Connecticut Medicaid program and other State healthcare programs, unaware of the falsity or fraudulent nature of the claims and/or statements made, or caused to be made, by Defendants, paid for claims that otherwise would not have been allowed.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 297.

298.   By reason of these payments, the Connecticut Medicaid program has been damages, and continues to be damaged in a substantial amount.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 298.

88221270.5

299.   Relator requests that this Court accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the State of Connecticut in the operation of its Medicaid program.

**ANSWER**:  Paragraph 299 contains a request by Relator for the Court to accept pendant jurisdiction over its state-law claim and does not require a response.  To the extent a response is required, the Defendants deny the allegations contained in Paragraph 299.

## COUNT VIII
### Florida False Claims Act, Fla. Stat. Ann. § 68.081 *et seq.*

300.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

**ANSWER**:  Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs as set forth above.

301.   This is a claim for treble damages and civil penalties under the Florida False Claims Act, Fla. Stat. Ann. § 68.081 *et seq.*

**ANSWER**:  Defendants deny the allegations contained in Paragraph 301.

302. By virtue of the illegal acts, including the payment of commissions to its sales representatives and improper submission of invoices to various Government Healthcare Programs for services, as described more fully above, Defendants knowingly presented or caused to be presented to the Florida Medicaid Program false or fraudulent claims for payment or approval and/or knowingly accomplished these unlawful acts by making, or causing to be made or used, a false record or statement.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 302.

303.  Further, BioTek's marketing and promotion program in New York, which Relator was taught, and utilized, was the same marketing and promotion program utilized by BioTek sales representatives in Florida.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 303.

304.   The State of Florida, by and through the Florida Medicaid program and other State healthcare programs, unaware of the falsity or fraudulent nature of the claims and/or statements made, or caused to be made, by Defendants, paid for claims that otherwise would not have been allowed.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 304.

305.   By reason of these payments, the Florida Medicaid program has been damaged, and continues to be damaged in a substantial amount.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 305.

306.   Relator requests that this Court accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the State of Florida in the operation of its Medicaid program.

**ANSWER**:  Paragraph 306 contains a request by Relator for the Court to accept pendant jurisdiction over its state-law claim and does not require

a response.  To the extent a response is required, the Defendants deny the allegations contained in Paragraph 306.

## COUNT IX
### Georgia False Claims Act, Ga. Code Ann. § 49-4-168 *et seq.*

307.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

**ANSWER**:  Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs as set forth above.

308.   This is a claim for treble damages and civil penalties under the Georgia False Claims Act, Ga. Code Ann. § 49-4-168 *et seq.*

**ANSWER**:  Defendants deny the allegations contained in Paragraph 308.

309.  By virtue of the illegal acts, including the payment of commissions to its sales representatives and improper submission of invoices to various Government Healthcare Programs for services, as described more fully above, Defendants knowingly presented or caused to

be presented to the Georgia Medicaid Program false or fraudulent claims for payment or approval and/or knowingly accomplished these unlawful acts by making, or causing to be made or used, a false record or statement.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 309.

310.   The State of Georgia, by and through the Georgia Medicaid program and other State healthcare programs, unaware of the falsity or fraudulent nature of the claims and/or statements made, or caused to be made by Defendants, paid for claims that otherwise would not have been allowed.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 310.

311.   By reason of these payments, the Georgia Medicaid program has been damaged, and continues to be damaged in a substantial amount.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 311.

88221270.5

312.   Relator requests that this Court accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the State of Georgia in the operation of its Medicaid program.

**ANSWER**:  Paragraph 312 contains a request by Relator for the Court to accept pendant jurisdiction over its state-law claim and does not require a response.  To the extent a response is required, the Defendants deny the allegations contained in Paragraph 312.

## COUNT X
### Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 *et seq.*

313.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

**ANSWER**:  Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs as set forth above.

314.   This is a claim for treble damages and civil penalties under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 *et seq.*

88221270.5

**ANSWER**:  Defendants deny the allegations contained in Paragraph 314.

315.  By virtue of the illegal acts, including the payment of commissions to its sales representatives and improper submission of invoices to various Government Healthcare Programs for services, as described more fully above, Defendants knowingly presented or caused to be presented to the Illinois Medicaid Program false or fraudulent claims for payment or approval and/or knowingly accomplished these unlawful acts by making, or causing to be made or used a false record or statement.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 315.

316.  The State of Illinois, by and through the Illinois Medicaid program, unaware of the falsity or fraudulent nature of the claims and/or statements made, or caused to be made, by Defendants, paid for claims that otherwise would not have been allowed.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 316.

88221270.5

317.   Compliance with applicable Medicaid and the various other federal and state laws cited herein was an implied and express condition of payment of claims submitted to the State of Illinois in connection with Defendants' conduct.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 317.

318.   Had the State of Illinois, by and through the Illinois Medicaid program, known that claims had been submitted for reimbursement of services that were, among other things, in violation of the AKS, it would not have paid the claims.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 318.

319.   As a result of Defendants' violations of 740 ILCS 175/3(a), the State of Illinois, by and through the Illinois Medicaid program and other State healthcare programs, has been damaged, and continues to be damaged, in a substantial amount exclusive of interest.

88221270.5

**ANSWER**:  Defendants deny the allegations contained in Paragraph 319.

320.  Relator is a private citizen with direct and independent knowledge of the allegations of this Second Amended Complaint, who has brought this action pursuant to 740 ILCS 175/4(b) on behalf of herself and the State of Illinois.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 320.

321.   Relator requests that this Court accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the State of Illinois in the operation of its Medicaid program.

**ANSWER**:  Paragraph 321 contains a request by Relator for the Court to accept pendant jurisdiction over its state-law claim and does not require a response.  To the extent a response is required, the Defendants deny the allegations contained in Paragraph 321.

189

## COUNT XI
## Illinois Insurance Claims Fraud Prevention Act,
## 740 Ill. Comp. Stat. § 92

322.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

**ANSWER**:  Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs as set forth above.

323.   This is a claim for treble damages and penalties under the Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/1 *et seq*. ("Illinois Insurance Fraud Act").

**ANSWER**:   Paragraph 323 sets forth legal conclusions and characterizations of state law and regulations that do not require a response. To the extent a response is required, Defendants deny that Paragraph 323 contains a complete recitation or accurate description or characterization of the laws and regulations, which speak for themselves, and therefore they deny the allegations in Paragraph 323.

324.   Subsection 5(a) of the Illinois Insurance Fraud Act provides for a civil cause of action for any person who commits the crime of insurance

fraud or who knowingly offers or pays "any remuneration directly or indirectly, in cash or in kind, to induce any person to procure clients or patients to obtain services or benefits under a contract of insurance or that will be the basis for a claim against an insured person or the person's insurer." 740 ILCS 92/5(a).

**ANSWER**:   Paragraph 324 sets forth legal conclusions and characterizations of state law and regulations that do not require a response. To the extent a response is required, Defendants deny that Paragraph 324 contains a complete recitation or accurate description or characterization of the laws and regulations, which speak for themselves, and therefore they deny the allegations in Paragraph 324.

325.   Pursuant to the Illinois Criminal Code, a person commits the offense of insurance fraud when he or she:

> knowingly obtains, attempts to obtain, or causes to be obtained, by deception, control over the property of an insurance company or self-insured entity by the making of a false claim or by causing a false claim to be made on any policy of insurance issued by an insurance company . . ..

720 ILCS 5/46-1(a).

**ANSWER**:   Paragraph 325 sets forth legal conclusions and characterizations of state law and regulations that do not require a response. To the extent a response is required, Defendants deny that Paragraph 325 contains a complete recitation or accurate description or characterization of the laws and regulations, which speak for themselves, and therefore they deny the allegations in Paragraph 325.

326.   Defendants violated 720 ILCS 5/46-1(a) and committed insurance fraud in that from at least 2011, and continuing through the present, they have repeatedly, knowingly and intentionally, presented, or caused to be presented, false claims for payment in connection with medical healthcare services.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 326.

327.   Subsection 15(a) of the Illinois Insurance Fraud Act provides for a *qui tam* civil action in order to create incentives for private individuals to disclose and prosecute violations of the statute. Subsection 15(a) provides: "An interested person, including an insurer, may bring a civil action for a

violation of this Act for the person and for the State of Illinois. The action shall be brought in the name of the State." 740 ILCS 92/15(a).

**ANSWER**:    Paragraph 327 sets forth legal conclusions and characterizations of state law and regulations that do not require a response. To the extent a response is required, Defendants deny that Paragraph 327 contains a complete recitation or accurate description or characterization of the laws and regulations, which speak for themselves, and therefore they deny the allegations in Paragraph 327.

328.  By virtue of the acts described in this Second Amended Complaint, Defendants committed the following acts, or aided and abetted the commission of the following acts, in violation of the Illinois Insurance Fraud Act:

(a) Defendants knowingly offered or paid remuneration directly or indirectly, in cash or in kind, to induce other persons to procure clients or patients to obtain services or benefits under a contract of insurance or that would be the basis for a claim against an insurer, in violation of 740 ILCS 92/5(a); and

(b) Defendants knowingly obtained, attempted to obtain, and caused to be obtained, by deception, control over the property of an insurance company or self-insured entity by the making of a false claim and by causing a false claim to be made on a policy

of insurance issued by an insurance company, in violation of 740
ILCS 92/5(b) and 720 ILCS 5/46-1(a).

**<u>ANSWER</u>**:  Defendants deny the allegations contained in Paragraph
328.

329.   Relator cannot at this time identify the false claims for payment
that were caused by Defendants' conduct in Illinois. The false or fraudulent
claims were presented for payment by numerous providers across the State.
Relator had no control over or dealings with such entities and has no access
to the records in their possession.

**<u>ANSWER</u>**:  Defendants deny the allegations contained in Paragraph
329.

330.   Private insurers, unaware of the falsity of the records, statements
and claims made or caused to be made by Defendants, paid and continue to
pay the claims that would not be paid but for Defendants' unlawful conduct,
and have been damaged thereby.

**<u>ANSWER</u>**:  Defendants deny the allegations contained in Paragraph
330.

331.   The Illinois State Government is entitled to receive three times the amount of each claim for compensation submitted, or caused to be submitted, by Defendants in violation of 740 ILCS 92. Additionally, the Illinois State Government is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 331.

## COUNT XII
### Indiana False Claims and Whistleblower Protection Act, Indiana Code § 5-11-5.5

332.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

**ANSWER**:  Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs as set forth above.

333.   This is a claim for treble damages and civil penalties under the Indiana False Claims and Whistleblower Protection Act, Indiana Code § 5-11-5.5.

88221270.5

**ANSWER**:  Defendants deny the allegations contained in Paragraph 333.

334.  By virtue of the illegal acts, including the payment of commissions to its sales representatives and improper submission of invoices to various Government Healthcare Programs for services, as described more fully above, Defendants knowingly presented or caused to be presented to the Indiana Medicaid Program false or fraudulent claims for payment or approval and/or knowingly accomplished these unlawful acts by making, or causing to be made or used, a false record or statement.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 334.

335.  The State of Indiana, by and through the Indiana Medicaid program and other State healthcare programs, unaware of the falsity or fraudulent nature of the claims and/or statements made, or caused to be made, by Defendants, paid for claims that otherwise would not have been allowed.

88221270.5

**ANSWER**:  Defendants deny the allegations contained in Paragraph 335.

336.   By reason of these payments, the Indiana Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 336.

337.   Relator cannot at this time identify the false claims for payment that were caused by Defendants' conduct in Indiana. The false or fraudulent claims were presented for payment by numerous providers across the State. Relator had no control over or dealings with such entities and has no access to the records in their possession.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 337.

338.   Relator requests that this Court accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal

claim, and merely asserts separate damages to the State of Indiana in the operation of its Medicaid program.

**ANSWER**:  Paragraph 338 contains a request by Relator for the Court to accept pendant jurisdiction over its state-law claim and does not require a response.  To the extent a response is required, the Defendants deny the allegations contained in Paragraph 338.


## COUNT XIII
**Massachusetts False Claims Act, Mass. Ann. Laws ch. 12, § 5(A)** *et seq.*

339.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

**ANSWER**:  Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs as set forth above.


340.   This is a claim for treble damages and civil penalties under the Massachusetts False Claims Act. Mass. Ann. Laws ch. 12, § 5(A) *et seq.*

**ANSWER**:  Defendants deny the allegations contained in Paragraph 340.

88221270.5

341. By virtue of the misconduct and actions described above, Defendants knowingly caused to be presented to the Massachusetts Medicaid Program false or fraudulent claims for the improper payment or approval of prescriptions for the Product described above and used false or fraudulent records to accomplish this purpose.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 341.

342. The Commonwealth of Massachusetts, by and through the Massachusetts Medicaid program and other State healthcare programs, unaware of the falsity or fraudulent nature of the claims caused, or caused to be made, by the Defendants, paid for claims that otherwise would not have been allowed.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 342.

343. By reason of these payments, the Massachusetts Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

88221270.5

**ANSWER**:  Defendants deny the allegations contained in Paragraph 343.

344.   Relator cannot at this time identify the false claims for payment that were caused by Defendants' conduct in Massachusetts. The false or fraudulent claims were presented for payment by numerous providers across the Commonwealth. Relator had no control over or dealings with such entities and has no access to the records in their possession

**ANSWER**:  Defendants deny the allegations contained in Paragraph 344.

345.   Relator requests that this Court accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the Commonwealth of Massachusetts in the operation of its Medicaid program.

**ANSWER**:  Paragraph 345 contains a request by Relator for the Court to accept pendant jurisdiction over its state-law claim and does not require a response.  To the extent a response is required, the Defendants deny the allegations contained in Paragraph 345.

200

88221270.5

**COUNT XIV**
**New Jersey False Claims Act**
**N.J. Stat. §§ 2A:32C-1** *et seq.*

346.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

**ANSWER**:  Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs as set forth above.

347.   This is a claim for treble damages and civil penalties under the New Jersey False Claims Act, N.J. Stat. § 2A:32C-1 *et seq*.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 347.

348.   By virtue of the illegal acts, including the payment of commissions to its sales representatives and improper submission of invoices to various Government Healthcare Programs for services, as described more fully above, Defendants knowingly presented or caused to be presented to the New Jersey Medicaid program false or fraudulent claims

88221270.5

for payment or approval and/or knowingly accomplished these unlawful acts by making, or causing to be made or used, a false record or statement.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 348.

349.   The State of New Jersey, by and through the New Jersey Medicaid program and other State healthcare programs, unaware of the falsity or fraudulent nature of the claims and/or statements made, or caused to be made, by Defendants, paid for claims that otherwise would not have been allowed.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 349.

350.   By reason of these payments, the New Jersey Medicaid program has been damaged, and continues to be damaged in a substantial amount.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 350.

88221270.5

351.   Relator cannot at this time identify the false claims for payment that were caused by Defendants' conduct in New Jersey. The false or fraudulent claims were presented for payment by numerous providers across the State. Relator had no control over or dealings with such entities and has no access to the records in their possession

**ANSWER**:  Defendants deny the allegations contained in Paragraph 351.

352.   Relator requests that this Court accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the State of New Jersey in the operation of its Medicaid program.

**ANSWER**:  Paragraph 352 contains a request by Relator for the Court to accept pendant jurisdiction over its state-law claim and does not require a response.  To the extent a response is required, the Defendants deny the allegations contained in Paragraph 352.

88221270.5

## COUNT XV
## New York False Claims Act, N.Y. State Fin. Law § 187

353.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

**ANSWER**:  Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs as set forth above.

354.   This is a claim for treble damages and civil penalties under the New York False Claims Act, N.Y. State Fin. Law § 187.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 354.

355.  By virtue of the illegal acts, including the payment of commissions to its sales representatives and improper submission of invoices to various Government Healthcare Programs for services, as described more fully above, Defendants knowingly presented or caused to be presented to the New York Medicaid program false or fraudulent claims for payment or approval and/or knowingly accomplished these unlawful acts by making, or causing to be made or used a false record or statement.

88221270.5

**ANSWER**:  Defendants deny the allegations contained in Paragraph 355.

356.   The State of New York, by and through the New York Medicaid program and other State healthcare programs, unaware of the falsity or fraudulent nature of the claims and/or statements made, or caused to be made, by Defendants, paid for claims that otherwise would not have been allowed.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 356.

357.   By reason of these payments, the New York Medicaid program has been damaged, and continues to be damaged in a substantial amount.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 357.

358.   Relator cannot at this time identify the false claims for payment that were caused by Defendants' conduct in New York. The false or fraudulent claims were presented for payment by numerous providers

205

across the State. Relator had no control over or dealings with such entities and has no access to the records in their possession.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 358.

359.   Relator requests that this Court accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the State of New York in the operation of its Medicaid program.

**ANSWER**:  Paragraph 359 contains a request by Relator for the Court to accept pendant jurisdiction over its state-law claim and does not require a response.  To the extent a response is required, the Defendants deny the allegations contained in Paragraph 359.

## COUNT XVI
### Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.* and Tennessee False Claims Act, Tenn. Code Ann. § 4-18-101 *et seq.*

360.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

88221270.5

**ANSWER**:  Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs as set forth above.

361.   This is a claim for treble damages and civil penalties under the Tennessee Medicaid False Claims Act, and the Tennessee False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*; Tenn. Code Ann. § 4-1 8-101 *et seq.*

**ANSWER**:  Defendants deny the allegations contained in Paragraph 361.

362. By virtue of the illegal acts, including the payment of commissions to its sales representatives and improper submission of invoices to various Government Healthcare Programs for services, as described more fully above, Defendants knowingly presented or caused to be presented to the Tennessee Medicaid Program false or fraudulent claims for payment or approval and/or knowingly accomplished these unlawful acts by making, or causing to be made or used, a false record or statement.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 362.

88221270.5

363.   The State of Tennessee, by and through Tennessee Medicaid program and other State healthcare programs, unaware of the falsity or fraudulent nature of the claims and/or statements made, or caused to be made, by Defendants, paid for claims that otherwise would not have been allowed.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 363.

364.   By reason of these payments, the Tennessee Medicaid program has been damaged, and continues to be damaged in a substantial amount.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 364.

365.   Relator cannot at this time identify the false claims for payment that were caused by Defendants' conduct in Tennessee. The false or fraudulent claims were presented for payment by numerous providers across the State. Relator had no control over or dealings with such entities and has no access to the records in their possession.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 365.

366.   Relator requests that this Court accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the State of Tennessee in the operation of its Medicaid program.

**ANSWER**:  Paragraph 366 contains a request by Relator for the Court to accept pendant jurisdiction over its state-law claim and does not require a response.  To the extent a response is required, the Defendants deny the allegations contained in Paragraph 366.

## COUNT XVII
### Texas Medicaid Fraud Prevention Act,
### Tex. Hum. Res. Code Ann. § 36.001 *et seq.*

367.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

**ANSWER**:  Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs as set forth above.

88221270.5

368.   This is a claim for treble damages and civil penalties under the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. § 36.001 *et seq*.

**<u>ANSWER</u>**:  Defendants deny the allegations contained in Paragraph 368.

369.   By virtue of the illegal acts, including the payment of commissions to its sales representatives and improper submission of invoices to various Government Healthcare Programs for services, as described more fully above, Defendants knowingly presented or caused to be presented to the Texas Medicaid Program false or fraudulent claims for payment or approval and/or knowingly accomplished these unlawful acts by making, or causing to be made or used, a false record or statement.

**<u>ANSWER</u>**:  Defendants deny the allegations contained in Paragraph 369.

370.   The State of Texas, by and through Texas Medicaid program and other State healthcare programs, unaware of the falsity or fraudulent nature

210

of the claims and/or statements made, or caused to be made, by Defendants, paid for claims that otherwise would not have been allowed.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 370.

371.   By reason of these payments, the Texas Medicaid program has been damaged, and continues to be damaged in a substantial amount.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 371.

372.   Relator cannot at this time identify the false claims for payment that were caused by Defendants' conduct in Texas. The false or fraudulent claims were presented for payment by numerous providers across the State. Relator had no control over or dealings with such entities and has no access to the records in their possession.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 372.

88221270.5

373.   Relator requests that this Court accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the State of Texas in the operation of its Medicaid program.

**ANSWER**:  Paragraph 373 contains a request by Relator for the Court to accept pendant jurisdiction over its state-law claim and does not require a response.  To the extent a response is required, the Defendants deny the allegations contained in Paragraph 373.

## COUNT XIII
### Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 *et seq.*

374.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Second Amended Complaint.

**ANSWER**:  Defendants incorporate by reference their responses to the allegations contained in the preceding paragraphs as set forth above.

375.   This is a claim for treble damages and civil penalties under the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-21 6.1 *et seq.*

**ANSWER**:  Defendants deny the allegations contained in Paragraph 375.

376. By virtue of the illegal acts, including the payment of commissions to its sales representatives and improper submission of invoices to various Government Healthcare Programs for services, as described more fully above, Defendants knowingly presented or caused to be presented to the Virginia Medicaid Program false or fraudulent claims for payment or approval and/or knowingly accomplished these unlawful acts by making, or causing to be made or used, a false record or statement.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 376.

377.  The Commonwealth of Virginia, by and through the Virginia Medicaid program and other State healthcare programs, unaware of the falsity or fraudulent nature of the claims and/or statements made by Defendants, paid for claims that otherwise would not have been allowed.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 377.

213

378.   By reason of these payments, the Virginia Medicaid program has been damaged, and continues to be damaged in a substantial amount.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 378.

379.   Relator cannot at this time identify the false claims for payment that were caused by Defendants' conduct in Virginia. The false or fraudulent claims were presented for payment by numerous providers across the State. Relator had no control over or dealings with such entities and has no access to the records in their possession.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 379.

380.   Relator requests that this Court accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the Commonwealth of Virginia in the operation of its Medicaid program.

88221270.5

**ANSWER**:  Paragraph 380 contains a request by Relator for the Court to accept pendant jurisdiction over its state-law claim and does not require a response.  To the extent a response is required, the Defendants deny the allegations contained in Paragraph 380.

All allegations in the Second Amended Complaint that are not specifically admitted in this Answer are denied.

## DEFENDANTS' AFFIRMATIVE DEFENSES AND OTHER DEFENSES

### FIRST AFFIRMATIVE DEFENSE

1.     The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

2.     The Complaint fails to plead fraud with particularity as required by Fed. R. Civ. P. 9(b).

### THIRD AFFIRMATIVE DEFENSE

3.     Relator failed to comply with the public disclosure bar, 31 U.S.C. § 3730(e)(4).  The Complaint is based upon or substantially similar to publicly available information, including information available through

88221270.5

Defendant BioTek Labs, LLC's website, and information known to the United States in connection with a separate and unrelated legal matter.

## FOURTH AFFIRMATIVE DEFENSE

4.     Defendants did not knowingly present or cause to be presented any claim to a federal health care program that violated any material and applicable statutory or regulatory requirement of those programs.

## FIFTH AFFIRMATIVE DEFENSE

5.     Defendants did not knowingly make, use, or cause to be made or used, any material false statement or record to get a false or fraudulent claim paid or approved by the United States.

## SIXTH AFFIRMATIVE DEFENSE

6.     Defendants did not knowingly make, use or cause to be made or used, any false record or statement material to an obligation to pay or transmit money or property to the United States, or knowingly conceal and improperly avoid an obligation to pay or transmit money or property to the United States.

## SEVENTH AFFIRMATIVE DEFENSE

7.      Relator's claims are barred by the doctrine of unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

8.      Defendants did not act knowingly or with reckless disregard or in deliberate ignorance of the truth.  Instead, to the extent that any actions as described in Complaint occurred, said actions were taken in good faith and not with any improper or illegal purpose, intent or knowledge.

## NINTH AFFIRMATIVE DEFENSE

9.      Relator's claims are barred because the federal government has not suffered any damages or actual injury and/or any such damages or actual injuries are speculative and remote and not the proximate cause of Defendants' alleged conduct.

## TENTH AFFIRMATIVE DEFENSE

10.     To the extent that any financial penalties or treble damages authorized under the FCA exceed any actual loss incurred by the federal government as a result of any claims paid, such damages or financial penalties would constitute an excessive fine under the Eighth Amendment of the U.S. Constitution would be void.

## ELEVENTH AFFIRMATIVE DEFENSE

11.      Consistent with the current policy of the U.S. Department of Justice, any alleged violation of agency guidance documents (including, but

not limited to, the Medicare Policy Benefit Manual) cannot be used to support liability under the FCA.

## TWELFTH AFFIRMATIVE DEFENSE

12.    To the extent that the Relator prays for "other and further relief," seeks equitable relief or relief other than that specified in and authorized by the FCA, the Relator is not entitled to that relief because it has an adequate remedy at law.

## THIRTEENTH AFFIRMATIVE DEFENSE

13.    To the extent Relator is entitled to any damages, which is expressly denied, Defendants are entitled to a set-off amount to account for the value of services actually rendered.

## FOURTEENTH AFFIRMATIVE DEFENSE

14.    The Relator's claims are barred, in whole or in part, by applicable regulatory or statutory exceptions, exemptions, or "safe harbors" under the AKS or its state law equivalents.

## FIFTEENTH AFFIRMATIVE DEFENSE

15.    To the extent that Relator attempts to assert liability based on claims submitted beyond the applicable statute of limitations, those claims are barred by the applicable statute of limitations.

88221270.5

## SIXTEENTH AFFIRMATIVE DEFENSE

16.   To the extent that patients referenced in the Complaint are beneficiaries of Medicare Advantage Plans, any claims submitted on their behalf to a Medicare Advantage Plan cannot support liability under the FCA as those claims were not relied upon and were not material to the government's decision to pay monthly capitated payments to the plans, nor was the government injured in any way.

## SEVENTEENTH AFFIRMATIVE DEFENSE

17.   Consistent with the requirements of applicable regulations, the medical services described in the Complaint were provided by Defendants, if at all, only following a decision by a physician of the patient's medical necessity of the care, which was, in turn, ordered by a physician.  Defendants are entitled to rely upon the judgment of the certifying physician and that judgment, even if later disagreed with by others, cannot subject Defendants to liability under the FCA.

## EIGHTEENTH AFFIRMATIVE DEFENSE

18.   Relator's claims are barred in whole or part because they are based on ambiguous regulations and statutes, and the rule of lenity requires such ambiguities to be construed in Defendants' favor.

## NINETEENTH AFFIRMATIVE DEFENSE

19.    Any attempt by Relator to extrapolate any claims and/or damages over a population of patients, without unique and individualized proof, would violate Defendants' rights to procedural and substantive due process provided by the Fifth and Fourteenth Amendments to the United States Constitution.

## TWENTIETH AFFIRMATIVE DEFENSE

20.    To the extent that patients referenced in the Complaint are beneficiaries of Medicare Managed Care Plans, any claims submitted on their behalf to a Medicare Managed Care Plan cannot support liability under the FCA as those claims were not relied upon and were not material to the government's decision to pay monthly capitated payments to the plans, nor was the government injured in any way.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Defendants demand a jury trial.

88221270.5

WHEREFORE, Defendants deny that Relator is entitled to any recovery whatsoever, whether in the form of damages, interests, costs, attorneys' fees, or otherwise, and respectfully requests that this Court dismiss Relator's Second Amended Complaint, enter judgment in Defendants' favor and against Relator, and order whatever additional relief it deems just and proper.

Dated:  February 14, 2023          Respectfully submitted,

*/s/ Henry H. Bolz, IV*
Florida Bar No. 043350
POLSINELLI PC
315 S. Biscayne Blvd., Suite 400
Miami, FL  33131
T:  305-921-1811
hbolz@polsinelli.com
*Counsel for Defendants*

Kevin Coffey
Illinois Bar No. 6303073
kcoffey@polsinelli.com
(*Admitted Pro Hac Vice*)

Dayna LaPlante
Illinois Bar No. 6317971
dlaplante@polsinelli.com
(*Admitted Pro Hac Vice*)

Jessica Andrade
Washington Bar No. 39297
jandrade@polsinelli.com
(*Admitted Pro Hac Vice*)

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has

been electronically filed using the CM/ECF electronic filing system which

will provide notice to all counsel of record this **<u>14th</u>** day of February, 2023.

*/s/ Henry H. Bolz, IV*
Henry H. Bolz, IV

88221270.5